Michael J. Miller (VSB No.: 19171)
Shayne K. Hodge (VSB No.: 86472)
Curtis G. Hoke (Admitted *Pro Hac Vice*)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
mmiller@millerfirmllc.com
shodge@millerfirmllc.com
choke@millerfirmllc.com

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| IN RE:    JAMES A. MONCURE<br><br>            Debtor,<br><br>LYNN L. TAVENNER, TRUSTEE,<br><br>            Plaintiff,<br><br>v.<br><br>JUSTIN SIGLER,<br><br>            Defendant. | Case No.: 3:14-bk-31546-KLP<br><br>Chapter 7<br><br>Adv. Proc. No.: 3:16-ap-03069-KLP<br><br><br>**DESIGNATION OF RECORD OF THE CASE ON MOTION TO WITHDRAW REFERENCE OF ADVERSARY PROCEEDING** |

**DESIGNATION OF RECORD OF THE CASE ON MOTION TO WITHDRAW
REFERENCE OF ADVERSARY PROCEEDING**

Defendant Justin Sigler ("Defendant"), by counsel, pursuant to E.D. Va. Local Rule 5011-1(C), hereby designates the following portions of the record of the case or proceedings in the Bankruptcy Court that Defendant believes will be reasonably necessary or pertinent to the District Court's consideration of Defendant's Motion to Withdraw Reference of Adversary Proceeding:

1. Complaint to Avoid Transfers, to Recover Property, and for Related Relief (Doc 1) Exhibit A

2. Defendants Notice of Motion and Memorandum of Points and Authorities in Support of Motion to Dismiss. (Doc 4) Exhibit B

3. Pretrial Order (Doc 16) Exhibit C

4. Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Trustee's Complaint (Doc 18) Exhibit D

5. Defendant Justin Sigler's Partial Answer to Plaintiff's Complaint; Affirmative Defenses; Prayer for Relief; Demand for Jury Trial (Doc 21) Exhibit E

6. Amended Complaint to Avoid Transfers, To Recover Property, and For Related Relief. (Doc 22) Exhibit F

7. Defendant Justin Sigler's Notice of Motion and Partial Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 12(b)(6); Memorandum. (Doc 23) Exhibit G

8. Defendant Justin Siler's Partial Answer To Plaintiff's Amended Complaint; Affirmative Defenses; Prayer for Relief; Demand for Jury Trial. (Doc 24) Exhibit H

9. Claims Summary in 14-31546-KLP Exhibit I

10. March 15, 2017 Hearing Transcript Exhibit J

11. June 7, 2017 Hearing Transcript Exhibit K

12. Docket History Exhibit L

Copies of the designated pleadings are attached as Exhibits "A", "B", "C", "D", "E", "F", "G", "H", "I", "J", "K" and "L"

DATED: June 13th, 2017                    Respectfully submitted,


                                          */s/ Michael J. Miller*
                                          Michael J. Miller (VSB No.: 19171)
                                          Shayne K. Hodge (VSB No.: 86472)
                                          Curtis G. Hoke (Admitted *Pro Hac Vice*)
                                          **THE MILLER FIRM, LLC**
                                          108 Railroad Avenue
                                          Orange, Virginia 22960
                                          Ph: (540) 672-4224
                                          Fax: (540) 672-3055
                                          mmiller@millerfirmllc.com
                                          shodge@millerfirmllc.com
                                          choke@millerfirmllc.com

                                          *Attorneys for Defendants*

DESIGNATION OF RECORD OF THE CASE ON MOTION TO WITHDRAW REFERENCE OF ADVERSARY PROCEEDING

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2017, a true and correct copy of the forgoing document served via the Court's CM/ECF electronic filing system to those parties listed on the docket as being entitled to such electronic notice and via electronic mail to the following:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
David N. Tabakin, Esq.
**Tavenner & Beran, PLC**
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Tel: (804) 783-8300
Fax: (804) 783-1078
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com
dtabakin@tb-lawfirm.com

*/s/ Michael J. Miller*
Michael J. Miller

DESIGNATION OF RECORD OF THE CASE ON MOTION TO WITHDRAW REFERENCE OF ADVERSARY PROCEEDING
4

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | JAMES A. MONCURE, | Case No. |
| | Debtor | 14-31546-KLP |
| | LYNN L. TAVENNER, TRUSTEE, | Chapter |
| | Plaintiff | 7 |
| | | Adv. Proc No. |
| | JUSTIN SIGLER, | |
| | Defendant | |

**COMPLAINT TO AVOID TRANSFERS, TO RECOVER PROPERTY,
<u>AND FOR RELATED RELIEF</u>**

Lynn L. Tavenner, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of James A. Moncure (the "Debtor"), by the undersigned counsel, files this Complaint to Avoid Transfers, to Recover Property, and for Related Relief pursuant to §§ 105(a), 542, 544, 548(a), 550(a), and/or 551 of 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), and other applicable law, for turnover, accounting, fraudulent conveyances, and damages in connection with certain transfers of property by the Debtor to or for the benefit of Defendant. The Trustee seeks to set aside such transfers and preserve the property for the benefit of the Debtor's creditors and for cause states as follows:

_____
Lynn L. Tavenner (VSB No. 30083)
Paula S. Beran (VSB No. 34679)
David N. Tabakin (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-1078

*Counsel for Lynn Lewis Tavenner, Chapter 7 Trustee*     1

## JURISDICTION

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue lies properly in this Court pursuant to 28 U.S.C. § 1409.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E), (H), and (O).

## THE PARTIES

4.      The Plaintiff is Lynn L. Tavenner, the Chapter 7 Trustee (the "Trustee" or the "Plaintiff") of the Debtor's Estate who was appointed as interim trustee on March 28, 2014, and she continues to serve as Trustee.

5.       Justin Sigler (the "Defendant") is a person as defined in § 101(41) of the Bankruptcy Code residing in and/or conducting business in the United States and, at all times material hereto, was a lender, investor, vendor, supplier, or otherwise maintained a business relationship with the Debtor.

## FACTUAL BACKGROUND

6.      During the years 2001 through 2005, the Debtor conceived the idea of a corporate technology park, procured certain land, and created the Quantico Corporate Center at Stafford ("QCC", also known as the "Quantico Corporate Center"). QCC is a business park located in Stafford County, Virginia, along Interstate 95 and US 1, adjacent to Marine Corps Base Quantico. QCC currently has a number of tenants, including major government contractors, a wide array of businesses, colleges, and others. QCC also currently has certain developed and undeveloped land. Upon information and belief, to facilitate the creation of the technology park, certain property identified for the development of the QCC concept was placed in the name of

2

Moncure Brothers, LLC. The Debtor is one of three members of Moncure Brothers, LLC, and upon information and belief, served as the managing member through the Petition Date (as hereinafter defined). Moncure Brothers, LLC subsequently partnered with entities commonly referred to as the Silver Companies[1] to develop the QCC project. The Debtor, individually, acquired certain additional properties over the life of the project and subsequently added those properties to the QCC project. At all relevant times, the Debtor served as a managing partner of the QCC project.

7.     Beginning prior to January 2010 and continuing through at least March 2014, the Debtor devised, intended to devise, and executed a scheme to defraud individuals and entities.

8.     Over a course of many years, the Debtor solicited investors to loan him money. Investors believed they were investing in the acquisition of land for, and development of, the QCC project. The Debtor solicited investors, in part, by telling them he was acquiring land to complete the development of the QCC project. Upon information and belief, certain investors received promissory notes to document amounts loaned to the Debtor.

9.     For the period beginning in January 2010 up through April 2014, investigators with the Federal Bureau of Investigations ("FBI") traced more than $35 million of deposits into accounts held in the Debtor's name. A substantial portion of these funds appears to be from individuals or entities having, or believing to have, a financial interest or investment in the QCC project. Certain of these funds received were clearly used for purposes other than the development of the QCC project. For example, FBI investigators traced more than $16,000,000 as having been transferred into investment trading accounts from which the Debtor actively day-traded stocks and options. Analysis of the trade, deposit, and withdrawal records of these

---

[1] Entities owned, at least in part, by Carl D. Silver.

3

accounts reveal that the Debtor lost more than \$14,000,000 over a four-year period through poor trade results and expenses associated with the trading accounts. The Debtor admitted the same in connection with the Plea Agreement and Statement of Facts entered into by and between the Debtor and the United States of America whereby the Debtor plead guilty to a count of Wire Fraud in violation of 18 U.S.C. § 1343 and Engaging in Unlawful Monetary Transactions in violation of 18 U.S.C. § 1957(a). *See* Plea Agreement, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 26; Statement of Facts, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27.

10.     As part of the Debtor's scheme to defraud individuals and entities, the Debtor also routinely utilized "new" investor funds to pay returns or make repayments to other investors. Statement of Facts, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27.

11.     As part of the Debtor's scheme to defraud individuals and entities, the Debtor made repayments on certain of the investments. Statement of Facts, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27. The Debtor also paid individuals and entities for other goods and services he desired. Beginning sometime in 2013, the Debtor began to default on loan repayments to his investors while continuing to accept new investment money as part of the Debtor's scheme to defraud individuals and entities.

12.     With the Debtor's scheme coming unraveled, on March 4, 2014, he sent a lengthy email to his investors and business partners apologizing for certain of his indiscretions.

13.     On March 24, 2014 (the "Petition Date"), N. Brent Higginbotham, Doris G. Higginbotham, Katherine Higginbotham Brown, Forrest S. Higginbotham, and Thomas Higginbotham, by certifying under penalty of perjury that each held claims against the Debtor,

instituted an involuntary bankruptcy petition in this Court against the Debtor under Chapter 7 of the Bankruptcy Code in this Court. Thereafter, on March 27, 2014, the Debtor filed the Debtor's Consent to Entry of Order for Relief. Subsequently, this Court entered an Order for Relief on March 27, 2014.

14. On March 28, 2014, this Court appointed Lynn L. Tavenner as interim trustee of the Debtor's Estate, and she continues to serve as Trustee.

15. On August 24, 2014, the United States of America formally charged the Debtor, and an arrest warrant issued.

16. On October 7, 2014, the Debtor was officially indicted on seven counts, including mail fraud, wire fraud, and engaging in unlawful monetary transactions.

17. The Debtor acknowledged his guilt, admitted to the fraudulent scheme, and was sentenced to a term of not less than five years in a federal penitentiary.

18. Prior to the Petition Date, the Debtor made one or more transfers to or for the benefit of the Defendant, including without limitation those payments set forth on **Exhibit A**, together with any other payments that may be subsequently identified (collectively, the "Transfers").[2]

19. At all times relevant hereto, the Debtor's liabilities were greater than his assets. At all times relevant hereto, the Debtor was insolvent in that (i) his assets were worth less than the value of his liabilities; (ii) he could not meet his obligations as they came due; and (iii) at the time of the Transfers, the Debtor was left with insufficient capital.

---

[2] Exhibit A reflects the Trustee's current knowledge of the Transfers (made by check, wire transfer or their equivalent) to the Defendant during the relevant periods. During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendant during relevant periods. It is the Trustee's intention to avoid and recover all such transfers, whether or not such transfers are presently reflected on Exhibit A. Accordingly, the Trustee reserves her right to supplement and/or amend this information as necessary and appropriate.

20.     General unsecured creditors of the Debtor will receive less than the full value of their claims.

21.     The Transfers are avoidable and recoverable under §§ 542, 544, 548, 550(a)(1), and/or 551 of the Bankruptcy Code.

22.     To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

23.     The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information on the Transfers and any additional transfers, and (ii) seek recovery of such additional transfers.

<u>**COUNT ONE**</u>
**TURNOVER AND ACCOUNTING – 11 U.S.C. § 542**

24.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

25.     The Transfers constitute property of the Estate to be recovered and administered by the Trustee pursuant to § 541 of the Bankruptcy Code.

26.     As a result of the foregoing, pursuant to § 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover from the Defendant of any and all Transfers made by the Debtor, directly or indirectly, to the Defendant.

27.     As a result of the foregoing, pursuant to § 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such Transfers, whether listed on Exhibit A attached hereto or not, received by the Defendant from the Debtor, directly or indirectly.

6

## COUNT TWO
### FRAUDULENT TRANSFERS – 11 U.S.C. §§ 548(a)(1)(A), 550, AND 551

28.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

29.     Certain of the Transfers were made on or within two years before the Petition Date of the Debtor's case (the "Two Year Transfers") as identified on Exhibit C[3] attached hereto.

30.     The Two Year Transfers were made by the Debtor with the actual intent to hinder, delay, and defraud some or all of the Debtor's then existing or future creditors.

31.     The Two Year Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Defendant pursuant to § 550(a).

32.     As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from the Defendant for the benefit of the estate of the Debtor.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendant:

a.     On the First Claim for Relief, pursuant to §§ 542, 550(a), and 551 of the Bankruptcy Code: (a) that the property that was the subject of the Transfers be immediately

---

[3] Exhibit C reflects the Trustee's current knowledge of the Two Year Transfers (made by check, wire transfer or their equivalent) to the Defendant during the relevant period. During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendant during relevant period. It is the Trustee's intention to avoid and recover all such transfers, whether or not such transfers are presently reflected on Exhibit C. Accordingly, the Trustee reserves her right to supplement and/or amend this information as necessary and appropriate.

delivered and turned over to the Trustee, and (b) for an accounting by the Defendant of the property that was the subject of the Transfers or the value of such property;

b.       On the Second Claim for Relief, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, (c) recovering the Two Year Transfers, or the value thereof, from the Defendant for the benefit of the Estate, and (d) awarding attorneys' fees from the Defendant;

c.       On all Claims for Relief, pursuant to federal common law and Va. Code Ann. § 8.01-382 awarding the Trustee prejudgment interest from the date on which the Transfers were received; and

d.       Granting such other and further relief as is just and proper.

Dated: March 24, 2016                           Respectfully submitted,
       Richmond, Virginia

                                                By: /s/ Paula S. Beran
                                                Lynn L. Tavenner, Esquire (VSB No. 30083)
                                                Paula S. Beran, Esquire (VSB No. 34679)
                                                David N. Tabakin, Esquire (VSB No. 82709)
                                                Tavenner & Beran
                                                20 North 8th Street
                                                Richmond, Virginia 23219
                                                Telephone: (804) 783-8300
                                                Telecopier: (804) 783-0178

                                                *Counsel for Lynn Lewis Tavenner,*
                                                *Trustee*

8

<u>Schedule A</u>

## All Transfers

| Payee | Payment Date | Bank Account | Payment Type / Check # | Payment Amount |
|---|---|---|---|---|
| Justin Sigler | 8/1/13 | WF 6492 | Wire Out | $70,000 |
| Justin Sigler | 8/5/13 | WF 6492 | Wire Out | 50,000 |
| | | | | $120,000 |

<u>Schedule B</u>

**Preference Period Transfers**

*None*

Schedule C

**Fraudulent Conveyance Period Transfers**

| Payee | Payment Date | Bank Account | Payment Type / Check # | Payment Amount |
|---|---|---|---|---|
| Justin Sigler | 8/1/13 | WF 6492 | Wire Out | $70,000 |
| Justin Sigler | 8/5/13 | WF 6492 | Wire Out | 50,000 |
| | | | | $120,000 |

# EXHIBIT B

Michael J. Miller (VSB No.: 19171)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
E-Mail: mmiller@millerfirmllc.com

FILED

2016 JUN -7  PM 2:54

U.S. BANKRUPTCY COURT
RICHMOND DIVISION

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF VIRGINIA

## RICHMOND DIVISION

| | |
|---|---|
| IN RE:    JAMES A. MONCURE<br><br>Debtor,<br><br>LYNN L. TAVENNER, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN SIGLER,<br><br>Defendant. | Case No.: 3:14-bk-31546-KLP<br><br>Chapter 7<br><br>Adv. Proc. No.: 3:16-ap-03069-KLP<br><br>**Hearing Date: July 7, 2016<br>Time: 2:00 P.M.<br>Judge: Hon. Keith L. Phillips<br>Courtroom: 5100**<br><br><br>**DEFENDANT JUSTIN SIGLER'S<br>NOTICE OF MOTION AND MOTION TO<br>DISMISS; MEMORANDUM** |

**DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT ON July 7, 2016 at 2:00 P.M. or as soon thereafter as the matter may be heard in Courtroom 5100 of the above-captioned Court, located at 701 E Broad St., Richmond, Virginia 23219, defendant JUSTIN SIGLER (hereinafter, "Defendant") will, and hereby does, move for dismissal under Fed. R. Civ. P. 12(b)(6) of each and all of Plaintiff-Trustee Lynn L. Tavenner's claims against Defendant.

This Motion is made on the grounds that the Complaint fails to state a claim pursuant to F.R.C.P. 12(b)(6) and fails to provide anything but boilerplate, conclusory allegations against Defendant and do not provide plausible entitlement to relief. *See, e.g.* Fed. R. Civ. P. 12(b)(6) and Rule 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007).

PLEASE TAKE FURTHER NOTICE that this Motion to Dismiss is based upon this Notice, the accompanying Memorandum of Points and Authorities, and such further arguments and evidence as Defendant may submit with its Reply or as the Court may consider at the hearing of this Motion.

DATED: June 6, 2016                    Respectfully submitted,

                                       /s/ Michael J. Miller
                                       Michael J. Miller (VSB No.: 19171)
                                       **THE MILLER FIRM, LLC**
                                       108 Railroad Avenue
                                       Orange, Virginia 22960
                                       Ph: (540) 672-4224
                                       Fax: (540) 672-3055
                                       E-Mail: mmiller@millerfirmllc.com
                                       *Attorneys for Defendant*

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
2

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

### I.     INTRODUCTION

On March 24, 2016, exactly two (2) years after the filing of Debtor James A. Moncure's involuntary bankruptcy Petition, Plaintiff-Trustee Lynn L. Tavenner (hereinafter referred to as "Plaintiff-Trustee") filed a scatter-shot of eleventh-hour, nearly identical Complaints (*compare, e.g., Tavenner v. Richard P. Oelrich a/k/a Rick Oelrich*, Adv. Proc. No. 3:16-ap-03038-KLP; *Tavenner v. Justin sigler*, Adv. Proc. No. 3:16-ap-03069-KLP; *Tavenner v. Chesapeake Construction Group, LLC, et al.*, Adv. Proc. No. 3:16-ap-03056-KLP; 3:16-ap-03068-KLP; *Tavenner v. Rachel Sigler*, Adv. Proc. No. 3:16-ap-03068-KLP), including a Complaint against Defendant for 1) Turnover and Accounting pursuant to 11 U.S.C. § 542 AND Fraudulent Transfers pursuant to 11 U.S.C. § § 548(a)(1)(A).

Plaintiff-Trustee's claims arise from events beginning from 2001 through 2005 wherein Debtor James A. Moncure (hereinafter, "Mr. Moncure" or "Debtor") conceived the idea of a corporate technology park, procured the land, and created the Quantico Corporate Center at Stafford (QCCS, also known as the Quantico Corporate Center or QCC). The property was placed in the Moncure Brother's LLC in 2005. Moncure Brothers, LLC subsequently partnered with Silver Companies to develop QCCS in 2006. Mr. Moncure, individually, acquired additional properties over the life of the project and subsequently added them to the QCCS partnership. Mr. Moncure remained a Managing Partner of the project until 2014. QCCS is a business park located in Stafford County, Virginia, along Interstate 95 and US 1, adjacent to Marine Corps Base Quantico. QCCS currently has a number of tenants, including major

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM

1

government contractors, a wide array of businesses, colleges, and others. *See*, Statement of Facts, *United States v. Moncure*, Case No.: 3:14-cr-00137 at p. 1 (E.D. Va. Feb. 6, 2015).

Over the course of many years, Mr. Moncure solicited loans from individuals and entities, such as Defendant, who loaned various sums of money to Mr. Moncure in exchange for repayment on their respective loan(s) with interest. *See*, **Exhibit B (Moncure E-Mail Dated March 4, 2014)**. Mr. Moncure procured these loans by telling prospective lenders he was acquiring land to complete the development of the QCC project. Based on Mr. Moncure's representations, various lenders – including Defendant – loaned various sums of money to Mr. Moncure in exchange for repayment of the loan principal with interest. *See*, Statement of Facts, *United States v. Moncure*, Case No.: 3:14-cr-00137 (E.D. Va. Feb. 6, 2015).

Completely unbeknownst to Defendant, Mr. Moncure began using "new" funds from more recent lenders/investors to meet his repayment obligations to "old" lenders/investors. Beginning some time in 2013, Mr. Moncure began to default on his loan repayment obligations while continuing to accept new money from new lenders/investors. It was not until March, 4, 2014, when Mr. Moncure sent an e-mail to his various lenders and note holders, that Defendant finally learned of Mr. Moncure's fraudulent scheme for the first time. *See*, **Exhibit A (Declaration); Exhibit B (Moncure E-Mail Dated March 04, 2014)** at p. 2 ("I feel for you Noteholders who were unlucky enough to cross my path. I met with you with sincerity, I abused you with my sickness. You are owed this truth."); p. 9 ("To my Noteholders: Forgive me my failings. I wrote you this email because you deserve an explanation […] My intent was sincere to produce returns for each of you. I simply started to sink under the weight […] I ask the world to help my Karen help my Noteholders. They are just simple everyday people that believed in me."). Indeed, Mr. Moncure's friends/lenders, such as Defendant, believed that he was perfectly

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM

2

solvent and was dutifully paying on their respective loans due, at least in part, to the perceived success of Moncure's corporate technology park and financial support anticipated from the sale of Mr. Moncure's farm. *See, e.g.*, **Exhibit A (Declaration); Exhibit B; Moncure E-Mail Dated March 4, 2014.** Indeed, Defendant – *and even Mr. Moncure's own wife* – had absolutely no knowledge of Mr. Moncure's financial difficulties until Mr. Moncure's March 4, 2014 e-mail finally laid out Mr. Moncure's financial affairs. *See*, **Exhibit A (Declaration); Exhibit B; Moncure E-Mail Dated March 04, 2014**.

Shortly after Mr. Moncure's March 4, 2014 e-mail, petitioning creditors filed an involuntary Chapter 7 petition *in re James Ashby Moncure* on March 24, 2014. On March 24, 2016 – exactly two years after Mr. Moncure's Involuntary Petition was filed – Plaintiff-Trustee filed a scatter-shot of generic, conclusory complaints against the innocent victims of Mr. Moncure's conduct to recover various sums of money repaid by Mr. Moncure towards the ordinary fulfillment of his loan obligations. Plaintiff-Trustee's Complaint suffers from several fatal defects, as explained further below.

Plaintiff-Trustee's limited and conclusory allegations against Defendant in her Complaint are precisely the sort of allegations rejected as "formulaic," and "threadbare" by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see, also*, Fed. R. Civ. P. 8(a)(2), Fed. R. Civ. P. 12(b)(6). Plaintiff-Trustee has not shown through her Complaint "enough facts to state a claim to relief that is plausible on its face" against Defendant, and with sufficient specificity to give Defendant "fair notice" of the alleged liability. *See*, *Twombly*, 550 U.S. at 570. Therefore, each of the Plaintiff-Trustee's claims must fail at the outset and for the additional independent reasons as explained below.

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM

3

Plaintiff-Trustee's claim for Turnover and Accounting pursuant to 11 U.S.C. § 542 is misdirected.  Indeed, Section 542 merely permits a Trustee to recover, for the benefit of the bankruptcy estate, transfers that remain owed *from the Defendant to the Debtor*.  Here, Defendant does not owe funds to Mr. Moncure; rather, Mr. Moncure owed funds to Defendant for repayment on Debtor's loan to Mr. Moncure.  Therefore, Plaintiff-Trustee's claim for Turnover and Accounting must fail on this independent basis.

Plaintiff-Trustee's claims for Fraudulent Transfers under 11 U.S.C. § 548 is completely devoid of any specific facts showing that Mr. Moncure actually intended to defraud his creditors when he made the alleged "Fraudulent Conveyance Period Transfers."  Therefore, Plaintiff-Trustee's claims for "Fraudulent Transfer" should be dismissed.

Accordingly, Defendant respectfully requests that the Court dismiss each of Plaintiff-Trustee's claims.

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545, 570; *see, also*, Fed. R. Civ. P. 12(b)(6).

The plausibility analysis is "a context-specific task that requires the reviewing court to draw [upon] its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. "Threadbare recitals of the

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM

4

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Twombly*, 550 U.S. at 555.

In analyzing a pleading, a court should identify and disregard any conclusory allegations because they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. The court should then examine any well-pleaded factual allegations to determine whether they "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681; *see, also, Twombly*, 550 U.S. at 555-56.

## III. ARGUMENT

**A. This Court Should Dismiss Each Of Plaintiff-Trustee's Claims Against Defendant Under Rule 12(b)(6) Because Plaintiff-Trustee's Complaint Fails To Set Forth The Factual Predicate Required By Rule 8(a)(2), *Twombly*, and *Iqbal*.**

Defendant respectfully urges that this Court should dismiss each of Plaintiff-Trustee's claims against Defendant under Rule 12(b)(6) because Plaintiff-Trustee's Complaint fails to set forth the factual predicate required by Rule 8(a)(2)[1], *Twombly*, and *Iqbal*.  Indeed, a vast majority of Plaintiff-Trustee's Complaint consists of threadbare, conclusory incantations of the legal elements of her claims and are, therefore, insufficient to state a claim.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Twombly*, 550 U.S. at 555.  Notwithstanding the Plaintiff-Trustee's threadbare, conclusory recitals her claims, her claims additionally fail for failure to state a claim under Rule 12(b)(6) and for the below independent reasons.

---

[1] F.R.C.P. 8 is applicable to this Adversary Proceeding pursuant to Federal Rule of Bankruptcy Procedure 7008. *See*, Fed. R. Bank. Proc. 7008.

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM

5

**B. This Court Should Dismiss Plaintiff-Trustee's Claim For Turnover And Accounting Under 11 U.S.C. § 542 Because Defendant Does Not Owe Any Funds To Debtor.**

Notwithstanding that Plaintiff-Trustee's "Turnover and "Accounting" claims should be dismissed for failure to plead more than boilerplate, conclusory allegations[2], Defendant respectfully requests that this Court dismiss Plaintiff-Trustee's claim for Turnover and Accounting pursuant to 11 U.S.C. § 542. Section 542(b) provides in part:

> ... [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b). *See*, 5 Collier On Bankruptcy ¶ 542.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.). Section 542 allows a Trustee to recover, for the benefit of the bankruptcy estate, transfers that remain owed from the ***Defendant to the debtor***. In re Bus. Commc'ns of Virginia, Inc., 393 B.R. 133, 140-41 (Bankr. E.D. Va. 2008), aff'd in part, remanded in part sub nom. *In re Bus. Commc'ns of VA, Inc.*, 416 B.R. 476 (E.D. Va. 2009) (emphasis added). A defendant is "of course, entitled to offset any repayment made by him to debtor pursuant to § 553." *Id.*

Here, this Court should dismiss the Plaintiff-Trustee's claim for "Turnover and Accounting" because Defendant simply does not owe anything to the Debtor; rather, Defendant simply received repayment on monies lent from Defendant to Debtor. In any event, Defendant is entitled to an offset for various tranfers made to the Debtor pursuant to Section 553. *Id.*

---

[2] In analyzing a pleading, a court should identify and disregard any conclusory allegations because they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM

6

**C. Plaintiff-Trustee's Claims For "Fraudulent Transfers" Under 11 U.S.C. §§ 548(a)(1)(A), 550, And 551 (Actual Fraud) Should Be Dismissed Because Plaintiff-Trustee Has Failed To Plead Actual Fraud With Sufficient Particularity Required By F.R.C.P. 9(b).**

Plaintiff-Trustee's claims for "Fraudulent Transfers" under 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 (claims for actual fraud) should be dismissed because Plaintiff-Trustee has failed to plead actual fraud with sufficient particularity required by F.R.C.P. 9(b), which is made applicable to this proceeding through Bankruptcy Rule 7009. *See*, Fed. R. Bank. Proc. 7009.

Pursuant to 11 U.S.C. § 548(a)(1)(A), a trustee may avoid a transfer made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted [...]" *See*, 11 U.S.C. § 548(a)(1)(A). Federal Rule of Civil Procedure 9(b) requires that the Trustee sufficiently plead facts showing that Mr. Moncure ***actually intended to hinder, delay, or defraud his creditors at the time he repaid Defendant's debt***. *See*, *e.g. In re James River Coal Co.*, 360 B.R. 139, 162 (Bankr. E.D. Va. 2007); Fed. R. Civ. Proc. 9(b). The Trustee bears the burden of proving the debtor's fraudulent intent by clear and convincing evidence. *In re Summit Place, LLC*, 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002). The presence of a single badge of fraud is not sufficient to establish actual fraudulent intent. *Id*. Mere suspicion of fraudulent intent does not suffice. *In re Ste. Jan–Marie, Inc.*, 151 B.R. 984 (Bankr.S.D.Fla.1993).

Indeed, Plaintiff-Trustee's "Fraudulent Transfers" claim is 1) insufficiently particular to satisfy Rule 9(b) and merely recites boilerplate, conclusory "fraud" language without any specific facts sufficient to place Defendant on notice of the fraudulent conduct alleged – nor has the Trustee 2) plead any facts showing that Mr. Moncure actually intended to defraud his creditors *at the time he made his respective "fraudulent transfers" to Defendant. See,*

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM

7

Complaint at ¶¶ 28-32. Therefore, Plaintiff-Trustee's claims for "Fraudulent Transfers" pursuant to 11 U.S.C. § 548(a)(1)(A), 550, and 551 should be dismissed. Likewise, since the Plaintiff-Trustee has failed to sufficiently plead actual fraud, Sections 550 and 551 are inapplicable here. *In re Ryan*, 472 B.R. 714, 726 (Bankr. E.D. Va. 2012).

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss each of the Plaintiff-Trustee's claims against Defendant.

DATED: June 6, 2016

Respectfully submitted,

/s/ Michael J. Miller
Michael J. Miller (VSB No.: 19171)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
E-Mail: mmiller@millerfirmllc.com

*Attorneys for Defendant*

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM
8

# EXHIBIT A

Michael J. Miller (VSB No.: 19171)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
E-Mail: mmiller@millerfirmllc.com

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF VIRGINIA**

**RICHMOND DIVISION**

| | |
|---|---|
| IN RE: JAMES A. MONCURE, | Case No.: 3:14-bk-31546-KLP |
| Debtor, LYNN L. TAVENNER, TRUSTEE, Plaintiff, | |
| v. | Chapter 7 |
| JUSTIN SIGLER, | |
| Defendant. | |
| | Adv. Proc. No.: 3:16-ap-03069-KLP |
| | Hearing Date: July 7, 2016 |
| | Time: 2:00 p.m. |
| | Judge: Hon. Keith L. Phillips |
| | Courtroom: 5100 |
| | DECLARATION OF JUSTIN SIGLER IN SUPPORT OF |

‖_____‖ MOTION TO DISMISS                                    |

## DECLARATION OF JUSTIN SIGLER IN SUPPORT OF MOTION TO DISMISS

1. I, JUSTIN SIGLER, am a competent individual over the age of 18 and hereby declare that the following facts are true and correct and are based on my personal knowledge, experience, and recollection. I could and would testify competently to the matters herein if called as a witness in this matter.

2. At all times relevant in this matter, until March 4, 2014, I had absolutely no knowledge that Debtor James A. Moncure was insolvent at any point in time.

3. At all times relevant, until March 4, 2014, I believed that Debtor James A. Moncure was solvent, and I believed that any funds I received from him were received in the ordinary course of business and according to ordinary business terms.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia that the foregoing is true and correct.

DATED: June 3 ,

2016

_____

JUSTIN SIGLER

*Declarant*

# DECLARATION

# EXHIBIT B

**Larry Oelrich**

| | |
|---|---|
| **From:** | James Moncure <jmoncure@yahoo.com> |
| **Sent:** | Tuesday, March 04, 2014 4:47 AM |
| **To:** | James Moncure |
| **Subject:** | Karen my love: I have some Noteholders |

Hi Everybody:  With my sincerest apologies; get ready for a real shocker:

I question if this email is appropriate, but I can't quite see things clearly right now.  All I know is I want to right a wrong and I don't have the determination to write more than one letter.  So here it is...out in the open...My apologies for any offense, sharing of privacy, or lack of respect.

To my Noteholders; a group of wonderful people that believed in me:

The insanity all began many years ago with what I believe is the most destructive tax in the US:  The Estate tax.  The Death Tax.  (I realize it's been adjusted a bit since then).  It's a tax levied on a person for doing nothing but dying; which of course is a 100% guarantee of revenue to the government as we all pass away.  A sick premise in itself.  The Estate Tax is a fantastic government abuse.  It values all assets on "highest and best use" which inherently makes our government define for us exactly what highest and best use is.  Their only right to do this is granted by your death.  How sadistic!

A farmer gets the worst of this ill conceived and destructive tax!!!  The government will look at a farmer that died and say the highest and best use of his farm is cutting it into housing lots.  But in my opinion; highest and best use is subjective.  Perhaps to the farmer's family the highest and best use is to let trees stand, or cows graze, or children play on it without having to agree to that in perpetuity.  And all of this begs the questions:  Why is the government, upon somebody's death, deciding for everybody what highest and best use is?  And why is it only measured in dollars?  And why are they taxing you for dying?  Simple:  It's because Congress overspends!

If the tax didn't exist, these totally subjective questions would not need to be answered.  If you want to redistribute wealth, then fine; but is it really in the nation's best interest to redistribute wealth by forcing the selling and destruction of our farms to the benefit of the homebuilder?  Making a family stress for years while arguments of values are waged with the IRS is just sick!!!  Desperately waiting for the godlike granting of a "closing letter".

Congress, you don't only overspend your citizens dollars...What you don't seem to understand is that you are also spending your citizens health and "Time".

1

Time...it's special...it's the ultimate in scarcity; not only are they not making more of it, but you don't know how much you get either. Congress: Treat your citizen's time better than you treat their gold. They will forgive you for wasting their Dollars, they will hate you for wasting their Time. Choose your laws wisely and try to "congress". After all, that word defines your mission.

Put very simply. The farmer's estate is in land...the government wants you to pay up in 9 months. No cash. Fire sale. Forced development. Another beautiful farm gone. Don't have the money or don't "qualify" as a farm for extended payment plan? The IRS' advice to me was..."you better borrow it; go ask family and friends"...And so it begins...a horrible cycle of money changing hands. The worst part is you don't really know if you need it or not. It's easy to look back, but when you are in it at the time...it's pure hell.

The irony is: You are forced to copy the government's favorite game....Borrow from the Chinese...and to pay the Chinese interest....borrow more from the Chinese. If Madoff is in jail...then the entire Congress should be too. Their only scapegoat is that Congress can just print more money (devalue dollar)...You on the other hand...well life just takes you where you never wanted to go.

Congress...So magnificently embarrassing to it's people. Our Congress has become the Office of the Galatically Stupid and Inefficient. Not because a silly law gets passed sometimes, but because you can't work together to change it back. I always thought "congress" was defined as coming together to solve issues. Congress is a body representing a contradiction in terms!

Okay, that's it for my righteous indignation upon our government. They do some good things too. Each of them are like most people...not all good, but not all bad.

***Karen, it's too hard to write a letter directly to you. I'll interject to you when I can. This email is ultimately to my Noteholders.***

When the dust settles, my sweet sweet Karen will have nothing, nothing but many millions in debt, a lost love, and two beautiful young daughters without a father. Such an ugly scar set upon such wonderful people. The dichotomy of my life; such shame. How does one work so hard, think so strategically, be so thoughtful in their approach to real estate, and then piss it all away on the thoughtless "trades" of idiocy; over and over again in hopes of not letting an Estate Tax sink you or the Quantico project you are trying to build. I am Einstein's definition of insanity...I feel for you Noteholders who were unlucky enough to cross my path. I met with you with sincerity, I abused you with my sickness. You are owed this truth. You are owed my project. You are owed my life.

*Karen, my pure beauty: your account stayed empty for 14 years of wonderful marriage and you never once complained. Unbeknownst to you: To the option writers went our, and unfortunately, other people's dollars. In your hands, such good would have been done. You are my light. You are my love. I will forever miss you. Remember me.*

For years I had no income while putting together Quantico and then the worry of Estate Tax on top of that...well, you get yourself in over your head. I was trying to build a project, people were dying on me left and right, the IRS took 4 years to close one Estate, and the whole time you never knew if any of your valuations were going to be acceptable. You just worry. You try to set up backups...you start borrowing. My dear Noteholders, I am drowning in a deep water of good intent and debt...That's the truth. That's what has happened. I'm truly sorry. I tried my best.

You also need to know, that I can blame Congress, IRS, Estate Tax, and all the ripple effects that their actions have on an individual's life (stress, fire sales, stress, time stolen from your family, stress, forced to move, did I mention stress, destruction of beautiful land, stress, etc)...but with all that blame...I am ultimately responsible for your Notes and the mishandling of finances. **You are all such wonderful people**, retirees, business owners, the young, the old. You all believed in me. And I have failed you. I'm truly, truly sorry!

*Karen, I am like one of your former troubled students that you cared so deeply for. I'm so so sorry for the debts I leave you! And to those I've hurt. Try to start a new chapter of life. Smile when you wake tomorrow. Make breakfast. Water your plant with English Breakfast or Earl Grey. After all, tea makes everything better :). Meet a man, a real man...one who's honest in every aspect.*

Gambling is a disease I can't beat and my situation just exacerbated that disease. I can't blame the gambling gene on the Estate Tax, but I wrongly viewed it as a solution. For that I am guilty! Funny enough, I very rarely went to Vegas, or Atlantic City, and never online gambling. My weakness was for the market. My misguided solution to debt was the market. My self therapy was to work, and work hard. I tried to beat it, but like a bottle that keeps calling the alcoholic, the temptation is too much. You become extremely talented at hiding it from family and friends, etc. You become even more talented at hiding it from your employee. But you can never hide it from yourself. It is a dirty feeling and you constantly live with an inner disgrace. I'm tired of that feeling. What will really scramble your brain is that my intentions were purely for the good. We all know where the pavings of that road lead.

*Karen, I hate the time the market stole from us; and I hate more you not knowing why or what I was up to. All you ever wanted was my time. Again and again you pushed the "doubled wide" if it meant more time together. Could there have been more selfishness put upon such innocence? I'm forever sorry!*

3

The option and leveraged markets is a game designed to exploit the propensity of human nature to engage in risk. We will justify such markets as "hedging", but that's a nice name for a old game called "greed"; i.e. "The Gekko that slither's down the Wall and across Stone's Street"; such a brilliant and poisonous story. Who would even dream of creating a system in which the passage of time is designed to erode value for the benefit of those wealthy enough to "write" the contract. Check the records for what I owe to Ameritrade, the risk I was able to take through their trading system is unbelievable. It's staggering! Truly, I've wondered if it was even legal from them to allow such leverage. Some MBA student should research it, you are welcome to my records, it will make one hell of a paper. Ultimately, massive leverage will be this Country's undoing. Add on the banks making "loans" with balloon payments or variable rates or both, i.e. "Products" designed to build wealth for the bank versus wealth for the individual. It's going to be a rude awakening one day.

These days the dry erase board in the bank Board room truly reads only one phrase: "What's the least amount of principal a borrower is willing to pay back monthly and still take the loan out; and how quickly may we adjust the rate, and how quickly can we package and sell the loan?" Allow these "Products" to exist and keep diverting wealth from the citizen to the bank's bottom line and this Country is doomed. **Make banks a promoter of Capitalism, not the beneficiary of it. Guard our banks like a national treasure to facilitate prosperity, not to BE the prosperity.** I could be wrong, but I watched Hank Paulson, I think I saw he had a certain disgust in his careful comments. I think we would be wise to listen to his warnings. Enough of the soap box; as that will become self evident in time.

Having said that: Andy W...you were always such a fantastically nice and great person. Your bank gave a fixed rate, long-term loan on my house. You are the exception these days. I'm sorry I failed you and your bank too. Please work with Karen...she deserves so much better than I provided. My girls will need a familiar home setting for a while. She will have no way to pay the mortgage.

*Karen, the beautiful way you think would do the world such good. Get it out there. We need it. You are so intelligent, not just by your education, but naturally. What is so foggy to the rest of us comes so clearly to you. You allowed my mind to explore; to think outside the box. Thank you so much. Thank you for your quiet strength. Thank you for your questions that always went to the core of an issue. You always saw the fundamental truth in positions. Your intuitive nature exposes you to humanity's wrongs like a raw nerve. You carry such a burden. Help guide! Write! Share! Express! The world needs it. You just happened to fall in love with trouble. But then again, you always want to help the troubled.*

4

You Silver Companies guys have been awesome. Always there for me. It's been a great ride and I hope you have enjoyed Quantico. I tried to build a great park, please take it to the next level. You will see clearly now that I was trying to reorganize our group for my departure. Comments I made will now make sense. Please honor our agreement to develop it and not just sell land. Keep pushing them Danielle! Help Karen wade through my paperwork. I'm enormously proud of you! David and Allison, just plain awesome!

Stafford County: please don't approve re-zonings that don't keep the vision at Quantico. Please don't let Quantico turn into another crappy McDonald's I-95 sign. Remember our swap agreement; the vision was to synergize the intellectual capital of Universities, Private Defense, Gov't Agencies, and the Military. I put this in your hands to honor our swap of land. I am honored you wanted me on the non-profit Board. Paul is doing a great job. Potential tenants check out this link:
http://quanticocorporatecenter.com

Sorry, just couldn't resist one last plug.

I do not believe in Donn Hart's presence on the originally swapped land. I don't like his plans. I don't like his location. It lacks vision and smells of tenants for tenant sake. If his plan belongs anywhere, it belongs on Rt 1. No offense to Donn personally...but as you would not inject cancer into your own body; please do not inject this plan into my Quantico baby. I've worked too hard to keep it pure. Stafford: I'm pretty sure we didn't intend for a Play Pen, Eye Exams, and Kabobs on the main property. I've made mistakes in my life, but I have been true as true can be to the Quantico project. Jud, I respect your desire to keep your word to Donn.

Try not to get tied up in negative headlines, the base will continue to thrive and your County investment will pay off! At least the project is debt free :) ...Unfortunately, I'm not.

*Karen, I just spoke of honor. Perhaps I have no "right". (Ask Scott about that one). Please please know that my intentions have always been good. To some it will seem otherwise. Be proud of me. Show my girls the whole story, the whole me. In the end, you will be the only one knowing both sides. I love you dearly. Such an honor to be yours...to have spent time with you. Live my girl! Live for me.*

To Stafford County: It's no secret that Andy Garret and I are not best friends, but I challenge the County to open the door, sit at a table, and work out a compromise with his project at Widewater. It makes no sense for either party to rape the land at 1 house per 3 acres. Andy has put together a fantastic assemblage in Widewater. Do something great with it, think outside the box, work together, stop the lawsuits...and Andy, don't be too greedy! Do some social good too and not just for the promise of

5

density, but because it's right. Coming from an Atheist: To do good with no promise of eternal life with Jesus, or 72 virgins, or reincarnation is the best feeling. Just give a bit for the sake of giving.

Andy...call Anthony R and Tim B...they are good guys...work it out! And would you Supervisors stop worrying about the FBI, stop talking about them, and just support a good project. Although, watch your back Jack...you did me kind of dirty last go round...especially after asking me for favors at lunch at Castiglia's...if you are worried about them, resign! You probably need too. If I'm wrong there, then just invite the agency to sit in on the engineering meetings. You'll either pick up another tenant or they'll get bored and disappear.

Andy, consider your assemblage as "art". Don't dream of it's value first before you are done painting. Open the door to your partners. Clean the slate; they too have great thoughts and ideas. Let them have meaningful input. To the Partners of Widewater: Forget the dollars already put in, start fresh, forgive each other. I've heard many of your partner's opinions: you are all cutting down trees in front of your own path. Stop it! Build something great for Stafford. Put down the hate, open up...it's 2,000+ acres, with rail, waterfront, I-95, fiber, etc. Chris W and Andy G: you are childhood friends...stop fighting on the sidelines and get in the game together. You two idiots swallow some pride and get on with it. Take it from me, you only live once. Dream! Create!

*Karen, I will forever dream of you. We created two such wonderful little girls. Kiss my sweet Sarah and Anna. Hug them for me. Bike ride with them under Orion's night. Let them know to talk to me. Since my blood runs through their veins; they can hear me within themselves...the beauty of DNA. They couldn't wish for a better Mother. I see your kindness in them.*

I'm so sorry to my Noteholders...My intent has always been to do good, work hard, honor our business, and to make one smile or laugh. Maybe in the process get a kid's college fund started (the adopters of children are special people). I tried to help people where I could, but at some point you realize hurting just one person negates the ten you help. When you reach this level of self-disrespect, the honorable thing is self-punishment. To make a plea of "not guilty", to "work" the legal system, is a shame I won't live with regardless of the verdict. Here's the truth for free, without court costs, and complete with a stern judgement. My talent is also my curse. I choose to lay it down. I'm tired!

Karen and I had the most beautiful relationship. It was unique, but it was so genuine. I have never known a better person. She comprises that 1% of people that most people rarely even meet or know exists. I promise you; your view of the world would be different if you knew Karen as I do. It's a gift to have known her and lived with her. Believe me Noteholders...She has in no way contributed to the debts I incurred.

6

*Karen, There was never a person I enjoyed being out with as much as you. You stole the show of beauty and kindness; politeness and class. Everybody likes you Karen. Everybody! Including our friends at Castiglia's. Karen, I hate to put this on you, but in addition to the Noteholders, I owe Luigi. You must figure out how to get him 400K paid back. (Vince R, perhaps you could help Karen on this one...you remember my text. I promise you, if she ever can, she will repay you. I can't be the reason this particular restaurant goes down. We all have a connection to it). His restaurant depends on it and the Rooftop must happen. Fredericksburg, please eat there often. Please pack his restaurant. Please help me pay my debt to him. If you could have witnessed his willingness to help me, it would make you believe in humanity. His staff was always so kind to us. He and Ciro gave me happiness. They got me back in the soccer goal one last time, the first time since high school. I smiled the whole time. I new my exit was coming, I played hard. I wanted to win for them. I love those two. Karen, Go to their games! I want to see them play through you. Luigi, Ciro...win the season this year! Ciro: Passare la palla ;).*


All: Do your judging of me. I deserve it. But when your finished...please go eat at Castiglia's downtown restaurant.

Noteholders: This is my Karen: A small example...It was Christmas day 2013. She was up before the girls and I woke and drove two hours to Hampton to spend it with a teenage girl that had literally nobody to share Christmas with. When she got back that evening she went to the hospital to visit another one of her down-troddens. People do things for recognition; I sincerely doubt she shared the details of that day with anybody. CASA: You have the best in Karen. Judges: Read her reports! Real time and real care is put into them. She cares so deeply for these kids who have nobody. Ask me why I don't believe in god...it's because she's the one I believe in...the one doing the caring; doing the work. After all, when lost on a stormy sea, a sailor could use a lighthouse more than a church. She is that lighthouse to the neediest of the needy.

*Karen, Hold your head high around Fredericksburg. You are not your husband. People will look...hopefully when they do, they approach you and hug in silence with no judgement on you. Hopefully their heart will see clearly your pain. Go to Ciro's birthday at the restaurant. Treat her kindly Fredericksburg. I challenge you. When you see her, let go of the small town propensity to "talk" and feel her grief. She is the best person you'll ever meet. I love her dearly; get to know her and you will too.*

Karen will be lost in a plethora of lawyers bound to be coming at her with all these notes out there and totally lost in the financial quagmire I created. Her signature was

7

rarely her own, and when it was she signed unknowingly. Be gentle with her please, there is a shit storm coming her way that she knows nothing of or why it's coming. She literally won't have $30 in her account. Fact is, she's never had money in her account. Please don't point the finger at her. She never wanted for fancy, she lived happy in GG's shack for years with me. She has the "alibi of ignorance and innocence" that can be proved, but she's not good at sticking up for herself, only advocating for others. Her focus was always on the needy.

She saw my tremendous stress this week. She shared with me that she awkwardly asked one man for help, not evening knowing what my need was. She had seen me give this person a patient ear to his family problems, bring him laughter, and share my time over the years...I now see that time should have been hers. The discomfort of that interaction put her in the ER for 10 hours. (The MWH ER staff and doctors were awesome btw, and thank you too Dr Mitzi; you are the best). For this I carry a heavy burden as she's never one to "cry wolf" or be dramatic. My mess is affecting her health.

*Thank you Karen, that was so sweet. But this problem you alone can not fix.*

*Karen, be strong my love. There are good people out there. They will see your inner beauty. The world can be hard...there will be cynics to this email, questioning intent, but hang in there. You and I know nothing is ever black and white and to try to explain is folly. I know your truth, I know your soul, I know your being. As for me, I will not bring to anybody any more chaos. Especially to you my sweetheart.*

On the off chance this goes viral, perhaps some of you hedge fund option writers could help her out. She has paid dearly to your benefit. She's not greedy, but she will need to eat, and she's millions upon millions in debt by no fault of her own. Icahn and Ackman, perhaps you two can set down your swords for a moment and help a gal out. Bill and Carl...Honestly, it would make a great headline to see you two kicking in together. And this is one girl you will want to help. Give her a bottle of Herbalife too. She's an extremely honest person...she'll be able to give you a verdict on your battle of billions. Help her help my Noteholders, she will hold this debt on her shoulders as her own. I fear it will make her sick.
    Any of you Hedgies, if inclined, call Grayson Hanes:  703 641 4292
                                ghanes@reedsmith.com

                        K. Fagelson:  703 641 4244
                                kfagelson@reedsmith.com

Larry, Jud, Samer:  I ask you guys to stick up for Karen. With money, with legal, with an ear, and most importantly with love. Be there for her in a meaningful way. Be her family for me. Be close to her...she won't ask for it, but she will need it. Please

proactively help her. Take my girls on a trip with yours. Help them see the world. See Egypt. See Israel. See Moss Neck ;). They are such good children. I promise you, your families will benefit just knowing her. She's that pure. Pure in a way, that when she reads this email, she will feel sorry for you that I put this weight on you. Her heart will ache for you. But I have to try to help her from a distance that I won't be able to return from.

To my Noteholders: Forgive me my failings. I wrote you this email because you deserve an explanation. My projects are real, so please don't feel a fool. I did create with my life. My intent was sincere to produce returns for each of you. I simply started to sink under the weight. I don't know how the system works from here. Grayson Hanes/ K. Fagelson with ReedSmith in Falls Church, VA will soon have copies of your notes. Please reach out to them. Karen's heart will be bleeding for you. She will be on your team. There is not an ounce of greed in her. Her shirt will be your shirt. Should you meet her; you'll understand. I had expected substantially more from a recent sale that would have covered some of you. I constantly spin in my mind how differently I could have handled that negotiation. It haunts me.

*Karen, I'm so sorry you are paying twice. Having to absorb my debt and then having to lose me. Perhaps in some ways the latter will turn out to your favor.*

Jud, if I can, I'll let you know what I find on the other side. If there is a Hell, I'm a shoe in for Dante's First circle, but I'll be sure to meet Derrick Burts: aka, "Butt Hurts" in the Eighth for a little talk.

*Karen, Remember humor. Laugh! Live! Smile that beautiful smile of yours! Debate Scott...he's coming around! Keep that Group Text going! They are the best friends one could have! Make sure Sarah learns the piano...Hans Zimmer's "Time" is a beauty. Have her try a little Michael Nyman's, "The Heart Asks Pleasure First, The Promise". I loved playing these two songs on the piano. Thank you Mom for making me practice :). Karen, I always thought of our love while playing. The tears I'm shedding that my dear little Anna will be in pointe soon. Have her dance for me. Thank you Avery for letting me watch Saturday's practice. Little did you know how special it was for me. Remember Karen...it's a new chapter for you...life's an adventure. Enjoy seeing what's around the next corner. I'm excited for you and the girls!!!*

*Your troubled James...love you! Q-tip/Toothpick!*

*****I ask the world to help my Karen help my Noteholders. They are just simple everyday people that believed in me. Thanks.

9

PS: Yahoo: Please change this newest email format. It's really confusing. And please don't fire the designer, I see that they were trying to make it better...can't fault somebody for trying :).

*Karen: One last thing...I believe Dorris Buffett lives two blocks down. Tell her your non profit idea! It's good. I'm an idea's person...I'm telling you "Pandora's Box" is genius. Pure genius! See if she'll help you. Many will benefit. Bill Freehling...publish Karen's idea, get it out there. Help get her idea to big media, philanthropists, companies...it's really is good.*

*Sarah and Anna: Zombies aren't real :)...your Dad's love is! Live a long good life for me! Mom, John, George: show the girls my Harrogate! Get them an ice cream from Valley Gardens. Get them to a Katy Perry concert.*

*Karen: A poem for you I've always loved. Notice the author's name :)*

Remind me not, remind me not,
Of those beloved, those vanish'd hours,
When all my soul was given to thee;
Hours that may never be forgot,
Till Time unnerves our vital powers,
And thou and I shall cease to be.

Can I forget---canst thou forget,
When playing with thy 'brunette' hair,
How quick thy fluttering heart did move?
Oh! by my soul, I see thee yet,
With eyes so languid, breast so fair,
And lips, though silent, breathing love.

When thus reclining on my breast,
Those eyes threw back a glance so sweet,
As half reproach'd yet rais'd desire,
And still we near and nearer prest,
And still our glowing lips would meet,
As if in kisses to expire.

And then those pensive eyes would close,
And bid their lids each other seek,
Veiling the azure orbs below;
While their long lashes' darken'd gloss
Seem'd stealing o'er thy brilliant cheek,
Like raven's plumage smooth'd on snow.

10

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA

**Richmond**        ☑ Division

**In re**  James A. Moncure

           **Debtor(s)**

Case No. 3:14-bk-31546 / 3:16-ap-03069

Chapter  7

### REQUEST FOR WAIVER TO FILE BY COMPUTER DISKETTE OR CONVENTIONALLY

Michael J. Miller _____ hereby request(s) that the Court waive the requirement of submitting the filing, more specifically described as Notice of Mtn and Mtn to Dismiss _____ through use of the Internet component of CM/ECF, as required by the Electronic Case Files Policy.

Due to financial constraints and the inability to access the equipment necessary to comply with this requirement, the undersigned requests that the above-identified document(s) be submitted for filing by:

computer diskette   ( ) [check here if applicable], or

conventional means (✔) [check here if applicable].

The undersigned acknowledges that should the Court obtain information which indicates that the undersigned did not accurately represent the basis for requesting the waiver, the matter will be referred to the judge presiding over the case for appropriate action, which may include sanctions against the party making the false certification or an order striking the pleading or other paper without further notice.

_____
Signature of Attorney (or Requestor)
State Bar No.  19171
(If applicable)
Address & Telephone No.
108 Railroad Avenue
Oranage, Virginia 22960
For: Defendant

Date: 6/7/2016 _____

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

In re:

James Ashby Moncure,                                    Case No. 14-31546-KLP
                                                        Chapter 7
     Debtor.

Lynn L. Tavenner, Trustee,

     Plaintiff,

v.                                                      AP No. 16-03069-KLP

Justin Sigler,

     Defendant.

**PRETRIAL ORDER**

Counsel attended a pretrial conference held by the Court on March 15, 2017.

Counsel estimated the time necessary to conduct the trial of this case to be **2 Days**. As

promptly as possible, counsel must advise the Court (1) if the time necessary to conduct

the trial will exceed the estimated trial time, or (2) if a settlement is reached in this case.

**IT IS ORDERED** that the following schedule is established in this adversary

proceeding. Failure to comply with this Order shall result in appropriate sanctions.

1.     The trial shall be held in the United States Bankruptcy Court, **Room 5100**,

United States Bankruptcy Courthouse, 701 East Broad Street, Richmond, Virginia on

**September 11 and September 12, 2017** (the "Trial Date") at **10:00 AM**.

2.     The parties shall make the pretrial disclosures required under Rule

7026(a)(1) of the Federal Rules of Bankruptcy Procedure within **14 days** following the

entry of this order.

3. On or before **21 days prior to the Trial Date** counsel for the parties shall meet at a mutually convenient location and make a good faith effort to narrow the issues in the trial and to enter into written stipulations of any uncontroverted facts (the "Stipulation"). The Stipulation (or in lieu thereof, a joint statement of counsel that no agreement as to any uncontroverted facts could be reached) shall be filed with the Court on or before **14 days prior to the Trial Date**.

4. Notwithstanding the provisions of Rule 7026(d)(1) of the Federal Rules of Bankruptcy Procedure, discovery may commence immediately and shall be completed on or before **21 days prior to the Trial Date**.

5. All motions for summary judgment and all other dispositive motions must be filed no later than **30 days prior to the Trial Date**.

6. The parties shall make the disclosures of expert testimony required by Rule 7026(a)(2) of the Federal Rules of Bankruptcy Procedure no later than **60 days prior to the Trial Date**, or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 7026(a)(2)(B) of the Federal Rules of Bankruptcy Procedure, on or before **21 days after the disclosure** made by the other party.

7. On or before **14 days prior to the Trial Date**, counsel for the parties shall file with the Clerk a list of proposed exhibits and the proposed exhibits. The exhibits shall be filed in accordance with the attached instructions which are hereby incorporated and made a part of this order.

8. Objections to any of the proposed exhibits shall be filed on or before **7 days prior to the Trial Date**. Exhibits to which no timely objection has been made will stand as admitted into evidence.

9. Counsel for Plaintiff shall file a list of witnesses in accordance with Rule 7026(a)(3)(A) of the Federal Rules of Bankruptcy Procedure that Plaintiff intends to call to testify at trial on or before **14 days prior to the Trial Date**; and counsel for Defendant shall file a list of witnesses in accordance with Rule 7026(a)(3)(A) of the Federal Rules of Bankruptcy Procedure that Defendant intends to call at trial not later than **10 days prior to the Trial Date**. Counsel for Plaintiff may file a list of rebuttal witnesses on or before **7 days prior to the Trial Date**.

10. Counsel for the parties shall file a designation of those witnesses whose testimony is expected to be presented by means of a deposition and a redacted transcript of the pertinent portions of the deposition testimony on or before **14 days prior to the Trial Date**. Any other party may file counter designations of the redacted portions of the deposition transcript they deem relevant not later than **10 days prior to the Trial Date**. Objections to the use under Rule 7032(a) of the Federal Rules of Bankruptcy Procedure of a deposition so designated by another party shall be filed on or before **7 days prior to the Trial Date**.

11. Should a settlement be reached, counsel shall immediately file any motion required by Rule 9019 of the Federal Rules of Bankruptcy procedure for approval of the settlement (the "Rule 9019 Motion"). Counsel shall schedule a hearing to be conducted not later than **28 days after the Trial Date** to consider any Rule 9019 Motion and for presentation of a final order.

12.     It is the responsibility of all counsel to be thoroughly acquainted with and follow the procedures set forth in the statutes, the national and local bankruptcy rules, and the requirements of the Judge.

13.     The Clerk shall forward a copy of this order to all counsel of record.

Any party not consenting to the entry of a final order by the Bankruptcy Judge shall file a Motion to Withdraw the Reference or for other appropriate relief within **30 days** of the entry of this Scheduling Order, and shall promptly set the matter for hearing. The failure to comply with the terms of this paragraph shall be deemed to constitute consent to the entry of final orders by the Bankruptcy Judge.

**SO ORDERED**, this 22nd day of March, 2017.


_____/s/ Keith L. Phillips_____
UNITED STATES BANKRUPTCY JUDGE



Entered on Docket:   March 23, 2017

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**INSTRUCTIONS**
**FOR PREPARING EXHIBIT LIST, PREMARKING EXHIBITS**

**NOTE: The following procedures are to be followed in electronic (ECF) cases.**

Exhibits List

The Exhibits List must be typewritten -double spaced - and should briefly describe each Exhibit to be introduced at trial.

Exhibits

Each Exhibit should be numbered on a colored adhesive label, in accordance with the following:

PLAINTIFF* YELLOW - numerically beginning No. 1
DEFENDANT* BLUE - alphabetically, e.g., A, B, C, . . AA, AB, etc.
GOVERNMENT YELLOW - numerically beginning No. 101

*In cases with more than one party, please identify the appropriate party on each Exhibit.

The adhesive labels should be affixed at the bottom of the Exhibit. Exhibits must be numbered to correspond with the numbers assigned on the Exhibits List to such Exhibit.

Exhibits should be letter size (8½" x 11"), photo-reduced if necessary, pursuant to Local Rule 5005-1(C)(3).

If an Exhibit is a small document, such Exhibit must be stapled to a sheet of standard sized paper, and the Exhibit label affixed to the bottom of the sheet of paper. In the case of a group of photographs or checks, please affix a separate label to each photograph or check, and number as follows:

PLAINTIFF - 1-A, 1-B, 1-C, etc.
DEFENDANT - A-1, A-2, A-3, etc.
GOVERNMENT - 101-A, 101-B, 101-C, etc.

The marked Exhibits must be firmly bound and tabbed. The originals and two copies of both the Exhibits and Exhibits List should be filed with the Court by the date set in the Pretrial Order. Sufficient copies should be available for each opposing counsel.

It is desirable that counsel stipulate as to the admissibility of as many Exhibits as possible, so that such Exhibits may be admitted into evidence at the beginning of trial.

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JAMES A. MONCURE,<br>Debtor | Case No.<br>14-31546-KLP |
| LYNN L. TAVENNER, TRUSTEE,<br>Plaintiff | Chapter<br>7 |
| JUSTIN SIGLER,<br>Defendant | Adv. Proc. No.<br>16-03069-KLP |

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION
TO DISMISS THE TRUSTEE'S COMPLAINT**

On June 7, 2016, Defendant Justin Sigler (the "Defendant") filed a motion (the "Motion to Dismiss") together with a memorandum and declaration in support (ECF No. 4), wherein he moved to dismiss both counts of the Complaint (the "Complaint") (ECF No. 1) of Plaintiff Lynn L. Tavenner, Chapter 7 Trustee (the "Trustee") of the estate of James Ashby Moncure (the "Debtor"). The Trustee filed an opposition to the Motion to Dismiss on March 8, 2017. ECF No. 10. On March 13, 2017, the Defendant filed a reply in support of the Motion to Dismiss. ECF No. 11. This Court heard (the "Hearing") the Motion to Dismiss on March 15, 2017, wherein the Court denied the Motion to Dismiss with respect to Count I, and partially granted the Motion to Dismiss with respect to Count II solely on the basis that the Complaint needed an explicit statement that the Two Year Transfers (as defined in the Complaint) were a part of the Debtor's Ponzi scheme, to

_____
Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran, PLC
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-1078

*Counsel for Lynn Lewis Tavenner, Chapter 7 Trustee*      1

otherwise tie together the numerous inferences found in the Complaint that the Two Year Transfers were a part of the Debtor's Ponzi scheme. In addition, the Court granted the Trustee leave to amend her Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 15(a)(2) requiring only that the Complaint include an explicit statement that the Two Year Transfers were a part of the Debtor's Ponzi scheme. The Court also found that the Amended Complaint shall relate back to the date of the Complaint pursuant to Federal Rule of Civil Procedure 15(c).

For the reasons set forth by the Court at the Hearing, it is hereby ORDERED that:

1. As to Count I, the Motion to Dismiss is DENIED;

2. As to Count II, the Motion to Dismiss is PARTIALLY GRANTED as provided herein;

3. The Trustee shall file her Amended Complaint no later than fourteen (14) days from the entry of this Order, with said Amended Complaint relating back to the date of the filing of the Complaint;

4. The Defendant shall file a responsive pleading no later than ten (10) days from the date of filing of the Amended Complaint;

5. The clerk is directed to send a copy of this order to Trustee's counsel and to counsel for the Defendant.

Entered:  Mar 24 2017

/s/ Keith L. Phillips
_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:   Mar 24 2017

2

WE ASK FOR THIS:

*/s/ Paula S. Beran*
Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va. Bar No. 34679)
David N. Tabakin, Esquire (Va. Bar No. 82709)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

  *Counsel for Lynn Lewis Tavenner, Trustee*

SEEN AND OBJECTED TO:

*/s/ Michael J. Miller*
Michael J. Miller, Esq. (VSB No.: 19171)
Curtis G. Hoke, Esq. (*pro hac vice pending*)
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
  *Counsel for the Defendant*

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

  Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

        */s/ Paula S. Beran*
        Counsel

Service of Entered Order:

Paula S. Beran, Esquire
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219

Michael J. Miller, Esq.
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960

3

# EXHIBIT E

Michael J. Miller (VSB No.: 19171)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
E-Mail: mmiller@millerfirmllc.com

*Attorneys for Defendant*

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| IN RE:    JAMES A. MONCURE<br><br>       Debtor,<br><br>LYNN L. TAVENNER, TRUSTEE,<br><br>       Plaintiff,<br><br>v.<br><br>JUSTIN SIGLER,<br><br>       Defendant. | Case No.: 3:14-bk-31546-KLP<br><br>Chapter 7<br><br>Adv. Proc. No.: 3:16-ap-03069-KLP<br><br>Hon. Keith L. Phillips<br><br><br>**DEFENDANT JUSTIN SIGLER'S PARTIAL ANSWER TO PLAINTIFF'S COMPLAINT; AFFIRMATIVE DEFENSES; PRAYER FOR RELIEF; DEMAND FOR JURY TRIAL**<br><br>**JURY TRIAL DEMANDED** |

DEFENDANT'S PARTIAL ANSWER; DEMAND FOR JURY TRIAL
1

**DEFENDANT JUSIN SIGLER'S PARTIAL ANSWER TO PLAINTIFF'S COMPLAINT; AFFIRMATIVE DEFENSES; PRAYER FOR RELIEF; DEMAND FOR JURY TRIAL**

### I. PARTIAL ANSWER

Defendant Justin Sigler ("Defendant"), hereby submits this Answer to Plaintiff's Complaint to Avoid Transfers, to Recover Property and for Related Relief ("Complaint") as follows.  As noted herein, on March 24, 2017, this Court ruled on Defendant's previously-filed Motion to Dismiss as follows: Count I: Denied; Count II: Partially granted with 14 days to amend.  Defendant therefore answers Count I herein; Defendant anticipates filing a responsive pleading as to Count II once Plaintiff has filed her First Amended Complaint, if any.

Defendant answers each of the allegations in the Plaintiff's Complaint as to Count I[1], as may be specifically admitted or denied below, referring to paragraphs as numbered in the Plaintiff's Complaint.  Silence as to any allegations shall constitute a denial.

Answering the Plaintiff's opening allegations, the averments contained therein are conclusions of law which no response is required. To the extent that a response is required, Defendant denies these allegations.

### JURISDICTION

1.      The allegations in paragraph 1 are conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant is without sufficient knowledge or information to either admit or deny the allegations contained therein and therefore denies the same and leaves Plaintiff to her proofs.

---

[1] Defendant does not answer Count II whatsoever herein; rather, Defendant anticipates filing a responsive pleading to Count II once the  Plaintiff has filed her First Amended Complaint, if any.

DEFENDANT'S PARTIAL ANSWER; DEMAND FOR JURY TRIAL
2

2.      The allegations in paragraph 2 are conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant is without sufficient knowledge or information to either admit or deny the allegations contained therein and therefore denies the same and leaves Plaintiff to her proofs.

3.      The allegations in paragraph 3 are conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant is without sufficient knowledge or information to either admit or deny the allegations contained therein and therefore denies the same and leaves Plaintiff to her proofs.

## THE PARTIES

4.      Defendant admits the allegations in paragraph 4.

5.      The allegations in paragraph 5 are conclusions of law to which no response is required.  To the extent that a response is required, Defendant admits that he was a lender or otherwise maintained a business relationship with the Debtor.

## FACTUAL BACKGROUND

6.      The allegations in paragraph 6 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

7.      The allegations in paragraph 7 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

8.      The allegations in paragraph 8 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the

allegations in this paragraph and therefore denies the same, except that Defendant admits that certain investors received promissory notes to document amounts loaned to the Debtor.

9. The allegations in paragraph 9 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same. To the extend the Plaintiff avers facts contained in the Plea Agreement and Statement of Facts (*see*, Plea Agreement, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 26; Statement of Facts, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27), Defendant responds that the documents cited are the best evidence of its contents and speaks for itself.

10. The allegations in paragraph 10 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same. To the extent the Plaintiff avers facts contained in the Statement of Facts  in *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27, Defendant responds that the document cited is the best evidence of its contents and speaks for itself.

11. The allegations in paragraph 11 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same. To the extent the Plaintiff avers facts contained in the Statement of Facts, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27, Defendant responds that the document cited is the best evidence of its contents and speaks for itself.

12.     The allegations in paragraph 12 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same, except that Defendant admits that on March 4, 2014, the Debtor sent a lengthy e-mail to his investors and business partners apologizing for certain of his indiscretions.

13.     Defendant admits to the allegations in paragraph 13.

14.     Defendant admits to the allegations in paragraph 14.

15.     Defendant admits to the allegations in paragraph 15.

16.     Defendant admits to the allegations in paragraph 16.

17.     The allegations in paragraph 17 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same, except that Defendant admits that the Debtor was sentenced to a term of not less than five years in a federal penitentiary.

18.     Defendant admits the allegations in paragraph 18.

19.     The allegations in paragraph 19 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same.  By way of further response, this paragraph contains conclusions of law for which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations in this paragraph.

20.     The allegations in paragraph 20 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same.  By way of further response, this

paragraph contains conclusions of law for which no response is required. To the extent that a response is deemed required, Defendant denies the allegations in this paragraph.

21. The allegations in paragraph 21 contain conclusions of law for which no response is required. To the extent that a response is deemed required, Defendant denies the allegations in this paragraph.

22. The allegation in paragraph 22 is self-referential and speaks for itself, which no response is required. To the extent that a response is deemed required, Defendant denies the allegation in this paragraph.

23. The allegation in paragraph 23 is self-referential and speaks for itself, which no response is required. To the extent that a response is deemed required, Defendant denies the allegation in this paragraph.

## COUNT I

### TURNOVER AND ACCOUNTING – 11 U.S.C. § 542

24. Answering paragraph 24, Defendant repeats and restates her answers in the above paragraphs as if set forth fully herein.

25. The allegations in paragraph 25 contain conclusions of law and merely re-state the elements of the Plaintiff's cause of action for which no response is required. To the extent that a response is required, Defendant denies the allegations in this paragraph.

26. The allegations in paragraph 26 contain conclusions of law and merely re-state the elements of the Plaintiff's cause of action for which no response is required. To the extent that a response is required, Defendant denies the allegations in this paragraph.

27.     The allegations in paragraph 27 contain conclusions of law and merely re-state the elements of the Plaintiff's cause of action for which no response is required.  To the extent that a response is required, Defendant denies the allegations in this paragraph.

## COUNT II

### FRAUDULENT TRANSFERS – 11 U.S.C. §§ 548(a)(1)(A), 550, AND 551

28 – 32. Paragraphs 28-32 relate only to Plaintiffs claim regarding fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551.  Pursuant to this Court's Order partially granting Defendant's Motion to Dismiss as to Count II, Defendant does not respond to these allegations; rather, Defendant anticipates that he will file a responsive pleading as to Count II once the Plaintiff has filed a First Amended Complaint, if any.  *See*, n. 1, *supra*.

In response to the allegations in Plaintiff's "WHEREFORE" paragraph following paragraph 38, Defendant demands that judgment be entered in her favor and against Plaintiff, that Plaintiff's Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

In response to Plaintiff's First Claim for Relief, Defendant responds that Plaintiff is not entitled to this relief; rather, Defendant demands that judgment be entered in his favor and against Plaintiff, that Plaintiff's Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Defendant anticipates responding to the Plaintiff's Second Claim for Relief once the Trustee has filed her First Amended Complaint, if any.

DEFENDANT'S PARTIAL ANSWER; DEMAND FOR JURY TRIAL
7

In response to Plaintiff's request on "all Claims for Relief", Defendant responds that Plaintiff is not entitled to this relief[2]; rather, Defendant demands that judgment be entered in her favor and against Plaintiff, that Plaintiff's Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

In response to sub-paragraph e., Defendant responds that Plaintiff is not entitled to this relief; rather, Defendant demands that judgment be entered in her favor and against Plaintiff, that Plaintiff's Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

## II. SEPARATE AND AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint, in whole or in part, fails to state a claim or cause of action against Defendant upon which relief can be granted.

2.     Defendant is entitled to the "ordinary course of business" or "ordinary business terms" affirmative defense pursuant to 11 U.S.C. § 547(c)(2): "The trustee may not avoid under this section a transfer — (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was — (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms."

---

[2] Defendant reserves his response as to Count II; Defendant will respond to this count once the Trustee has filed her First Amended Complaint, if any.

DEFENDANT'S PARTIAL ANSWER; DEMAND FOR JURY TRIAL
8

3.      Defendant hereby gives notice that he intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves her right to amend this Answer to assert such defenses.

## III. PRAYER FOR RELIEF

Having fully provided an Answer to Plaintiff's Complaint, Defendant therefore also denies Plaintiff's prayer for relief.

WHEREFORE, Defendant prays for relief as follows:

1.      The Complaint against Defendant be dismissed with prejudice;

2.      The Defendant be awarded his reasonable attorney's fees and costs.

3.      That Defendant be awarded such other and further relief as the Court deems just and proper.

## IV. DEMAND FOR JURY TRIAL

Defendant hereby respectfully makes a demand for trial by a jury of his peers on all issues so triable.

DATED: April 6, 2017                          Respectfully submitted,


                                              */s/ Michael J. Miller*
                                              Michael J. Miller (VSB No.: 19171)
                                              **THE MILLER FIRM, LLC**
                                              108 Railroad Avenue
                                              Orange, Virginia 22960
                                              Ph: (540) 672-4224
                                              Fax: (540) 672-3055
                                              E-Mail: mmiller@millerfirmllc.com

                                              *Attorneys for Defendant*

DEFENDANT'S PARTIAL ANSWER; DEMAND FOR JURY TRIAL
9

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 6th day of April, 2017, a true and correct copy of the forgoing

document served via the Court's CM/ECF electronic filing system to those parties listed on the

docket as being entitled to such electronic notice and via electronic mail to the following:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
David N. Tabakin, Esq.
**Tavenner & Beran, PLC**
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Tel: (804) 783-8300
Fax: (804) 783-1078
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com
dtabakin@tb-lawfirm.com

*/s/ Michael J. Miller*
Michael J. Miller

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| In re:   James A. Moncure, | | Case No. |
| Debtor | | 14-31546-KLP |
| | | |
| Lynn L. Tavenner, Trustee, | | Chapter |
| Plaintiff | | 7 |
| | | Adv. Proc No. |
| Justin Sigler, | | 16-03069-KLP |
| Defendant | | |

**AMENDED COMPLAINT TO AVOID TRANSFERS,**
**TO RECOVER PROPERTY, AND FOR RELATED RELIEF**

Lynn L. Tavenner, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of James A. Moncure (the "Debtor"), by the undersigned counsel, files this Complaint to Avoid Transfers, to Recover Property, and for Related Relief pursuant to §§ 105(a), 542, 544, 548(a), 550(a), and/or 551 of 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), and other applicable law, for turnover, accounting, fraudulent conveyances, and damages in connection with certain transfers of property by the Debtor to or for the benefit of Defendant. The Trustee seeks to set aside such transfers and preserve the property for the benefit of the Debtor's creditors and for cause states as follows:

_____
Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran, PLC
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-1078

*Counsel for Lynn Lewis Tavenner, Chapter 7 Trustee*     1

## JURISDICTION

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue lies properly in this Court pursuant to 28 U.S.C. § 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E), (H), and (O).

## THE PARTIES

4. The Plaintiff is Lynn L. Tavenner, the Chapter 7 Trustee (the "Trustee" or the "Plaintiff") of the Debtor's Estate who was appointed as interim trustee on March 28, 2014, and she continues to serve as Trustee.

5. Justin Sigler (the "Defendant") is a person as defined in § 101(41) of the Bankruptcy Code residing in and/or conducting business in the United States and, at all times material hereto, was a lender, investor, vendor, supplier, or otherwise maintained a business relationship with the Debtor.

## FACTUAL BACKGROUND

6. During the years 2001 through 2005, the Debtor conceived the idea of a corporate technology park, procured certain land, and created the Quantico Corporate Center at Stafford ("QCC", also known as the "Quantico Corporate Center"). QCC is a business park located in Stafford County, Virginia, along Interstate 95 and US 1, adjacent to Marine Corps Base Quantico. QCC currently has a number of tenants, including major government contractors, a wide array of businesses, colleges, and others. QCC also currently has certain developed and undeveloped land. Upon information and belief, to facilitate the creation of the technology park, certain property identified for the development of the QCC concept was placed in the name of

2

Moncure Brothers, LLC. The Debtor is one of three members of Moncure Brothers, LLC, and upon information and belief, served as the managing member through the Petition Date (as hereinafter defined). Moncure Brothers, LLC subsequently partnered with entities commonly referred to as the Silver Companies[1] to develop the QCC project. The Debtor, individually, acquired certain additional properties over the life of the project and subsequently added those properties to the QCC project. At all relevant times, the Debtor served as a managing partner of the QCC project.

7.      Beginning prior to January 2010 and continuing through at least March 2014, the Debtor devised, intended to devise, and executed a scheme to defraud individuals and entities.

8.      Over a course of many years, the Debtor solicited investors to loan him money. Investors believed they were investing in the acquisition of land for, and development of, the QCC project. The Debtor solicited investors, in part, by telling them he was acquiring land to complete the development of the QCC project. Upon information and belief, certain investors received promissory notes to document amounts loaned to the Debtor.

9.      For the period beginning in January 2010 up through April 2014, investigators with the Federal Bureau of Investigation ("FBI") traced more than $35 million of deposits into accounts held in the Debtor's name. A substantial portion of these funds appears to be from individuals or entities having, or believing to have, a financial interest or investment in the QCC project. Certain of these funds received were clearly used for purposes other than the development of the QCC project. For example, FBI investigators traced more than $16,000,000 as having been transferred into investment trading accounts from which the Debtor actively day-traded stocks and options. Analysis of the trade, deposit, and withdrawal records of these

---

[1] Entities owned, at least in part, by Carl D. Silver.

3

accounts reveal that the Debtor lost more than $14,000,000 over a four-year period through poor trade results and expenses associated with the trading accounts. The Debtor admitted the same in connection with the Plea Agreement and Statement of Facts entered into by and between the Debtor and the United States of America whereby the Debtor plead guilty to a count of Wire Fraud in violation of 18 U.S.C. § 1343 and Engaging in Unlawful Monetary Transactions in violation of 18 U.S.C. § 1957(a). *See* Plea Agreement, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 26; Statement of Facts, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27.

10.     As part of the Debtor's scheme to defraud individuals and entities, the Debtor also routinely utilized "new" investor funds to pay returns or make repayments to other investors. Statement of Facts, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27.

11.     As part of the Debtor's scheme to defraud individuals and entities, the Debtor made repayments on certain of the investments. Statement of Facts, United States v. Moncure, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27. The Debtor also paid individuals and entities for other goods and services he desired. Beginning sometime in 2013, the Debtor began to default on loan repayments to his investors while continuing to accept new investment money as part of the Debtor's scheme to defraud individuals and entities.

12.     With the Debtor's scheme coming unraveled, on March 4, 2014, he sent a lengthy email to his investors and business partners apologizing for certain of his indiscretions.

13.     On March 24, 2014 (the "Petition Date"), N. Brent Higginbotham, Doris G. Higginbotham, Katherine Higginbotham Brown, Forrest S. Higginbotham, and Thomas Higginbotham, by certifying under penalty of perjury that each held claims against the Debtor,

4

instituted an involuntary bankruptcy petition in this Court against the Debtor under Chapter 7 of the Bankruptcy Code in this Court. Thereafter, on March 27, 2014, the Debtor filed the Debtor's Consent to Entry of Order for Relief. Subsequently, this Court entered an Order for Relief on March 27, 2014.

14.    On March 28, 2014, this Court appointed Lynn L. Tavenner as interim trustee of the Debtor's Estate, and she continues to serve as Trustee.

15.    On August 24, 2014, the United States of America formally charged the Debtor, and an arrest warrant was issued.

16.    On October 7, 2014, the Debtor was officially indicted on seven counts, including mail fraud, wire fraud, and engaging in unlawful monetary transactions.

17.    The Debtor acknowledged his guilt, admitted to the fraudulent scheme, and was sentenced to a term of not less than five years in a federal penitentiary.

18.    Prior to the Petition Date, the Debtor made one or more transfers to or for the benefit of the Defendant, including without limitation those payments set forth on **Exhibit A**, together with any other payments that may be subsequently identified (collectively, the "Transfers").[2]

19.    At all times relevant hereto, the Debtor's liabilities were greater than his assets. At all times relevant hereto, the Debtor was insolvent in that (i) his assets were worth less than the value of his liabilities; (ii) he could not meet his obligations as they came due; and (iii) at the time of the Transfers, the Debtor was left with insufficient capital.

---

[2] Exhibit A reflects the Trustee's current knowledge of the Transfers (made by check, wire transfer, or their equivalent) to the Defendant during the relevant periods. During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendant during relevant periods. It is the Trustee's intention to avoid and recover all such transfers, whether or not such transfers are presently reflected on Exhibit A. Accordingly, the Trustee reserves her right to supplement and/or amend this information as necessary and appropriate.

20.     General unsecured creditors of the Debtor will receive less than the full value of their claims.

21.     The Transfers are avoidable and recoverable under §§ 542, 544, 548, 550(a)(1), and/or 551 of the Bankruptcy Code.

22.     To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

23.     The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information on the Transfers and any additional transfers, and (ii) seek recovery of such additional transfers.

<u>**COUNT ONE**</u>
**TURNOVER AND ACCOUNTING – 11 U.S.C. § 542**

24.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

25.     The Transfers constitute property of the Estate to be recovered and administered by the Trustee pursuant to § 541 of the Bankruptcy Code.

26.     As a result of the foregoing, pursuant to § 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover from the Defendant of any and all Transfers made by the Debtor, directly or indirectly, to the Defendant.

27.     As a result of the foregoing, pursuant to § 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such Transfers, whether listed on Exhibit A attached hereto or not, received by the Defendant from the Debtor, directly or indirectly.

6

Case 3:17-cv-00502-MHL Document 1-3 Filed 07/12/17 Page 71 of 228 PageID# 97

## COUNT TWO
### FRAUDULENT TRANSFERS – 11 U.S.C. §§ 548(a)(1)(A), 550, AND 551

28. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

29. Certain of the Transfers were made on or within two years before the Petition Date of the Debtor's case (the "Two Year Transfers") as identified on Exhibit C[3] attached hereto.

30. The Two Year Transfers were made by the Debtor with the actual intent to hinder, delay, and defraud some or all of the Debtor's then existing or future creditors.

31. The Two Year Transfers were a part of the Debtor's ongoing Ponzi scheme.

32. Unlike many of the investors who lost significant sums of money in the Debtor's Ponzi scheme, the Defendant was paid in full all amounts owed with above market interest rates and/or other unusual terms.

33. Shortly before each of the Two Year Transfers, the Debtor received funds from investors other than the Defendant.

34. The Two Year Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Defendant pursuant to § 550(a).

35. As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the

---

[3] Exhibit C reflects the Trustee's current knowledge of the Two Year Transfers (made by check, wire transfer, or their equivalent) to the Defendant during the relevant period. During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendant during relevant period. It is the Trustee's intention to avoid and recover all such transfers, whether or not such transfers are presently reflected on Exhibit C. Accordingly, the Trustee reserves her right to supplement and/or amend this information as necessary and appropriate.

Two Year Transfers, or the value thereof, from the Defendant for the benefit of the estate of the Debtor.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendant:

a. On the First Claim for Relief, pursuant to §§ 542, 550(a), and 551 of the Bankruptcy Code: (a) that the property that was the subject of the Transfers be immediately delivered and turned over to the Trustee, and (b) for an accounting by the Defendant of the property that was the subject of the Transfers or the value of such property;

b. On the Second Claim for Relief, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, (c) recovering the Two Year Transfers, or the value thereof, from the Defendant for the benefit of the Estate, and (d) awarding attorneys' fees from the Defendant;

c. On all Claims for Relief, pursuant to federal common law and Va. Code Ann. § 8.01-382 awarding the Trustee prejudgment interest from the date on which the Transfers were received; and

d. Granting such other and further relief as is just and proper.

8

Dated: April 7, 2017
      Richmond, Virginia

Respectfully submitted,

By: */s/ Paula S. Beran*           
Lynn L. Tavenner, Esquire (VSB No. 30083)
Paula S. Beran, Esquire (VSB No. 34679)
David N. Tabakin, Esquire (VSB No. 82709)
Tavenner & Beran
20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-0178

*Counsel for Lynn Lewis Tavenner,*
*Trustee*

Exhibit A

**All Transfers**

| Payee | Payment Date | Bank Account | Payment Type / Check # | Payment Amount |
|---|---|---|---|---|
| Justin Sigler | 8/1/13 | WF 6492 | Wire Out | $70,000 |
| Justin Sigler | 8/5/13 | WF 6492 | Wire Out | 50,000 |
| | | | | $120,000 |

Exhibit B

**Preference Period Transfers**

*None*

Exhibit C

## Fraudulent Conveyance Period Transfers

| Payee | Payment Date | Bank Account | Payment Type / Check # | Payment Amount |
|---|---|---|---|---|
| Justin Sigler | 8/1/13 | WF 6492 | Wire Out | $70,000 |
| Justin Sigler | 8/5/13 | WF 6492 | Wire Out | 50,000 |
| | | | | $120,000 |

# EXHIBIT G

Michael J. Miller (VSB No.: 19171)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
E-Mail: mmiller@millerfirmllc.com

*Attorneys for Defendant*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| IN RE:    JAMES A. MONCURE | Case No.: 3:14-bk-31546-KLP |
| Debtor, | Chapter 7 |
| LYNN L. TAVENNER, TRUSTEE, | Adv. Proc. No.: 3:16-ap-03069-KLP |
| Plaintiff, | Judge: Hon. Keith L. Phillips |
| v. | [Filed concurrently with Proposed Order] |
| JUSTIN SIGLER, | **NO HEARING REQUESTED** |
| Defendant. | |
| | **DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6); MEMORANDUM** |

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
1

## DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6); MEMORANDUM

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rules of Bankruptcy Procedure ("FRBP") 7012 and Federal Rules of Civil Procedure ("FRCP") 12(b)(6), the above-captioned defendant ("Defendant") hereby moves to partially dismiss Plaintiff Lynn L. Tavenner's First Amended Complaint for failure to comply with FRBP 7008 and 7009 and FRCP 8(a)(2) and 9(b).[1] Specifically, in order to preserve the record in this case and protect his appellate rights, Defendant respectfully moves to dismiss Count Two [for Fraudulent Transfers – Actual Fraud pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551] of Plaintiff Lynn L. Tavenner's First Amended Complaint for failure to state a claim upon which relief can be granted. *See*, Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). Further, this claim is not plead with requisite particularity to survive scrutiny under FRCP 9(b). *See*, Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

As stated briefly above, this Partial Motion to Dismiss is made on the following grounds:

1) Count Two [for Fraudulent Transfers – Actual Fraud pursuant to 11 U.S.C. §§ 548(a)(1)(A),

---

[1] Because Defendant is only moving to *partially* dismiss Plaintiff's First Amended Complaint, Defendant is concurrently filing a partial Answer to Plaintiff's First Amended Complaint, answering each of the counts not addressed herein. Should this Court deny this Partial Motion to Dismiss, Defendant is prepared to file an Answer addressing all claims in Plaintiff's First Amended Complaint.

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
2

550, and 551] of Plaintiff First Amended Complaint should be dismissed pursuant to FRCP 12(b)(6) because it fails to comply with FRBP 7008 and FRCP 8(a)(2) since it fails to provide much more than boilerplate, conclusory allegations against Defendant and does not provide plausible entitlement to relief; 2) additionally, Count Two [for Fraudulent Transfers – Actual Fraud pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551] of Plaintiff's First Amended Complaint additionally should be dismissed pursuant to FRCP 12(b)(6) for Plaintiff's failure to plead fraud with requisite particularity required by FRBP 7009 and FRCP 9(b). *See*, Fed. R. Bankr. P. 7009 and Fed. R. Civ. P. 9(b).

**PLEASE TAKE FURTHER NOTICE** pursuant to Local Bankruptcy Rule 9013-1(M)(1) that:

> **<u>Your rights may be affected</u>**. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

> If you do not want the court to grant the relief sought in this Motion, or if you want the court to consider your views on this Motion, then on or before **May 1, 2017**, you or your attorney must:

> > File with the court, at the address shown below, a written request for a hearing [or a written response pursuant to Local Bankruptcy Rule 9013-1(H)]. If you mail your request for hearing to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

> > Clerk of Court
> > United States Bankruptcy Court
> > 701 East Broad Street, Suite 4000
> > Richmond, VA 23219-1888

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
3

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in this Motion and may enter an order granting that relief.

DATED: April 17, 2017                     Respectfully submitted,


                                          */s/ Michael J. Miller*
                                          Michael J. Miller (VSB No.: 19171)
                                          **THE MILLER FIRM, LLC**
                                          108 Railroad Avenue
                                          Orange, Virginia 22960
                                          Ph: (540) 672-4224
                                          Fax: (540) 672-3055
                                          E-Mail: mmiller@millerfirmllc.com

                                          *Attorneys for Defendant*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

On April 7, 2017, Plaintiff Lynn L. Tavenner ("Plaintiff") filed her First Amended Complaint to Avoid Transfer, to Recover Property, and for Related Relief (Docket No. 22) (hereinafter, "FAC"), alleging substantially the same allegations as her initial Complaint, adding little more than three conclusory sentences to Count Two. Case law from the Supreme Court is clear: conclusory allegations, unsupported by underlying factual allegations, are not entitled to a presumption of truth and therefore do not rise to the level of plausibility on their face and should be disregarded. *See*, *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Indeed, the Plaintiff's FAC adds little more to Count Two than her conclusory allegations that:

- "The Two Year Transfers were a part of the Debtor's ongoing Ponzi scheme." *See*, FAC at ¶ 31.

- "Unlike many of the investors who lost significant sums of money in the Debtor's Ponzi scheme, the Defendants were paid in full all amounts owed with above market interest rates and/or unusual terms." *See*, FAC at ¶ 32.

- "Shortly before each of the Two Year Transfers, the Debtor received funds from investors other than the Defendants." *See*, FAC at ¶ 33.

As stated briefly above, the above conclusory allegations, unsupported by underlying factual allegations, are simply not entitled to a presumption of truth and therefore do not rise to the level of plausibility on their face and should be disregarded. *See*, *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Therefore, Plaintiff's Count Two for Fraudulent Transfers − Actual Fraud pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6)

for failure to sufficiently state a claim under FRCP 8(a)(2) [FRCP 8(a)(2) is made applicable to this Adversary proceeding by virtue of FRBP 7008].

Additionally, as explained further below, Count Two of Plaintiff's FAC should additionally be dismissed pursuant to FRCP 12(b)(6) for failure to adequately plead fraud with particularity as required by FRCP 9(b) [FRCP 9(b) is made applicable to this Adversary Proceeding by virtue of FRBP 7009].

## II.      LEGAL STANDARDS

### A.  Legal Standard: Failure To State A Claim Under Rule 8(a)(2).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545; *see*, *also*, Fed. R. Civ. P. 12(b)(6).  A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Id*. at 555.

The plausibility analysis is "a context-specific task that requires the reviewing court to draw [upon] its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. "**Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice**." *Id*.; *Twombly*, 550 U.S. at 555 (emphasis added)

In analyzing a pleading, a court should identify and disregard any conclusory allegations because they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. The court should then examine any well-pleaded factual allegations to determine whether they "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681; *see, also*, *Twombly*, 550 U.S. at 555-56.

Further, if a plaintiff has failed to plead plausible allegations, her complaint must also fail to meet the particularity requirement of Rule 9(b). *U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 856 (D. Md. 2013).

### B. Legal Standard: Failure To State A Claim Under Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires that claims for (actual) fraud, such as those alleged in Count Two of Plaintiff's FAC, must be plead with particularity. *See*, Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999). According to two noted scholars, the "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 783–84 [citing Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990) and *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir.1990); *In re Cryomedical Sciences, Inc. Securities Litigation*, 884 F.Supp. 1001, 1012–13 (D.Md.1995); *In re Medimmune, Inc. Securities Litigation*, 873 F.Supp. 953, 964–69 (D.Md.1995)]; *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir.2010). Mere allegations of "fraud by hindsight" will not satisfy the requirements of Rule 9(b). *Harrison*, 176 F.3d at 783–84. In other words, Rule 9(b) requires

plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story. *Palmieri*, 928 F. Supp. 2d at 853–54.

### C. Legal Standard: Whether A Plaintiff's Allegations Amount To A "Ponzi Scheme."

Given the significant holes still remaining in Plaintiff's FAC, Defendant anticipates that Plaintiff will attempt to argue that she is relieved of strict compliance with Federal Rules 8(a)(2) and 9(b) because of her theory that she is entitled to a "Ponzi scheme" presumption. Importantly, however, such a "Ponzi scheme" presumption is only available in specific circumstances that the Trustee has still failed to plead in her FAC.

There is no precise definition of a Ponzi scheme; rather, courts look for a general pattern, rather than specific requirements. "[T]he label 'Ponzi scheme' has been applied to any sort of inherently fraudulent arrangement under which the debtor-transferor **must** utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud." *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 12 (S.D.N.Y. 2007) (emphasis added). Nonetheless, the Ponzi scheme presumption **cannot apply in all cases of Ponzi-type investment programs**. The court-fashioned presumption that Ponzi-scheme operators act with actual intent to defraud should be limited to those situations where it is **unmistakable that the debtor purposefully orchestrated a scheme which, by its very design, could only serve to defraud investors**. *See, e.g.*, *Barber v. Union Nat'l Bank (In re KZK Livestock, Inc.)*, 190 B.R. 626 (Bankr. C.D. Ill. 1996) (because the case involved a debtor with a legitimate business in addition to a check kiting scheme, a question of fact was presented as to whether the debtor acted with actual intent to defraud a particular creditor, precluding summary judgment for trustee). Indeed, **where a legitimate business has been in existence, it is not clear whether the debtor should be**

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM

4

**deemed to have been operating a Ponzi scheme**. *In re Evans*, No. 00-14004-SSM, 2003 WL 25942267, at \*4-5 (Bankr. E.D. Va. June 30, 2003). And, even when a Ponzi scheme is found to have arisen in the context of a legitimate business (because the debtor later realized that he or she would never repay the invested funds and consciously continued such activity), it is not clear when the Ponzi scheme should be deemed to have arisen. *Id*.   The Eastern District of Virginia has provided some guidance as to what facts may amount to a "Ponzi scheme":

> there is no single definition of a Ponzi scheme. However, there are characteristics that occur repeatedly. The first and foremost characteristic is a fraudulent investment scheme in which money contributed by later investors is used to pay artificially high dividends to the original investors creating an illusion of profitability and thereby attracting new investors. The company appears to be profitable, but **both the business and the profits are mirages**. **There is no business**. There are no profits. The return to the investors is not a result of the success of the underlying business venture, **but is taken from the new investors**. There is an ever increasing need for new investors to perpetuate the fraud. Without new investors, the fraud will come to an end, not necessarily through the discovery the fraud but because of the necessity of new victims cannot be met. The fraudulent venture is unable to support itself. There is a mathematical impossibility of continuing the fraud indefinitely, which is contrary to the impression given to the investors that the business venture will continue profitably for the indefinite future.

*In re Taneja*, No. 08-13293-RGM, 2012 WL 3073175, at \*6 (Bankr. E.D. Va. July 30, 2012), aff'd, 743 F.3d 423 (4th Cir. 2014) (emphasis added).   Thus, a plaintiff must plausibly plead the following facts in order to be entitled to a "Ponzi scheme" presumption:

1. That both the business and the profits are mirages; there is no business.  *In re Taneja*, No. 08-13293-RGM, 2012 WL 3073175, at \*6 (Bankr. E.D. Va. July 30, 2012).   Where a legitimate business has been in existence, it is not clear whether the debtor should be deemed to have been operating a Ponzi scheme.  *In re Evans*, No. 00-14004-SSM, 2003 WL 25942267, at \*4-5 (Bankr. E.D. Va. June 30, 2003).

2. The return to the investors is not a result of the success of the underlying business venture, but is taken from the new investors.  *In re Taneja*, No. 08-13293-RGM, 2012 WL 3073175, at \*6 (Bankr. E.D. Va. July 30, 2012).

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM

5

As shown further below, the Trustee's First Amended Complaint makes these allegations in only the most conclusory manner; such blatantly conclusory allegations should therefore be *disregarded* pursuant to binding Supreme Court precedent. *Iqbal*, 556 U.S. at 664. Indeed, in analyzing a pleading, a court should identify and *disregard* any conclusory allegations because they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Once such conclusory allegations are properly disregarded, the Trustee's allegations plainly fail to meet the requirements of the "Ponzi scheme" presumption.

## III.    ARGUMENT

### A. Count Two Of The Plaintiff's First Amended Complaint Should Be Dismissed With Prejudice Pursuant To FRCP 12(b)(6) For Failure To Comply With FRCP 8(a)(2).

Count Two of the Plaintiff's FAC should be dismissed with prejudice pursuant to FRCP 12(b)(6) for failure to comply with FRCP 8(a)(2). As explained more fully above, binding Supreme Court precedent requires that, in analyzing a pleading, a court should identify and **disregard** any conclusory allegations because they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Pleading under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555.

Here, this Court has already GRANTED Defendant's Motion to Dismiss relating to Count Two of Plaintiff's initial Complaint (*see*, Docket No. 19); for her part, Plaintiff has amended her Complaint, but her FAC merely adds *more conclusory allegations* which, due to their unfortunately conclusory nature, must be disregarded by this Court; this Motion to Dismiss

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM

6

should therefore once again be granted based on binding Supreme Court precedent requiring that a court must *disregard* conclusory allegations because they are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555. *Compare*, Complaint at ¶¶ 28-32 with FAC at ¶¶ 28-35.

More specifically, Count Two of the Trustee's FAC is nearly *identical* to her initial Complaint, which was dismissed by this Court; now, the Trustee's FAC merely adds the following conclusory allegations to Count Two, which should be disregarded pursuant to the Supreme Court's binding precedent in *Iqbal* and *Twombly*:

- "The Two Year Transfers were a part of the Debtor's ongoing Ponzi scheme." *See*, FAC at ¶ 31.

- "Unlike many of the investors who lost significant sums of money in the Debtor's Ponzi scheme, the Defendants were paid in full all amounts owed with above market interest rates and/or unusual terms." *See*, FAC at ¶ 32.

- "Shortly before each of the Two Year Transfers, the Debtor received funds from investors other than the Defendants." *See*, FAC at ¶ 33.

First, these conclusory allegations should be disregarded by this Court because they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Once these allegations are properly disregarded, Count Two of Plaintiff's FAC will be on the same footing as in her initial Complaint, and should similarly be dismissed.

Second, Supreme Court precedent is clear that the Trustee is required to plead something more than simply *labeling* the Two Year Transfers as part of an ongoing "Ponzi scheme." Indeed, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. In short, because the Trustee has simply thrust the conclusory label "Ponzi scheme" into her FAC,

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
7

without adding more *factual bases* for this label, Count Two of the Plaintiff's FAC is insufficiently plead and must be dismissed. *Id*.

**B. Count Two Of The Plaintiff's First Amended Complaint Should Be Dismissed With Prejudice Pursuant To FRCP 12(b)(6) For Failure To Comply With FRCP 9(b).**

This Court should dismiss Count Two of the Plaintiff's FAC with prejudice pursuant to FRCP 12(b)(6) for the additional reason that it fails to plead fraud with particularity. *See*, Fed. R. Civ. P. 9(b).

As a preliminary matter, because Count Two of the Plaintiff's FAC fails to pass scrutiny under Rule 8(a)(2), *Twombly*, and *Iqbal*, it must also fail under Rule 9(b). Indeed, if a plaintiff has failed to plead plausible allegations, her complaint must also fail to meet the particularity requirement of Rule 9(b). *Palmieri*, 928 F. Supp. 2d at 856.

As discussed briefly above, the Fourth Circuit has interpreted the particularity requirement of Rule 9(b) to mean that a claim for fraud must fail unless it states "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 783–84. Given the conclusory nature of the Plaintiff's FAC, much of these requirements are left unanswered, such as:

When, exactly, did Mr. Moncure make fraudulent communications to each of his investors, including Defendant? To be sure, the Trustee's FAC states, in the broadest of terms, that Mr. Moncure solicited investors "Over a course of many years […]" (FAC at ¶ 8), but this fails to provide any particulars required by Rule 9(b); Count Two should therefore be dismissed with prejudice for failure to comply with Rule 9(b).

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM

8

Where, exactly, did Mr. Moncure make fraudulent communications to each of his investors, including Defendant?  The Plaintiff's FAC fails to allege such allegations, depriving the Defendant from forming an adequate defense; Count Two should therefore be dismissed with prejudice for failure to comply with Rule 9(b).

What, exactly, did Mr. Moncure say to his respective investors in order to induce their investment in the QCC project?  The Plaintiff's FAC fails to make such allegations, depriving the Defendant of an adequate defense; Count Two should therefore be dismissed with prejudice for failure to comply with Rule 9(b).

Considering the above, Count Two of the Trustee's FAC falls far short of complying with Rule 9(b) and should therefore be dismissed with prejudice.

**C. The Plaintiff Is Not Entitled To A "Ponzi Scheme" Presumption To Plug The Significant Omissions In Her First Amended Complaint.**

As discussed above, the conclusory nature of the Plaintiff's allegations in violation of Rule 8(a)(2), compounded with her failure to comply with Rule 9(b) require that Count Two of her FAC be dismissed with prejudice.  Nonetheless, Defendant anticipates that Plaintiff will attempt to skirt compliance with the Federal Rules of Civil Procedure by invoking a "Ponzi scheme" presumption.  However, as discussed briefly above, the Plaintiff is simply not entitled to a "Ponzi scheme" presumption and Count Two should therefore be dismissed with prejudice.

Indeed, at a *minimum* the Trustee must state facts amounting to a Ponzi scheme, such as:

1. That both the business and the profits are mirages; there is no business.  *In re Taneja*, No. 08-13293-RGM, 2012 WL 3073175, at *6 (Bankr. E.D. Va. July 30, 2012).   Where a legitimate business has been in existence, it is not clear whether the debtor should be deemed to have been operating a Ponzi scheme.  *In re Evans*, No. 00-14004-SSM, 2003 WL 25942267, at *4-5 (Bankr. E.D. Va. June 30, 2003).

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
9

2. The return to the investors is not a result of the success of the underlying business venture, but is taken from the new investors. *In re Taneja*, No. 08-13293-RGM, 2012 WL 3073175, at *6 (Bankr. E.D. Va. July 30, 2012).

Here, the first element is not met because the Mr. Moncure's Statement of Facts in connection with his criminal case [*see*, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27], which Plaintiff relies upon in her FAC, admits that there were some instances where Mr. Moncure "properly used funds". *See*, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27 at ¶ 4. Therefore, it is *impossible* and certainly not plausible that, as Plaintiff alleges, that Mr. Moncure's business and profits were *entirely* an illusory mirage. The Trustee's allegations and contentions to the contrary are simply belied by the admitted facts of this case.

Here, the second element is not met because, due to the fact that there were some instances where Mr. Moncure "properly used funds" (*id.*), it is nearly *impossible* that *all* of Mr. Moncure's repayments to his investors were derived *solely* from "new" investors. It is particularly problematic that the Plaintiff has filed numerous lawsuits against Mr. Moncure's many victims, based nearly entirely on her "Ponzi scheme" theory, when the facts plainly show that, given that Mr. Moncure properly used some of his funds, it is nearly *impossible* that *all* of Mr. Moncure's loan repayments were derived entirely from "new" investors.

Given the above, the Trustee is not entitled to a "Ponzi scheme" presumption; because the Trustee cannot rely on such a presumption to close the omissions in her FAC, Count Two of her FAC should therefore be dismissed with prejudice.

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
10

IV.     **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court DISMISS

Count Two of Plaintiff's FAC with prejudice.

DATED: April 17, 2017                              Respectfully submitted,


                                                   */s/ Michael J. Miller*
                                                   Michael J. Miller (VSB No.: 19171)
                                                   **THE MILLER FIRM, LLC**
                                                   108 Railroad Avenue
                                                   Orange, Virginia 22960
                                                   Ph: (540) 672-4224
                                                   Fax: (540) 672-3055
                                                   E-Mail: mmiller@millerfirmllc.com

                                                   *Attorneys for Defendant*

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 17th day of April, 2017, a true and correct copy of the forgoing document served via the Court's CM/ECF electronic filing system to those parties listed on the docket as being entitled to such electronic notice and via electronic mail to the following:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
David N. Tabakin, Esq.
**Tavenner & Beran, PLC**
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Tel: (804) 783-8300
Fax: (804) 783-1078
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com
dtabakin@tb-lawfirm.com

*Counsel for Plaintiff / Chapter 7 Trustee*

DATED: April 17, 2017

                                    */s/ Michael J. Miller*
                                    Michael J. Miller

DEFENDANT JUSTIN SIGLER'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM
12

# EXHIBIT H

Michael J. Miller (VSB No.: 19171)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
E-Mail: mmiller@millerfirmllc.com

*Attorneys for Defendant*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| IN RE:     JAMES A. MONCURE<br><br>          Debtor,<br><br>LYNN L. TAVENNER, TRUSTEE,<br><br>          Plaintiff,<br><br>v.<br><br>JUSTIN SIGLER,<br><br>          Defendant. | Case No.: 3:14-bk-31546-KLP<br><br>Chapter 7<br><br>Adv. Proc. No.: 3:16-ap-03069-KLP<br><br>Hon. Keith L. Phillips<br><br><br>**DEFENDANT JUSTIN SIGLER'S PARTIAL ANSWER TO PLAINTIFF'S AMENDED COMPLAINT; AFFIRMATIVE DEFENSES; PRAYER FOR RELIEF; DEMAND FOR JURY TRIAL**<br><br>**JURY TRIAL DEMANDED** |

DEFENDANT'S PARTIAL ANSWER TO AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
1

**DEFENDANT JUSIN SIGLER'S PARTIAL ANSWER TO PLAINTIFF'S AMENDED COMPLAINT; AFFIRMATIVE DEFENSES; PRAYER FOR RELIEF; DEMAND FOR JURY TRIAL**

### I. PARTIAL ANSWER

Defendant Justin Sigler ("Defendant"), hereby submits this Partial Answer to Plaintiff's [First] Amended Complaint to Avoid Transfers, to Recover Property and for Related Relief ("Complaint") as follows:

On April 7, 2017, Plaintiff filed her Amended Complaint (Docket No. 22). Defendant answers each of the allegations in the Plaintiff's Amended Complaint as to Count I[1], as may be specifically admitted or denied below, referring to paragraphs as numbered in the Plaintiff's Amended Complaint. Silence as to any allegations shall constitute a denial.

Answering the Plaintiff's opening allegations, the averments contained therein are conclusions of law which no response is required. To the extent that a response is required, Defendant denies these allegations.

### JURISDICTION

1. The allegations in paragraph 1 are conclusions of law to which no response is required. To the extent a response is deemed required, Defendant is without sufficient knowledge or information to either admit or deny the allegations contained therein and therefore denies the same and leaves Plaintiff to her proofs.

---

[1] Defendant does not answer Count II whatsoever herein; rather, Defendant has concurrently filed a Motion to Dismiss Count II.

2.      The allegations in paragraph 2 are conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant is without sufficient knowledge or information to either admit or deny the allegations contained therein and therefore denies the same and leaves Plaintiff to her proofs.

3.      The allegations in paragraph 3 are conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant is without sufficient knowledge or information to either admit or deny the allegations contained therein and therefore denies the same and leaves Plaintiff to her proofs.

## THE PARTIES

4.      Defendant admits the allegations in paragraph 4.

5.      The allegations in paragraph 5 are conclusions of law to which no response is required.  To the extent that a response is required, Defendant admits that he was a lender or otherwise maintained a business relationship with the Debtor.

## FACTUAL BACKGROUND

6.      The allegations in paragraph 6 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

7.      The allegations in paragraph 7 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

8.      The allegations in paragraph 8 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the

allegations in this paragraph and therefore denies the same, except that Defendant admits that certain investors received promissory notes to document amounts loaned to the Debtor.

9.      The allegations in paragraph 9 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same.  To the extend the Plaintiff avers facts contained in the Plea Agreement and Statement of Facts (*see*, Plea Agreement, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 26; Statement of Facts, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27), Defendant responds that the documents cited are the best evidence of its contents and speaks for itself.

10.     The allegations in paragraph 10 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same.  To the extent the Plaintiff avers facts contained in the Statement of Facts  in *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27, Defendant responds that the document cited is the best evidence of its contents and speaks for itself.

11.     The allegations in paragraph 11 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same.  To the extent the Plaintiff avers facts contained in the Statement of Facts, *United States v. Moncure*, Case No. 3:14-cr-00137 (E.D. Va. Feb. 6, 2015), ECF No. 27, Defendant responds that the document cited is the best evidence of its contents and speaks for itself.

12. The allegations in paragraph 12 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same, except that Defendant admits that on March 4, 2014, the Debtor sent a lengthy e-mail to his investors and business partners apologizing for certain of his indiscretions.

13. Defendant admits to the allegations in paragraph 13.

14. Defendant admits to the allegations in paragraph 14.

15. Defendant admits to the allegations in paragraph 15.

16. Defendant admits to the allegations in paragraph 16.

17. The allegations in paragraph 17 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same, except that Defendant admits that the Debtor was sentenced to a term of not less than five years in a federal penitentiary.

18. Defendant admits the allegations in paragraph 18.

19. The allegations in paragraph 19 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same. By way of further response, this paragraph contains conclusions of law for which no response is required. To the extent that a response is deemed required, Defendant denies the allegations in this paragraph.

20. The allegations in paragraph 20 state Plaintiff's unilateral characterization of fact regarding a third party; Defendant therefore has insufficient information to admit or deny the allegations in this paragraph and therefore denies the same. By way of further response, this

paragraph contains conclusions of law for which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations in this paragraph.

21.     The allegations in paragraph 21 contain conclusions of law for which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations in this paragraph.

22.     The allegation in paragraph 22 is self-referential and speaks for itself, which no response is required.  To the extent that a response is deemed required, Defendant denies the allegation in this paragraph.

23.     The allegation in paragraph 23 is self-referential and speaks for itself, which no response is required.  To the extent that a response is deemed required, Defendant denies the allegation in this paragraph.

### COUNT I

### TURNOVER AND ACCOUNTING – 11 U.S.C. § 542

24.     Answering paragraph 24, Defendant repeats and restates her answers in the above paragraphs as if set forth fully herein.

25.     The allegations in paragraph 25 contain conclusions of law and merely re-state the elements of the Plaintiff's cause of action for which no response is required.  To the extent that a response is required, Defendant denies the allegations in this paragraph.

26.     The allegations in paragraph 26 contain conclusions of law and merely re-state the elements of the Plaintiff's cause of action for which no response is required.  To the extent that a response is required, Defendant denies the allegations in this paragraph.

DEFENDANT'S PARTIAL ANSWER TO AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
6

27. The allegations in paragraph 27 contain conclusions of law and merely re-state the elements of the Plaintiff's cause of action for which no response is required. To the extent that a response is required, Defendant denies the allegations in this paragraph.

## COUNT II

### FRAUDULENT TRANSFERS – 11 U.S.C. §§ 548(a)(1)(A), 550, AND 551

28 – 35. Paragraphs 28-35 relate only to Plaintiffs claim regarding fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551. Defendant has concurrently filed a responsive Motion to Dismiss Count II. *See*, n. 1, *supra*.

In response to the allegations in Plaintiff's "WHEREFORE" paragraph following paragraph 35, Defendant demands that judgment be entered in his favor and against Plaintiff, that Plaintiff's Amended Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

In response to Plaintiff's First Claim for Relief, Defendant responds that Plaintiff is not entitled to this relief; rather, Defendant demands that judgment be entered in his favor and against Plaintiff, that Plaintiff's Amended Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Defendant has concurrently filed a Motion to Dismiss Count II of Plaintiff's Amended Complaint.

In response to Plaintiff's request on "all Claims for Relief", Defendant responds that Plaintiff is not entitled to this relief[2]; rather, Defendant demands that judgment be entered in his favor and against Plaintiff, that Plaintiff's Amended Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

In response to sub-paragraph d., Defendant responds that Plaintiff is not entitled to this relief; rather, Defendant demands that judgment be entered in her favor and against Plaintiff, that Plaintiff's Amended Complaint be dismissed, with prejudice, and that Defendant be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

## II. SEPARATE AND AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint, in whole or in part, fails to state a claim or cause of action against Defendant upon which relief can be granted.

2.    Defendant is entitled to the "ordinary course of business" or "ordinary business terms" affirmative defense pursuant to 11 U.S.C. § 547(c)(2): "The trustee may not avoid under this section a transfer — (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was — (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms."

---

[2] Defendant has filed a responsive Motion to Dismiss Count II of Plaintiff's Amended Complaint.

DEFENDANT'S PARTIAL ANSWER TO AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

8

3. Plaintiff is not entitled to a "Ponzi scheme" presumption; her Amended Complaint should therefore be dismissed with prejudice.

4. Defendant hereby gives notice that he intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves her right to amend this Answer to assert such defenses.

## III. PRAYER FOR RELIEF

Having provided a partial Answer to Plaintiff's Complaint, Defendant therefore also denies Plaintiff's prayer for relief.

WHEREFORE, Defendant prays for relief as follows:

1. The Amended Complaint against Defendant be dismissed with prejudice;

2. The Defendant be awarded his reasonable attorney's fees and costs.

3. That Defendant be awarded such other and further relief as the Court deems just and proper.

## IV. DEMAND FOR JURY TRIAL

Defendant hereby respectfully makes a demand for trial by a jury of his peers on all issues so triable.

DATED: April 17, 2017                    Respectfully submitted,


                                         */s/ Michael J. Miller*
                                         Michael J. Miller (VSB No.: 19171)
                                         **THE MILLER FIRM, LLC**
                                         108 Railroad Avenue
                                         Orange, Virginia 22960
                                         Ph: (540) 672-4224
                                         Fax: (540) 672-3055
                                         E-Mail: mmiller@millerfirmllc.com

                                         *Attorneys for Defendant*

DEFENDANT'S PARTIAL ANSWER TO AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2017, a true and correct copy of the forgoing document served via the Court's CM/ECF electronic filing system to those parties listed on the docket as being entitled to such electronic notice and via electronic mail to the following:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
David N. Tabakin, Esq.
**Tavenner & Beran, PLC**
20 North 8th Street, Second Floor
Richmond, Virginia 23219
Tel: (804) 783-8300
Fax: (804) 783-1078
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com
dtabakin@tb-lawfirm.com

DATED: April 17, 2017

*/s/ Michael J. Miller*
Michael J. Miller

DEFENDANT'S PARTIAL ANSWER TO AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
10

# EXHIBIT I

# Claims Summary

## 14-31546-KLP James Ashby Moncure

| | | |
|---|---|---|
| Type: bk | Chapter: 7 | Office: 3 (Richmond) |
| Assets: y | Judge: KLP | |
| Date Filed: 03/24/2014 | Last Date to File Claims: | Last Date to File (Govt): |
| Trustee: Lynn L. Tavenner | | |

| Claim # | | Amount claimed * | Date filed | Creditor number | Creditor name |
|---|---|---|---|---|---|
| 1 | View | $17010.90 | 04/28/2014 | 12322823 | REMOD, Inc. |
| 2 | View | $2776.02 | 05/08/2014 | 12357179 | City of Fredericksburg Virginia |
| 3 | View | $60.00 | 05/08/2014 | 12357179 | City of Fredericksburg Virginia |
| 4 | View | $138600.00 | 05/12/2014 | 12361203 | Richard P. Oelrich |
| 5 | View | $1975.55 | 05/22/2014 | 12378342 | Discover Bank |
| 6 | View | $203177.82 | 05/27/2014 | 12383061 | Ty Schieber |
| 7 | View | $199018.24 | 05/27/2014 | 12322784 | Internal Revenue Service |
| 8 | View | $140000.00 | 05/29/2014 | 12322797 | Luigi Onofrio Castiglia |
| 9 | View | $153397.07 | 06/03/2014 | 12322799 | Marifi Arbelo |
| 10 | View | $83113.70 | 06/03/2014 | 12322800 | Mark Ryan Berg |
| 11 | View | $137000.00 | 06/03/2014 | 12322785 | Jeff Small |
| 12 | View | $150311.30 | 06/09/2014 | 12322815 | O'Conor G. Ashby |
| 13 | View | $254178.08 | 06/14/2014 | 12322814 | Nicole C. King |
| 14 | View | $310062.50 | 06/16/2014 | 12322753 | ANDO Properties and Investment |
| 15 | View | $100000.00 | 06/19/2014 | 12322825 | Robert E. Kane |
| 16 | View | $30000.00 | 06/19/2014 | 12322786 | Jens Jay Green |
| 17-2 | View | $363000.00 | 08/14/2014 | 12322806 | MidAtlantic IRA, LLC |
| 18-2 | View | $337500.00 | 08/14/2014 | 12429905 | MidAtlantic IRA, LLC |
| 19 | View | $33000.00 | 06/26/2014 | 12322811 | Mun-Hui Dooley |
| 20 | View | $1900000.00 | 06/25/2014 | 12322764 | Carole D. Crocker |
| 21 | View | $179975.74 | 07/08/2014 | 12446579 | SMITH Engineering, PLLC |
| 22 | View | $60000.00 | 07/08/2014 | 12322760 | Blake Smith |
| 23 | View | $328611.41 | 07/08/2014 | 12447825 | TD Ameritrade, Inc. |
| 24-2 | View | $110425.00 | 08/14/2014 | 12454887 | MidAtlantic IRA, LLC |
| 25 | View | $133418.25 | 07/21/2014 | 12465760 | Tara V. Patel |
| 26 | View | $128320.50 | 07/21/2014 | 12465761 | Antonio and Katherine Dorinda Scoffield |
| 27 | View | $30000.00 | 07/21/2014 | 12465763 | Martha P Palacino |
| 28 | View | $223214.56 | 07/21/2014 | 12466233 | Ryo O. Srour |
| 29 | View | $250000.00 | 07/21/2014 | 12322848 | William Gregory Srour |
| 30-2 | View | $2178.89 | 12/08/2014 | 12322834 | Stafford County Treasurer |

| Claim # | | Amount claimed * | Date filed | Creditor number | Creditor name |
|---|---|---|---|---|---|
| 31 | View | $738793.95 | 07/24/2014 | 12322778 | Doris G. Higginbotham |
| 32 | View | $1136250.00 | 07/24/2014 | 12322778 | Doris G. Higginbotham |
| 33 | View | $254166.00 | 07/24/2014 | 12322792 | Katherine Higginbotham Brown |
| 34 | View | $203333.00 | 07/24/2014 | 12322792 | Katherine Higginbotham Brown |
| 35 | View | $196000.00 | 07/24/2014 | 12322792 | Katherine Higginbotham Brown |
| 36 | View | $127083.00 | 07/24/2014 | 12322779 | Forrest S. Higginbotham |
| 37 | View | $54900.18 | 07/24/2014 | 12473960 | Ki Myo Thoma |
| 38 | View | $228750.00 | 07/24/2014 | 12322842 | V. Lynn Kelsey |
| 39 | View | $61241.38 | 07/28/2014 | 12322841 | Union First Market Bank |
| 40 | View | $1547598.91 | 07/28/2014 | 12322841 | Union First Market Bank |
| 41 | View | $123361.81 | 07/28/2014 | 12322841 | Union First Market Bank |
| 42-2 | View | $231602.90 | 12/15/2014 | 12322841 | Union First Market Bank |
| 43 | View | $360000.00 | 08/05/2014 | 12322769 | Chun-Ji Wang Liu |
| 44 | View | $12500.00 | 08/05/2014 | 12322830 | Scott and Kelly Mayausky |
| 45 | View | $20310.53 | 08/05/2014 | 12322757 | Baxter Omohundro |
| 46 | View | $49500.00 | 08/12/2014 | 12322817 | Patricia S. and John A. Rowe |
| 47 | View | $74667.00 | 08/11/2014 | 12361209 | SES Properties, LLC |
| 48 | View | $1000000.00 | 08/12/2014 | 12322789 | John E. Moncure |
| 49 | View | $871757.04 | 08/12/2014 | 12503039 | Union First Market Bank Sucessor by Merger to Stel |
| 50 | View | $946777.34 | 08/12/2014 | 12503039 | Union First Market Bank Sucessor by Merger to Stel |
| 51 | View | $98437.50 | 08/12/2014 | 12503039 | Union First Market Bank Sucessor by Merger to Stel |
| 52 | View | $251.71 | 08/13/2014 | 12503912 | AT&T Mobility II LLC |
| 53-2 | View | $24000.00 | 05/28/2017 | 13915935 | The Beatson Family Revocable Living |
| 54-2 | View | $126500.00 | 05/28/2017 | 13915935 | The Beatson Family Revocable Living |
| 55 | View | $100000.00 | 08/13/2014 | 12505985 | MidAtlantic IRA, LLC FBO Marcia Hagerty IRA |
| 56 | View | $80000.00 | 08/13/2014 | 12505987 | MidAtlantic IRA, LLC FBO Keri K. Pomeroy IRA |
| 57 | View | $143000.00 | 08/13/2014 | 12505988 | MidAtlantic IRA, LLC FBO Patricia Rowe IRA |
| 58 | View | $82500.00 | 08/13/2014 | 12505989 | Francis J. Hagney |
| 59 | View | $100000.00 | 08/14/2014 | 12322798 | Marcia Hagerty |
| 60 | View | $142299.70 | 08/14/2014 | 12322798 | Marcia Hagerty |
| 61 | View | $18500.00 | 08/14/2014 | 12361154 | Eugene and Lois Mayausky |
| 62 | View | $1926547.94 | 08/15/2014 | 12507905 | Bruce Pezzlo |
| 63 | View | $37025.00 | 08/15/2014 | 12507905 | Bruce Pezzlo |
| 64 | View | $15000.00 | 08/15/2014 | 12507905 | Bruce Pezzlo |
| 65 | View | $887940.00 | 08/15/2014 | 12322768 | Christoper Andre Crawford |
| 66 | View | $332635.89 | 08/15/2014 | 12322810 | MidAtlantic IRA, LLC |
| 67 | View | $1.00 | 08/18/2014 | 12510696 | Moncure Brothers, LLC |

| Claim # | | Amount claimed * | Date filed | Creditor number | Creditor name |
|---|---|---|---|---|---|
| 68 | View | $125850.31 | 08/18/2014 | 12322821 | Rachel Drew Sigler |
| 69 | View | $240000.00 | 08/18/2014 | 12322759 | Bijan Marashi |
| 70 | View | $216.81 | 08/18/2014 | 12322776 | Dominion Power |
| 71 | View | $340000.00 | 08/19/2014 | 12512955 | Ben Pezzlo |
| 72 | View | $2196.25 | 08/19/2014 | 12322838 | Tidewater Preservation, Inc. |
| 73 | View | $400000.00 | 08/26/2014 | 12523184 | Confide, Inc. |
| 74 | View | $14447.92 | 10/07/2014 | 12322761 | Brenda A. Wood, Treasurer |
| 75-2 | View | $142895.00 | 01/09/2017 | 13716385 | David P. Newman |
| 76 | View | $95425.00 | 01/13/2017 | 13721838 | RAY E. SHRAUDER |
| 77 | View | $8000.00 | 01/27/2017 | 13738111 | C. Stephen Templeton |
| 78 | View | $150000.00 | 04/17/2017 | 13856700 | Timothy and Lisa Jones |

**Total Number of Claims: 78**

| | |
|---|---|
| **Total Amount Claimed *** | $19872588.60 |
| **Total Amount Allowed *** | |

* Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | **Claimed** | **Allowed** |
|---|---|---|
| **Secured** | $6369692.77 | |
| **Priority** | $701374.64 | |
| **Administrative** | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/12/2017 10:43:56 | | | |
| **PACER Login:** | mi0208:2597586:0 | **Client Code:** | |
| **Description:** | Claims Summary | **Search Criteria:** | 14-31546-KLP Filed or Entered From: 1/1/1974 Filed or Entered To: 6/12/2017 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT J

1

<pre>
                    IN THE UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF VIRGINIA (RICHMOND)

In Re:                             )   Case No. 14-31546-KLP
                                   )   Richmond, Virginia
JAMES ASHBY MONCURE, ET AL.,       )
                                   )
          Debtors.                 )   March 15, 2017
                                   )   2:06 p.m.
_____    )
LYNN L. TAVENNER, TRUSTEE,         )   Adv. Proc. 16-03069-KLP
                                   )
          Plaintiff,               )
v.                                 )
                                   )
JUSTIN SIGLER,                     )
                                   )
          Defendant.               )
_____    )
LYNN L. TAVENNER, TRUSTEE,         )   Adv. Proc. 16-03068-KLP
                                   )
          Plaintiff,               )
v.                                 )
                                   )
RACHEL SIGLER,                     )
                                   )
          Defendant.               )
_____    )
LYNN L. TAVENNER, TRUSTEE,         )   Adv. Proc. 16-03056-KLP
                                   )
          Plaintiff,               )
v.                                 )
                                   )
CHESAPEAKE CONSTRUCTION GROUP,     )
LLC,                               )
                                   )
          Defendant.               )
_____    )
LYNN L. TAVENNER, TRUSTEE,         )   Adv. Proc. 16-03038-KLP
                                   )
          Plaintiff,               )
v.                                 )
                                   )
RICHARD P. OELRICH,                )
                                   )
          Defendant.               )
_____    )
</pre>

2

```
                    TRANSCRIPT OF HEARING ON
                   RECOVERY OF MONEY/PROPERTY
             BEFORE THE HONORABLE KEITH L. PHILLIPS
                  UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:
For the Trustee:              PAULA S. BERAN, ESQ.
                               LYNN L. TAVENNER, ESQ.
                               DAVID N. TABAKIN, ESQ.
                               TAVENNER & BERAN, PLC
                               20 North 8th Street
                               Second Floor
                               Richmond, VA 23219

For the Defendants:           MICHAEL J. MILLER, ESQ.
                               CURTIS G. HOKE, ESQ.
                               THE MILLER FIRM, LLC
                               108 Railroad Avenue
                               Orange, VA 22960
```

Transcription Services:          eScribers, LLC
                                 352 Seventh Avenue
                                 Suite #604
                                 New York, NY 10001
                                 (973) 406-2250

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

THE CLERK:  The Court is now in session.  Please be seated and come to order.

In the matter of James Ashby Moncure.

THE COURT:  Parties ready?

MR. MILLER:  We are, Your Honor.  I'm here for the plaintiff, Michael Miller, and my associate, Curtis Hoke.

THE COURT:  All right.  Good afternoon.  You may proceed.

MR. MILLER:  Thank you, Your Honor.  May it please the Court, counsel, we're here today, I believe, on our motion to dismiss the complaint.  And I can sum up -- I'm sure the Court's already had opportunity to read the pleadings, including, I hope, the one we filed on Monday.  And we appreciate that, thank you.

I guess I'll just kind of cut it down to a nutshell.  Under Twombly, under Iqbal, these no more that concludes their allegations.  And it's just the ipse dixit of counsel that she believes something occurred.  And what makes it, I believe -- so I don't believe even before Twombly, Iqbal, this complaint would have survived.  But that, I don't think, matters.  I think what matters is it clearly does not survive under Twombly and Iqbal.  And if I could just -- the claim has to be plausible on its face, and that is what is required now by Twombly.

And if I can back up and look at the facts as alleged

in the complaint by the plaintiff.  Mr. Moncure no doubt became insolvent in March -- I believe it was 2014.  But nowhere in her complaint does the plaintiff claim that there was a Ponzi scheme.  And that's understandable.  But now in response for a motion to dismiss, the trustee says, oh, it's a Ponzi scheme, and that's why we have prevailed.  That's why should be allowed to go forward.  We may not have pled the facts necessary, but it's a Ponzi scheme, and we've got a presumption.  I think that's pretty much an honest representation of their argument.

The problem with that is two-fold.  They never pled a Ponzi scheme.  In their complaint, virtually no mention of a Ponzi scheme.  In the criminal proceedings and the statement of facts, in the plea agreement, no mention of a Ponzi scheme.  No pleading to a Ponzi scheme.

In a Ponzi scheme, if you go back and look --

THE COURT:  Let me just -- I'm looking at para -- I mean, first of all --

MR. MILLER:  Yes, Your Honor.

THE COURT:  -- these four adversaries -- basically the same argument, because the complaints are basically the same, we need to be --

MR. MILLER:  Yes, Your Honor.  That's fair.  Yes, Your Honor.  I think we can argue --

THE COURT:  So we can focus on one, and we're talking about all.

MR. MILLER:  I think that's fair.

THE COURT:  All right.  So I'm looking at the first case, which I guess is the Oelrich case --

MR. MILLER:  Which one?

THE COURT:  Oelrich, I believe.

MR. MILLER:  Yes.

THE COURT:  And paragraph 10 says it's part of the debtor's scheme to defraud individuals and entities, the debtor also routinely utilized new investor funds to pay returns or make repayments to other investors.  Isn't that what a Ponzi scheme is?

MR. MILLER:  That would be part of a Ponzi scheme. With that and no more, no, Your Honor, that is not a Ponzi scheme.  And I can happily explain that.  Mr. Ponzi started out knowing he was going to defraud investors.  That's the critical distinction.  Mr. Ponzi never had a real business that was on-going, that was profitable, that was paying investors, that people were working in and with.  That didn't happen with Mr. Ponzi.  Mr. Ponzi had known from the get go, I'm stealing from people, and I'm going to float my theft by paying those people back with the money I steal from the next people.  That's what Mr. Ponzi did.

Mr. Moncure did no such thing.  They never pled it. They couldn't plausibly plead it, because it would be in violation of Rule 11.  It didn't happen here.  Mr. Moncure

owned land on 95 at Quantico, the most valuable commercial land on 95, between Richmond and Washington, DC.  Mr. Moncure had a very real plan to develop that land to build office buildings.  And those office buildings are there today.  Next time you drive up to Washington, DC, you'll see them.  The made fifteen million per building.  They built two, three, I think now.  So it was a very real profitable business.  All my clients did was lend Mr. Moncure money at ten percent so he could go build the buildings.

Did they get a secured note?  No, they didn't.  But that's not a Ponzi scheme.  That's a man who --

THE COURT:  Well, I'm just looking at what the complaint says.

MR. MILLER:  Yes.

THE COURT:  And the complaint -- and then I guess in paragraph 11, the debtor also paid individuals and entities for other goods and services he desired.  Beginning sometime in 2013, the debtor began to default on loan repayments to his investors while continuing to accept new investment money as part of the debtor's scheme to defraud individuals and entities.  So aren't they alleging essentially that there was a Ponzi scheme?

MR. MILLER:  No.  That's not a Ponzi scheme.  Assuming their pleading is correct on its face, if Mr. Moncure was accepting money in 2013 as they claim and didn't pay it back,

they don't tell us at what date they claim Mr. Moncure knew when he accepted money he couldn't possibly pay it back.  Mr. Moncure, by their own pleadings, Your Honor --

THE COURT:  But that may be another issue -- the time line in terms of when your client was investing money and when this scheme developed --

MR. MILLER:  Well, it --

THE COURT:  But they're saying there was a scheme.

MR. MILLER:  No, Your Honor.  The scheme was a business deal.  It wasn't -- a Ponzi scheme --

THE COURT:  They're saying this is a scheme to defraud individuals and entities.

MR. MILLER:  A scheme to defraud individuals and entities in 2000.

THE COURT:  That's what they're alleging.

MR. MILLER:  Yes, but part of a real business proposition.  There's no question they allege and they know that, and it has to be plausible.  And if Your Honor would read the other paragraphs in their own complaint that say quite accurately, Mr. Moncure had a farm on Lake Anna that he was going to sell and pay everybody back.  So if Mr. Moncure had a day's certain when he knew I can't pay everybody back, is the day he wrote his suicide note.  So there's no Ponzi scheme, and that's why they haven't pled.

Ponzi scheme is a term of art.  Your Honor has used it

from the bench, or I've used it.  But it was never used in her complaint.  Understandable.  Because that paragraph describes fraud.  All fraud is not Ponzi scheme.

THE COURT:  Well, that comes into play when you consider whether they're entitled to the benefit of a presumption -- a Ponzi scheme presumption.

MR. MILLER:  And I think at this stage, it fairly comes in, because under Twombly and Iqbal, my client should not be charged with responsibility to defend a claim that has not been articulated.

I don't know what Ponzi scheme they're claiming about.  They never claimed a Ponzi scheme.  I don't know what day this Ponzi scheme started.  I don't know who was defrauded.  I don't know what money was taken from what people in order to defraud other people.  I'm entitled to those particularities and accusatory allegations.  And the case law that the plaintiffs cite here to say, oh, I'm a trustee, I get a relaxed standard. I don't have to do what other plaintiffs have to do.  All that case law was before Twombly.  There's a Twombly Supreme Court decision about complaints, about pleadings.  And --

THE COURT:  Well, even -- I'm just looking at -- obviously, the Madoff case is --

MR. MILLER:  Sure.

THE COURT:  -- pretty much the most notorious.

MR. MILLER:  Yes, Your Honor.

THE COURT:  And that's a post-Twombly case, right?

MR. MILLER:  Yes, it is.

THE COURT:  But doesn't --

MR. MILLER:  But that's pled with great particularity. I'm not suggesting --

THE COURT:  Doesn't Judge Lifland say that the trustee in that case is still entitled to that same, relaxed standard?

MR. MILLER:  You know, I can't sit here and tell the Court what I don't know.  Always the best answer to give a judge is I don't know.

THE COURT:  Okay.  Well, that's fine.  I think that's what it says.

MR. MILLER:  Well, that's fair.  Then I stand corrected on your point.

So if -- I can't imagine the standard in the Madoff case as so relaxed that they don't need to tell us what on Earth we're defending.  We don't know what we're defending. The first time we heard about a Ponzi scheme was in her post-complaint pleadings.  We don't know when this Ponzi scheme -- if it ever was one -- when it developed, who was involved, and what -- if there's a Ponzi scheme, I'm going to argue they're going to go to the Court that are motion should be granted without leaving to amend.  But at a minimum -- at a minimum, if the Court were to decide to give them leave to amend so that I could just fully defend it.  I can't defend this nebulous claim

that ipse dixit there was maybe something went wrong that was fraud that now she claims rises to the level of a Ponzi scheme.

If it's a Ponzi scheme, say it in your complaint; let me know what, when, where, how, and I can defend it.

So that I think is really our argument.  And then we'll come back, I suppose, the next time around and explain pretty articulately that it's not plausible.  It's something -- and that's why it ought to be granted with no leave to amend.

THE COURT:  Well, certainly you're entitled to make your defenses if there is a presumption, and somehow this complaint survives a motion to dismiss.

MR. MILLER:  Yes, Your Honor.  And there'll be a --

THE COURT:  It depends on all the bases that you're stating, and --

MR. MILLER:  Yes, Your Honor.  So I'm asking the Court because complaints should not be allowed to go forward on a theory that doesn't -- it's not stated in their complaint.

I do mostly clients' work, and I could not imagine me wanting to win a negligent failure to warn case without pleading negligent failure to warn.  That's sort of required.

And so I would say to a trustee, if you want to plead a Ponzi scheme, you ought say there is a Ponzi scheme.  It doesn't seem to be asking too much.  I think Twombly requires it.  So we would ask the Court to dismiss it with no leave to

amend.  But if the Court's going to agree on leave to amend, I think we need to know the when, what, how, where, and who.

Thank you for your time.

THE COURT:  Thank you.

MS. BERAN:  May it please the Court, Your Honor, for the record, Paula Beran of the law firm of Tavenner & Beran, as counsel to Ms. Lynn Lewis Tavenner, Chapter 7 trustee.  She is with me today at counsels' table, as is another attorney in my firm, Mr. David Tabakin.

Your Honor, in fair candor to my opposing counsel, I do believe that he has not accurately represented our argument to Your Honor.

First and foremost, as it relates to a Ponzi scheme, we do adamantly believe that we pled the facts sufficient to establish the Ponzi scheme.  As even his case law cites, and the case law that we were very well aware of before this complaint was filed -- I've done extensive research on it -- is whether there actually is a Ponzi scheme is a matter for Your Honor to determine.  We are to plead the facts to establish the Ponzi scheme, and then Your Honor determines that there actually is a Ponzi scheme.

So because we didn't use the words, Ponzi scheme, doesn't mean that something came up after the fact, and we've now all of a sudden changed our argument.  I would say when we drafted that complaint and reviewed it with our client, Ponzi

scheme was one hundred percent on our mind, and we had read all the cases.

But putting all that aside, let's look to what Judge Merhige told us, Your Honor, and Judge Merhige went all the way up to the Fourth Circuit, and the Fourth Circuit agreed. There is no single definition of a Ponzi scheme. However, there are characteristics that occur repeatedly. The first and foremost characteristic is a fraudulent investment scheme in which money contributed by later investors is used to pay artificially high dividends to the original investors, creating an illusion of profitability, and thereby attracting new investors. The company appears to be profitable, but both the business and profits are marriages. There is no business. There are no profits. The return of the investors is not a result of the success of the underlying business venture, but is taken from new investors.

There is an ever-increasing need for new investors to perpetrate the fraud. Without new investors, the fraud will come to an end. Not necessarily through the discovery of the fraud, but necess -- because of the necessity of new victims cannot be met. The fraudulent venture is unable to support itself. There is a mathematical impossibility of continuing the fraud indefinitely, which is contrary to the impression given to the investors that the business venture will continue to profit -- continue profitability for the indefinite future.

And as Your Honor I know is well aware of the Tenasia (ph.) facts and what happened in the Tenasia case up in Alexandria is -- in certain instances there was found to be a Ponzi scheme, and in other instances, there wasn't found to be a Ponzi scheme.  So the Court needs to look at the particular facts.  We've pled there's particular facts.  If a Ponzi scheme is established, then we look to each transaction.  Trustee does get the Ponzi presumption, but at this point in time, we're putting the cart before the horse on what their burden shifts to in their defense.  Right now, we're looking at the complaint as pled.

And sitting here today, Your Honor, for the cites that Your Honor has pointed to in connection with the complaint, in addition to all the other paragraphs that we point to and our opposition or response to the motion to dismiss, we would respectfully submit that we have properly pled facts that put the defendant on notice as it relates to the claim of a Ponzi scheme.

In connection with this Ponzi scheme, Your Honor, we must remember to take it in connection with actual fraud under the Bankruptcy Code.  And we cite all the many, many cases that deal with this actual fraud under the Bankruptcy Code, and we specifically said, the debtor had the intent to hinder, delay, and/or defraud.  And then we go in and fill even more detail as it relates to the Ponzi scheme with this intent to hinder,

delay, and/or defraud.

Now, their counter -- opposing counsel, he made some representations here, and that may be his belief of things that transpired.

I would respectfully submit that he's misinformed and misunderstands, because one of the problems he said this land all is owned by the debtor.  Unfortunately, the debtor didn't own all the land.  The trustee wishes the debtor owned all the land.  Trustee truly believes -- wishes that the debtor owned all the land.

THE COURT:  Well, I think what he's saying is it was a legitimate business enterprise that must have generated into this scheme that you're alleging.  And so I suppose the question then becomes were these payments that you're attempting to recover or that were made to his clients part of this scheme that you're alleging.

MS. BERAN:  Now, their point, and in connection with the case law, the case law does recognize that many Ponzi schemes can involve legitimate businesses.  I respectfully disagree that every Ponzi scheme doesn't have a legitimate business.  That's a factor.  That isn't --

THE COURT:  Well, I'm not -- yes, and I agree with you on that.

MS. BERAN:  Okay.

THE COURT:  I guess what I'm focusing on now is the

payments that you're attempting -- the transfers that you don't really -- you've got an exhibit that says this much money, and I suppose on whatever day or so.  You allege in the complaint that these transfers were part of that scheme, and do you -- don't you need to?

MS. BERAN:  Yes, Your Honor, I do believe we allege that the transfers were part of the scheme.  We specifically say taking in new money, paying other money.

THE COURT:  You're saying that's what the debtor did, and I understand that.  But do you need to tie to the payments that were made -- in the complaint, you need to tie to the payments that were made to the defendants in these cases.  I mean, you say there was a scheme to defraud creditors, and you allege all of the characteristics of a Ponzi scheme, whether it's called a Ponzi scheme or not, it may give you the presumption of fraud, but then I don't know if the complaints say and the payments that were made to the defendants were part of that scheme -- were in connection with that -- the solicitations of new investments.

MS. BERAN:  Your Honor, as it relates to Count III, we do specifically bring in all -- we incorporate all -- the trustee incorporates by reference the allegations contained in the previous paragraphs of this complaint.

So all the facts that we allege as it relates to what the debtor did in paragraphs 9 through 26 are in there.  And

then specifically as it relates to Count III, we specifically say the two-year transfers were made by the debtor with the actual intent to hinder, delay, and defraud some or all the debtor's then existing or future creditors.

So I do think we have specifically pled and tied in that these transfers were made by the debtor with the actual intent to hinder, delay, or defraud and some or all of the then existing or future creditors.

So from a pleading standpoint, I do believe we have pled and tied the specific transfers in to the proceeding paragraphs which lays out that the debtors fraudulent acts that we believe give rise to a Ponzi scheme.

THE COURT: All right. Paragraph 18, prior to petition day, debtor made one or more transfers to or for the benefit of the defendants. And then you identify the transfers that are attached on your Exhibit A. And then you say in the next paragraph, at all times relevant thereto the liabilities were greater than the assets. That's a 548(a)(1)(B) allegation, right?

MS. BERAN: Yes, Your Honor.

THE COURT: All right. So the 19th --

MS. BERAN: Your Honor, I apologize. I'm in the Chesapeake Construction Group complaint.

THE COURT: Okay. I think I'm looking at the --

MS. BERAN: Okay.

THE COURT:  -- the Oelrich complaint.

MS. BERAN:  Okay, Your Honor.  I can go to that one.
I apologize.

THE COURT:  That's all right.

MS. BERAN:  The Chesapeake -- Your Honor, just for
ease of discussion here -- oh, that -- one of the Oelrich --
the Chesapeake Construction Group has it -- all of the counts
in it.  So it's a longer complaint.  The other three counts
have a combination of those counts that are included in the
Chesapeake Construction.  For example, the Chesapeake
Construction is the only one -- and there's multiple
defendants -- its adversary -- proceeding -- I don't -- I have
the --

THE COURT:  So the Chesapeake complaint --

MS. BERAN:  The Chesapeake -- and it's against David
Oelrich, Lawrence Oelrich, Larry Oelrich, and Matt Oelrich --
okay.  In connection with that one, Your Honor.  And that
should have substantially similar paragraphs, but the
numberings may be off in connection with that.

But yes, Your Honor, you are correct when you talk
about paragraph 21.  Merhige does define the transfers.

THE COURT:  It says they're avoidable and recoverable.
And then it says the investigation is on-going, reserve the
right to supplement.  And then under Count I, which is the
turnover count, which we really haven't --

MS. BERAN:  Correct.

THE COURT:  -- talked about.  But that --

MS. BERAN:  I went right to Count III, Your Honor.  I believe you were asking -- and then I apologize if I misspoke -- you were asking me about the actual fraud, and did we tie in the --

THE COURT:  Well, the actual fraud is the 548(a)(1)(A), right?

MS. BERAN:  Correct, Your Honor.

THE COURT:  That's the presumption -- the Ponzi scheme presumption.

MS. BERAN:  Correct, Your Honor.  And that --

THE COURT:  So that's Count II in the complaint I'm looking at.

MS. BERAN:  Oh, I apologize, Your Honor.  I -- that would be Count II because that count -- that complaint didn't have a preferential transfer.

THE COURT:  And that's where you say the two-year transfers were made by the debtor with the intent to hinder, delay, and defraud some or all of the debtor's then existing or future --

MS. BERAN:  Yes, Your Honor.

THE COURT:  -- creditors.  So that's how you tie these payments in to the Ponzi scheme for your alleged --

MS. BERAN:  Correct, Your Honor.  We incorporate all

of the other paragraphs found in the factual background with the first sentence under that count, and then we specifically then do say the two-year transfers -- and they were defined in the paragraph right above.  And then we do specifically say the two-year transfers were made.

Your Honor, I -- would also note here, much, much talk was made about Twombly, and let's look and see what -- we've gone through this a hundred times.

THE COURT:  Well, I'm not caught up on that.

MS. BERAN:  Okay.

THE COURT:  I'm more focused on the -- whether you should have alleged that payments in question were part of his scheme to defraud creditors.  And you say that in a general way by saying that they were made with the intent to hinder and delay.  I suppose on the defendant's standpoint, do you need to -- if you target these payments on Exhibit A -- let's see -- the dates are May of 2012 and August of 2013 -- 100,000 dollars in May of 2012.  I know that there was allegations at one point that it was in 2014 that --

MS. BERAN:  Your Honor, I respectfully disagree with his characterizations of that 2014 date.  I'm not even sure where he's coming up with that 2014.

THE COURT:  This is referring back to the email, I think, where Mr. Moncure sent that email, and that was --

MS. BERAN:  That was almost immediate -- that was

couple weeks before the involuntary petition was filed.  The facts as alleged in the complaint, with all due respect, is we indicated that beginning prior to January 2010, and continuing through at least March 2014, the debtor devised, intended to devise, and executed a scheme to defraud individuals and entities.  So it goes as early as 2010 from a pleading standpoint.  So the fact that --

THE COURT:  Where does -- I was looking at paragraphs 10 and 11, which -- paragraph 11 --

MS. BERAN:  I apologize, Your Honor.  You're in the --

THE COURT:  I'm still on the one I started with.

MS. BERAN:  Yes, I apol -- let me get to that complaint, so we're talking apples to apples.

THE COURT:  I know that in paragraph 9, you said for the period beginning in January 2010 up through April 2014, the FBI traced thirty-five million to deposits, and that there was potential fraud, and so forth.

But then in paragraph 10, is where you alleged the Ponzi characteristics that the debtor routinely used new investor funds to pay returns and make repayments to the other investors.

MS. BERAN:  Correct, Your Honor.  But if you look above, Your Honor, on paragraph number 7, from a time line standpoint, we do allege right there.  Beginning prior to January 2010 and continuing through at least March 2014, the

debtor devised, intended to devise, and executed a scheme to defraud individuals and entities. So we do start it sooner. It's not just -- and the March 2014 date is when the debtor sent a "suicide" note.

THE COURT: So you don't really think you need the Ponzi scheme presumption as part of the allegat -- for your complaint to stand up to a motion to dismiss. You're not relying on the Ponzi scheme presumption?

MS. BERAN: No, Your Honor. We do ultimately, because as Your Honor is well aware, in a complaint to articulate -- I mean, a complaint to prove the intent to hinder, delay, or defraud, you never have that smoking gun where the debtor stands up and says, I have the intent to hinder, delay, or defraud. Rarely do you have that.

So then you need to look at other factors and other circumstances, and Your Honor is well aware of all the circumstances that fall into the line. This is just a particular situation where you have even greater leeway as it relates to looking at what was that intent to hinder, delay, or defraud in the form of a Ponzi scheme. So you can establish that intent to hinder, delay, or defraud by establishing the facts or pleading the facts that Your Honor would need to determine it's a Ponzi scheme.

Once Your Honor does determine that, you do have that presumption, and the case law's abundantly clear. The burden

then shifts to the defendant.  So we didn't even talk about this, but I could bring in many cases here.  The burden then clearly shifts to the defendants once Your Honor finds that. They then need to demonstrate that they didn't know, and/or shouldn't have known.  And there is even some case law with that objective and subjective test, that the second test becomes an objective and subjective test.

THE COURT:  Well, I guess what I'm thinking is you allege that there is some type of scheme, a Ponzi scheme, and the characteristics are that new money is coming in to pay prior investors.  And so if you are attempting to allege that the defendant received part of that new money -- that the disbursements made to that defendant were part of the scheme that involved taking new money to pay old -- to pay previous investors.  And this defendant received some of that money -- is that necessary, to make that allegation that these payments were part of the -- not just the scheme to defraud creditors, but -- because anybody could take money under false pretenses without having it be a Ponzi scheme.

MS. BERAN:  No, but they're taking with the intent to hinder, delay, or defraud.  That is -- comes back under actual fraud.  And then the payments going back out -- the payments going to these --

THE COURT:  Well, this is what we're talking about. The payments that go back out.  You're alleging those payments

were made with the intent to hinder and defraud.

MS. BERAN:  As part of the continuing Ponzi scheme, yes, Your Honor.

THE COURT:  All right.  So that's in connection with this Ponzi scheme, where this scheme to --

MS. BERAN:  Correct, Your Honor.

THE COURT:  So that's characterized by the taking in money from new investors, and using some of that money to pay old investors to keep it from collapsing.

MS. BERAN:  Your Honor --

THE COURT:  So does the payments that you're attempting to recover in this case need to be the payments that were made to keep it from collapsing -- the new moneys -- the new investors' money -- do you need to allege that the new investors' money that was paid to these defendants in order to get those payments identified as Ponzi scheme --

MS. BERAN:  Your Honor, the case law does not -- and I would analogize what you're saying is -- what you're analogizing to is almost like the old Fas Mart tracing argument.  Different situation, not necessarily Ponzi, but yes, it's money coming in, and you wanted to trace that money to something.  The case law does not require a specific tracing of I received X from a "new" investor and paid that same X to the other investor on day 2.  What the case law basically says is, but to the fact they were receiving that money from the new

investors, it all would have collapsed, and you would not have been able to pay the investors going forward.

THE COURT:  I don't think that you need to trace it, but I mean --

MS. BERAN:  Okay.

THE COURT:  Let's just suppose in this case that Mr. Moncure started taking money from investors in whatever -- 2000.

MS. BERAN:  2000 -- we believe that was in -- as early as 2010.

THE COURT:  And that he took that money, and maybe he misused some of it -- and used it for gambling or whatever -- investing in the stock market -- and he was losing it.  But he made some payments back to the investors, but that it wasn't until, say, 2012 that he started using new money from new investors to pay old investors, so that Ponzi situation developed.

Then do the payments that took place prior to 2012 -- if there is still a sufficient allegation that those payments were made with the intent to hinder and delay creditors.  Those may have just been payments that he was able to make, but at that time, he had not developed a fraudulent intent.

MS. BERAN:  Your Honor, I believe the link that I previously provided say with the paragraph that references 2010, and then incorporates that into the actual fraud

paragraph, has that link.  However, I would even point Your Honor to another paragraph -- that's paragraph number 11 -- as part of the debtor's scheme to defraud individuals and entities, the debtor made repayments on certain of the investments.  Similarly, in that paragraph, the debtor also paid individuals and entities for other goods and services he desired.  Beginning sometime in 2013, the debtor began to default on loan repayments to his investments while continuing to accept new investment money as part of the debtor's scheme to defraud individuals and entities.

So we have alleged, as notwithstanding, that we think it all started happening as early as 2010.  In 2013, it's abundantly clear that he's taking money.  But for the fact that he's taking this money, he wouldn't have been able to make any repayments.

THE COURT:  Well, I guess that's what I'm looking at.  Beginning sometime in 2013, the debtor began to default -- and so I guess what I'm saying is that if you were alleging that there were invest -- that these defendants lent money to the debtor, and the debtor paid them back in 2012, but in 2013, this became a Ponzi scheme.  Then can you --

MS. BERAN:  Your Honor, we would take the position that the Ponzi scheme happened.  It started back in 2010.  He was taking in money, and the way he was going to repay the money is through getting these investments.  Much to do was

made about this land, and we just talked about the land, but the -- if you're investing in some land -- I mean, you have opposing counsel is very educated -- great lawyer -- if you're investing in land or you're investing in something like that, we know how you invest in things like that.  Shares are issued, or membership interest, you get collateral against the "investment".  So this concept that the debtor says he had some land some place, and you want to invest in that land in some way, to me that brings it right back -- I got a bridge to sell, Your Honor.  Let's invest.  That comes back to the Ponzi scheme.

THE COURT:  I think it's pretty clear that he was defrauding his investors, and so when he takes the money under false pretenses, that's fraud.

MS. BERAN:  Correct, Your Honor.

THE COURT:  Question is whether the payments that he made were made as -- with the intent to defraud creditors.  And the way you would argue that they were is to say that he only made these payments to keep his scheme alive.

MS. BERAN:  Correct, Your Honor.  And I do believe we pled that.  But that -- that is the whole thing of the Ponzi scheme.  Now, a Ponzi scheme doesn't fall apart until the merry-go-round stops, basically.  In this instance, the merry-go-round started sputtering in 2013, but we believe that it was going since the merry-go-round started in sometime in 2010.  It

started sputtering in 2013, and he really had to pick up and go get some more investments to be able to repay, because he was starting to default because of the sputtering. But -- you know --

THE COURT: Well, I mean -- as Mr. Miller said, I think in my mind, the question is whether -- because if I grant the motion, I would grant it with leave to amend. I think it's pretty clear here that there is -- that there is some type of Ponzi scheme that was going on, and that your position is that -- that these payments that you're targeting were part of that scheme.

And so if this complaint doesn't actually say that, my inclination would be to give you leave to amend the complaint to actually say that. And it may be that you can read into this complaint that that's what you're saying and that's what you mean, because that there was this scheme that was -- and once again, I'm just looking at this first complaint right now -- that there was a scheme to defraud individuals, and that new payment -- new funds were used to make returns or repayments to other investors. I guess when I read it I didn't see where you said -- and these payments that were made to this defendant were payments that were made as part of this scheme -- that they were made -- as opposed to just a generalized provision that says they were made with the intent to hinder, delay, and defraud creditors. Because that just basically says what the

statute says.

Any time you're alleging that you're -- so far as the transfers were made with the intent to hinder, delay, or defraud creditors.  But to tie these particular payments to this scheme, if you were to say these payments were disbursed as part of the scheme to keep his Ponzi from collapsing, then I would have said this looks to me like there's nothing wrong with this complaint.  It says he had a scheme going, all the characteristics of that scheme have been alleged, and that the payments made to these defendants were made as part of this Ponzi scheme, even though you didn't necessarily call it a Ponzi scheme.  And then, to me that would be, okay, well now, the burden, assuming that the Court does find that that was what was happening, would shift to the defendants to say that no, these payments weren't made as part of that scheme.

But when I look at the dates, 2012, 2013, and I look at your complaint, it makes me wonder if there's a gap between when this scheme developed and when these payments were made. And if you're saying that the defendants were defrauded when Mr. Moncure solicited their payments, I don't think anybody's arguing that that's not the case.  When the -- given the facts --

MS. BERAN:  I'm not so sure that these defendants were actually defrauded, Your Honor.  I mean, there are many -- many, many, many sympathetic --

THE COURT:  Oh, yes.  That's the whole point.  That's the point of all of this.

MS. BERAN:  -- sympathetic victims in this case.  I'm not necessarily sure here that these are sympathetic and defrauded.

THE COURT:  Sure.  It's not fair for some defendants to keep the money that they got when other people who were defrauded didn't get payments back.  Everybody should get their fair share.  That's the whole purpose.  And I understand that's what the trustee's trying to do here.

But what we have before us is a motion to dismiss before we just state a claim.  And I'm convinced that Mr. Moncure did have a Ponzi -- or something that came to a Ponzi scheme based on the allegations and based on the exhibits that are attached to the complaint.  And that a number of the payments that he made probably are part of that scheme.  I just wasn't a hundred percent sure that what you were saying was these particular payments were also a part of that scheme.  And I think you imply it --

MS. BERAN:  Yes, Your Honor.

THE COURT:  I just don't know in fact you take that extra step.  And to make Mr. Miller happy, we could --

MS. BERAN:  Your Honor, I'm happy to file a complaint that says the two-year transfers were made part of the debtor's Ponzi scheme.  I'm not -- happy to do that.  Absolutely.  And I

see where Mr. Miller may be coming on that.  But I -- I do respectfully submit that there are sufficient facts in there that you link it all and it's Your Honor that ultimately makes the determination on these things.  And as it relates to the standards, I do believe that they're on more than adequate notice of where the trustee was going with this complaint.

THE COURT:  Well, I think that they know too.

Well, what about the -- in all -- nobody's discussed it, but the 542 allegation -- do you really need to file 542 allegations?

MS. BERAN:  Your Honor, that's for turnover -- out of an abundance of caution, trustees seem to add that in there to make sure that they can get the money back.  Once it's avoided, you go under 547 --

THE COURT:  550 gets you --

MS. BERAN:  548, and 550.  You also do it under 542. We cited Judge Merhige's opinion in the case -- in our brief -- I think that this sufficient in this instance --

THE COURT:  It's just that there are cases that say it has to be undisputed property of the estate before the trustee can pursue it with a turnover action, and --

MS. BERAN:  Correct.

THE COURT:  -- I know that you're saying here that it's contingent on a ward of --

MS. BERAN:  Absolutely --

THE COURT:  -- judgment in favor of the trustee.

MS. BERAN:  -- as indicated by Merhige, he said if it's in the alternative, you can plead.  And if we succeed on the other counts, then that count does become relevant, because Your Honor would have determined under either 547, 548, and/or 550, that that money, at the time of -- that it was a transfer --

THE COURT:  I don't see where it's harmful to have it.

MS. BERAN:  I would agree with Your Honor.  It's belt and suspenders since it relates to 550 as well.  I don't know if Your Honor had any questions then also about the preference arguments being made by defendants in connection with their motion to dismiss.  It's rather creative.  I think the fact that opposing counsel indicated that -- deals with mass torts and explains the creativity, but it's very extraordinary in connection with bankruptcy law.

And that specifically is, Your Honor, they are trying to have Your Honor dismiss the preference on the basis that it's ordinary course.

THE COURT:  Well, that's an affirmative defense --

MS. BERAN:  Correct, Your Honor.  And they attach an affidavit or a so-called affidavit.  And I kind of scratched my head, because the affidavit says -- well, we cite lots of case law that says, Your Honor, you really shouldn't look at affirmative defenses in a motion to dismiss under 12(b), Your

**32**

Honor.

And then, we -- go on.  If you look at what the actual affidavit says.  The case law they cite -- even the case law they cite -- they say that it's a very limited exception, and that limited exception that allows this to happen is that the trustee pled facts that, on their face, would give rise to the defense being asserted.  And the trustee didn't.  This is not a situation like that.

We went and we looked.  Because I was like, this is unusual -- I've never ever in -- probably prosecuted and/or defended over a thousand -- maybe closer to two thousand preferences, and I've never encountered this.

So we searched, and searched, and searched and we have only encountered one case where we could find where this was attempted in the course of a 547 defense.  And that is in the official committee of unsecured creditors versus Newkey Group, LLC, in the In re: SKG Ventures, LLC case.  And Your Honor, the court in that case said - court would not allow it.  Court said not dealing with it in the 12(b), but in giving that, it says Lozier is correct in arguing that if his security interest was gained -- was granted in substantially contemporaneous exchange, the transfers would be avoidable.  Similarly, if the transfers were made in the ordinary course of business, they would not be avoidable.

However, these are affirmative defenses that Lozier

has the burden of asserting and proving under 547(g).  A complaint is not required to deny the availability of an affirmative defense.  Therefore, the court would not grant the 12(b).

Similarly, Your Honor, in looking at the actual affidavit -- because I'm like, what would we say in response to this affidavit.  The affidavit says, I believe that any funds I received from him were received in the ordinary course of business, and according to ordinary business terms.

Believe?  With all due respect, his belief is irrelevant.  It's Your Honor's belief that's relevant.  And as Your Honor knows, ordinary course, whether you're doing it under the new or standard under BAPCA, that's very fact intense, and it usually relies on expert testimony, and -- because someone believes something is irrelevant, what was I going to do?  Have Ms. Tavenner file an affidavit that says I believe it wasn't an ordinary course.  Come on, this is silliness, Your Honor.

THE COURT:  Is this the 502(d) issue that you're talking about?  Or is this just a --

MS. BERAN:  No. No.  This is just -- this goes -- this is one of the other complaints, Your Honor.  This is the Chesapeake Construction Group complaint.  And in that complaint, we do -- there was substantial preference -- two preferential payments during the ninety days, and they make an

argument that we can't avoid it because they -- "it's an ordinary course".  And we say --

THE COURT:  Yes.  I'm -- I'm --

MS. BERAN:  Okay.

THE COURT:  I'm not -- I wasn't focusing on the -- I wouldn't grant the motion with respect to the 547.

MS. BERAN:  That was just the other area that we hadn't talked about.

THE COURT:  The issue that I was discussing -- and I guess from the standpoint of the defendant is if you've targeted certain payments --

MS. BERAN:  Um-hum.  Number 548.

THE COURT:  -- they want to know why you are characterizing those particular payments as having arisen as a result of actual fraud.  And I suppose much of that would be brought out in discovery, but -- in this case, I know the trustee has also indicated that Mr. Moncure claimed the benefit of the Fifth Amendment.  And does the trustee have access to his records?

MS. BERAN:  Your Honor, yes.  The trustee has access to certain of his books and records.  In connection with this matter, Your Honor may recall that before the bankruptcy case was filed -- when the involuntary was filed -- the various state and federal entities seized all of his books and records. And they all became under the custody and control of the FBI.

In connection with that, trustee did go up -- myself and the trustee -- on two different occasions, and looked at the books and records up at the regional office of the FBI, and spent a significant amount of time with that.

The good news is after the criminal indictment and sentencing, the FBI did relinquish to the trustee all of the books and records that the FBI had in its possession.

Similarly, Your Honor, the trustee, pursuant to Your Honor's order, did do a 2004 exam of his wife, Mrs. Moncure, and the trustee obtained significant information from his wife in connection with that 2004 exam.

Now, there's -- I can't say that we have all of the books and records. We demanded all of the books and records. We know that there supposedly was a computer. We've obtained from that computer copies of that computer. And now, whether anything was removed before we ultimately were given possession of that, I can't say. But from the trustee's perspective, to the best of her ability, she does have the debtor's books and records at this point in time.

THE COURT: All right. Thank you.

Is there anything else?

MS. BERAN: No, Your Honor.

THE COURT: All right. Thank you.

Mr. Miller, did you have anything else you wanted to add?

MR. MILLER:  I'll be brief, Your Honor.  I think the Court hit the nail on the head.  I think the Court knows where it wanted to go.  And I -- sure.  The defendants have some general notion on what the trustees are complaining about, but this is serious business, and we have a right to have a specific allegation of what payments they claim were part of this Ponzi scheme and why they claim not conclusory ipse dixit, but what facts are you complaining about to claim this Ponzi scheme?  Were these payments that were made to us part of this Ponzi scheme?  Are you claiming that?  Before we can have a discovery and motions practice and trial, we ought to have the theory laid out in the complaint.

So we're asking that Your Honor grant our motion.  We'd like you to grant it and this be the end of it, and I'll just be very brief, because I think the Court's not going to do that.  But I'd like to make my record, and that is this.

Since Twombly and Iqbal, you do have to plead plausible.  You don't just plead assault, you hurt me, and then not plead any injury.  You can't do that anymore.  You have to be very precise about that.

So and that's why we submitted the affidavit.  Perhaps it is one in three thousand cases, but I don't know.  Since Twombly, it does have to be plausible on its face, and this cannot be plausible because we can show this is all done in the ordinary course of business.  Notes, promissory notes, ten

percent, people getting paid back, money be there --

THE COURT:  Well --

MR. MILLER:  We're going to go with showing --

THE COURT:  You're kind of blending your fraudulent transfer arguments with the preferences defenses.

MR. MILLER:  That's fair.  But yes, that's fair.

THE COURT:  And I think that the preference count -- there's nothing wrong with that.  I mean, if you want to argue with ordinary course, that will be your burden to establish.

MR. MILLER:  Sure.  Affirmative defense.  Yes.

THE COURT:  Looking at what I was looking at with respect to the actual fraud -- certainly, the plaintiff is entitled to inferences that may be drawn from its pleadings. And if certainly, if nothing else, there's an inference here that -- I think that they clearly pled -- the trustee clearly pled that there are facts from which the Court may be able to -- if those facts are proven, conclude that there was some type of Ponzi scheme going on.  And I think it's also clear from the trustee's complaint that -- the trustee's alleging that these particular payments that they've identified were part of that scheme.  They were made as part of that scheme. And that, to me, establishes a valid cause of action.

And now, it's a complicated situation because there was a lot of money that Mr. Moncure was receiving and paying out, and the data or the information that may be available to

either party to ferret out these particular payments, when they were made, made in what context, and so forth.  That's going to be a challenge for the parties, but that's part of what you'll need to do in order to present your evidence in this case.

But as far as alleging the complaint, I could say, okay, I'm going to grant your motion with leave to amend. Trustee, you need to come in with a count that says that -- specifically says these payments that are identified on Exhibit A were made as part of this scheme.

MR. MILLER:  We're asking for that.

THE COURT:  Well, and it's pretty much been said.  And it certainly as I said can be implied from the trustee's allegations.

Now, it may be that it's in the trustee's benefit to amend the complaint to clarify that, because if I deny your motions and ultimately it goes on appeal, and that's the issue that the Court sees it on, the trustee will say, gee, all I had to do was file amended complaints.  Because under Rule 15, the Court can grant leave to plaintiff to amend the complaint when it's in the interest of justice.  And I think, certainly in this case, it is.

And so I don't think we're talking about a significant redrafting of the complaint, but I think that the complaint could be tightened up.  And certainly, there wouldn't be, in my mind, any doubt about the sufficiency of the allegations were

the trustee to specifically tie those payments to this scheme as opposed to basically imitating the language of the statute that says that the payments were made with the intent to hinder and delay, because that is somewhat conclusory.

So I think it perhaps is in the trustee's best interest that I grant the motions with leave to amend, and upon the filing of the amended complaints -- if that language is added to the complaint, certainly in my mind that satisfies the concerns that Mr. Miller has raised.

MS. BERAN:  Your Honor, are you only talking about the complaints that have --

THE COURT:  I'm talking about the --

MS. BERAN:  -- pleading of actual fraud under 548?

THE COURT:  -- the 548(a)(1)(A).

MS. BERAN:  So it's denied as to every other --

THE COURT:  Denied as to all the others.  Once again, under 542, I don't see that as a necessary allegation or a harmful allegation.  I think there is case law, including Judge Mehrige's that would indicate that that only arises in the event people bail on the other counts -- or on one of the other counts, and then those funds become available.

I think it's a surplus.  I don't think it's necessary, but to the extent I'm going to say you've got -- that it's denied, I will deny it without prejudice in any event.  So --

MS. BERAN:  And, Your Honor, just so I can clarify,

and I'm doing this, but there is a point to it, because I want you to get a copy of this transcript.  Because as Your Honor is aware, there are many, many other complaints in this, and most of them have been settled through various successful mediation procedures.

THE COURT:  I was under the impression these were the only ones that had not been resolved.

MS. BERAN:  There's a handful of other ones, Your Honor.  Remember, the Silver entities.  The various ones with the -- the Silver entities.  But, Your Honor, I'm sure I'm going to get -- the phones going to be ringing, saying wait a minute.  We've settled.  So I want the record to be clear, what Your Honor is saying is the complaint needs to be --

THE COURT:  It's a belts and suspenders.

MS. BERAN:  Okay.

THE COURT:  I don't think that it's necessary.  But I think in order to establish a better record from the standpoint of the trustee --

MS. BERAN:  Absolutely.  It's an allegation to say that the year-two transfers were a part of the debtor's scheme.

THE COURT:  That the identified transfers were part of the scheme to defraud -- that the payments were made with the intent to defraud the creditors in connection with this -- what you've described as a Ponzi scheme.

MS. BERAN:  Okay.

THE COURT:  As opposed to simply saying these payments were made with the intent to hinder and defraud -- because that basically just restates the statute.

MS. BERAN:  Okay.

THE COURT:  And I know it's a picky distinction --

MS. BERAN:  The two-year transfers were made by the debtor as part of his scheme, if Your Honor's the one who --

THE COURT:  Tying the payments to the scheme as opposed to --

MS. BERAN:  Correct.

THE COURT:  -- simply concluding that these payments were made with the intent to hinder and defraud.  I think that there -- the argument can be made that the complaint does not necessarily do that.

MS. BERAN:  Absolutely, Your Honor.  Then we will make that one amendment --

THE COURT:  Now, I'm not saying you got to go back to every other case and clarify that, because to be certain to the extent you've settled other cases, that's water over the dam. If you have other pending cases, I'll leave that to you to deal with how you feel you would deem fit.

MS. BERAN:  Okay.

THE COURT:  But clearly, in this case, you can draw the inferences from the complaint and say that the complaint is satisfactory, but given the posture of the case, I don't want

to create any appealable issues, and I see no reason not to amend it to avoid any potential -- another judge higher up might look at it differently.

MS. BERAN:  Thank you, Your Honor.

THE COURT:  All right.  Is there anything else?

Oh, we have the pre-trials.  All right.  So do we need to schedule these matters for trial?

MR. MILLER:  Before I could -- before I try to cede myself -- Mr. Hoke has filed a motion for fraud Oelrich has in the matter.  He's nervous about sitting at counsels' table without a motion granted.  I ask the Court to either grant it or if want him to sit in the back.

THE COURT:  No.  You filed the motion?

MR. MILLER:  We have, Your Honor.

THE COURT:  All right.  Have you submitted an order?

MR. MILLER:  I believe we have.

MR. HOKE:  We filed a motion.  We can submit the order, I suppose.

THE COURT:  Well, you'll need to submit the order.

MR. MILLER:  Yes, Your Honor.  Thank you.

THE COURT:  Yes.  I see no problem with it.

MR. HOKE:  I thank you for that.

THE COURT:  I assume that the complaint will be filed -- designate a period of time for amending the order.  Fourteen days?

MS. BERAN:  Yes.  Two weeks exactly, Your Honor.

THE COURT:  All right.  How much time to respond?

MR. MILLER:  Ten days, Your Honor.

THE COURT:  You're satisfied filing your grounds -- your defense within -- your answer within the ten days?

MR. MILLER:  I heard what the Court said, and there might be an answer, might be another motion to dismiss.  I don't want to conclude myself.  I know the Court's got some strong opinions.

THE COURT:  Well, if it's the same issue that we've been talking about --

MR. MILLER:  I understand, Your Honor.  I won't do it purposefully.  I just don't want to eliminate that right now.  I have to think about it.  Talk to my clients.  But I understand, and I'm going to figure out the rest of the schedule order under the assumption that we're going to be granted.  Understand.  Understand.

THE COURT:  Well, then I was kind of thinking that at some point we have an amended complaint and an answer, and we could target a trial date.  Is there some reason we can't do that?

MR. MILLER:  We're going to try to do that right now, Your Honor.  That seems reasonable to me.  Yes, Your Honor.  That seems fine.

MS. BERAN:  Your Honor, the trustee is ready to

proceed to trial.

THE COURT:  I don't think we need to delay it any further.  Let's pick a trial date.  How much time do you need?  We're going to try these cases together, I assume.

MR. MILLER:  Your Honor, there will be a motion to sever.  This is important -- if I could -- if I might.  The Siglers, who I also represent, clearly, and in all fairness -- even on a trial date -- the Siglers and the Oelrichs have different dates.

THE COURT:  Oh, I'm not saying the facts are the same in each case.  I guess I'm thinking in terms of consecutive trials.

MR. MILLER:  Consecutive?  Yes, that seems fair.

THE COURT:  Wouldn't that make sense to try them all consecutively?

MS. BERAN:  Yes, Your Honor.  I'm not quite sure why the Oelrichs -- Your Honor, one of the complaints is Chesapeake Construction Group and then a group of Oelrichs', and then the second complaint is just Mr. Richard Oelrich.  I'm not sure why they couldn't be tried together.

THE COURT:  I think that's reasonable.

MS. BERAN:  That can be tried together.  And then the other two complaints are against Siglers -- Justin Sigler and Rachel Sigler, and I think those should be tried together.

THE COURT:  I think that can be tried -- I think the

Siglers can have a trial date and the Oelrichs can have a trial date. I don't think that's unreasonable. I think that's reasonable.

MS. BERAN: So two of the adversaries would be one trial and the other two would be another trial.

THE COURT: All right. So basically, we'd have two trials?

MS. BERAN: Yes, Your Honor.

THE COURT: All right. How long each trial? A day, or --

MR. MILLER: Your Honor, it will take at least two or three -- we'll be asking for a jury trial. I don't think that's an argument for perhaps a separate day. But we believe we're entitled to a jury --

THE COURT: It ain't going to happen in this courtroom.

MR. MILLER: Well, I see we're on the jury box, so I'm sure it won't happen in this courtroom, Your Honor.

MS. BERAN: Looks like you'll be sitting next door and having one of the District Court's judges holding your hand, Your Honor.

THE COURT: I don't think I'm even allowed to do a jury trial even if everybody agrees.

MR. MILLER: Judge Foster ever used -- I'm going way back now -- way back in 80s.

Colloquy                                                    46

MS. BERAN:  I think you're going to need one of the District Court judges to hold your hand.

THE COURT:  No.  I'll be happy to do it.  I think it would be -- I certainly would enjoy the opportunity.

MR. MILLER:  Somehow, we would waive --

THE COURT:  I don't think I can do it.  I think -- in terms -- now --

MS. BERAN:  I'm not conceding that they're entitled to a jury trial.

THE COURT:  Well, won't that require a separate motion, or withdraw with a reference, or something beyond what we're talking about today?

MS. BERAN:  Yes, Your Honor.

MR. MILLER:  Yes, Your Honor.  I think our answer will be demanding a jury trial.  Just wanted the Court to know, as a curtesy.  We'll be demanding a jury.

THE COURT:  All right.  Well, that might be the subject of another hearing, I expect.  However you posture it -- and posture it as you think you should.

All right.

MS. BERAN:  And Your Honor, from the trustee's perspective -- the trustee really thought it would be a day for each, and I'm not sure what we'd say for three or four days, but if they want to reserve three or four days, that's their prerogative.

MR. MILLER:  We'll have at least two experts.  We'll have a forensic accounting expert.  If they're going to claim a Ponzi scheme -- put a burden on us to prove that we didn't know about it -- we're going to at a minimum need a forensic accounting expert.  We're going to need a real estate appraiser to show that this land that everybody thought was going to sell was going to pay everybody off -- that is was ordinary course "business".  So we'll need at a minimum those two experts.  And then we're going to have about ten fact witnesses that I can think of right now.  This is an important thing.  This is a --

THE COURT:  I don't doubt --

MS. BERAN:  This suit is close to a million dollars.

THE COURT:  Listen, I know it's important to your clients, to all of your clients, and to the trustee.

MR. MILLER:  Sure.

THE COURT:  Certainly, you know what the trustee's objective in this case --

MR. MILLER:  Yes.  Yes.  Sure.

THE COURT:  -- is to -- the purpose of Chapter 5 typically is to put all creditors on an even footing.

MR. MILLER:  I'll do that, Your Honor.

THE COURT:  And so to the extent that some creditors were able to extract funds from the debtor before the bankruptcy was filed and other creditors weren't, the whole goal is to treat everyone equally.  That's the purpose of the

preference action.

MR. MILLER:  Well, as long as -- well, I only add that if the people got their money in ordinary course of business, then I think they're not in that general pot.  But we can argue, but who wants that, Your Honor?

MS. BERAN:  With all due respect, that's not the law.  In ordinary court case -- once again, he's messing --

THE COURT:  I'm starting to gather what the mediation was like in the beginning.  So I'm -- certainly, there's nothing to stop you from trying that again, if you -- parties are interested in doing that.  But as far as -- I suppose at this point we need to set two two-day trials.

MS. BERAN:  Yes, Your Honor.

THE COURT:  Set aside two days.  Maybe it won't take two days.  I don't see any reason not to reserve two days --

MR. MILLER:  I think two -- we'll do our best to try --

THE COURT:  Two sets of two days, which I assume would be what, in the summer sometime?

MS. BERAN:  How far out do we need for discovery?

THE COURT:  Well, once again, I'm hoping that we're not going to be going back and forth on motions to dismiss, but we'll actually have an answer filed, and we could proceed with the pre-trial discovery.  Or you could proceed -- we can set that up even in the context of pending motions to dismiss if

the parties agree.  But I don't want to delay this any more than we have to.  What dates are y'all considering?

MS. BERAN:  Your Honor, just looking at normal course, we -- the earliest would be July.  Unfortunately, because of the trustee's deadline, my schedule lies kind of hectic.  And we know Your Honor has some things hectic in August from the Court's perspective, so we were contemplating September, but --

THE COURT:  Well, September should give us enough time to --

MR. MILLER:  As long as we don't have discovery problems, I think we could get it done in September.  We won't have a lot of discovery.

THE COURT:  All right.  We'll -- let's look at September.

THE CLERK:  The 11th and 12th.  14 and 15.

MS. BERAN:  Your Honor, the only thing on the 15th, that is the Mid Atlantic in Charlottesville --

THE COURT:  And that won't work for us.

MR. MILLER:  May I ask an important question?  How can I get myself from Midville?

THE COURT:  How can you do what?

MR. MILLER:  Next time, I don't have my calendar with me.

THE COURT:  I'm sorry?

MR. MILLER:  They didn't let me bring my cell phone

in, so I don't have my calendar with me.

THE COURT:  Well, the policy regarding the use of personal electronic devices is on the Court's web site.  If you can do that, you'll see --

MR. MILLER:  I'll look it up.  Excuse me for asking, Your Honor.  I'll look it up.

THE COURT:  -- you can solic -- just inquire to the hearing to bring you here.

MR. MILLER:  Yes, Your Honor.  I will.  Thank you.

THE COURT:  And we'll -- I'm sure if you need a laptop or something before the trial, we'll give you permission to bring that in.

MR. MILLER:  Very well, Your Honor.  Thank you.

MS. BERAN:  So the 11th and 12th would work from the trustee's perspective, Your Honor.  The 14th and 15th would be best from the trustee's perspective.

THE CLERK:  18th and 19th.  21st, 22nd too.  Do you want the 11th and 12th for one?

MS. BERAN:  The 18th and 19th.

THE COURT:  Well, if you do the 18th and 19th, then we can say the 20th and 21st?

MS. BERAN:  The 21st and 22nd would be better from -- so it would be, from the trustee's perspective, the 11th and 12th, and the 21st and 22nd.

THE COURT:  It's not better to try to put them all

near each other in the same week, if possible?

MS. BERAN:  Your Honor, the only concern about that is I think the 19th would be trial prep trying to make a run of it.

THE COURT:  All right.  How is the 11th and 12th, and 21st and 22nd sound?

MR. MILLER:  We'll do Sigler on the 11th and 12th, and Oelrich on the 21st and 22nd.

THE COURT:  Acceptable?

MS. BERAN:  That's fine, Your Honor.

THE COURT:  All right.  Now --

MS. BERAN:  We went from the more sympathetic part to the very least sympathetic.

MR. MILLER:  We disagree.

THE COURT:  Do you -- the standard pre-trial order is --

MS. BERAN:  Absolutely, Your Honor.  That's what we --

THE COURT:  -- what I would envision.

MS. BERAN:  And us.

THE COURT:  All right.  Then, the Court will enter the standard pre-trial order, but the order that you're going to prepare in connection with these cases that --

MS. BERAN:  Deny everything --

THE COURT:  Is the trustee going to prepare the order?

MS. BERAN:  Yes, Your Honor.  Denied as to everything

other than the 548 actual count --

THE COURT:  And that's granted with leave to amend.

MS. BERAN:  --- with leave to amend.

THE COURT:  The amendment to be within fourteen days.

MS. BERAN:  Yes.

THE COURT:  In each of these cases, the answer or response to pleading to be within ten?

MR. MILLER:  Yes, Your Honor.

THE COURT:  After the --

MR. MILLER:  Yes.  After receipt of the --

THE COURT:  If for whatever reason it's not an answer and we have to have another hearing, let's try to get that scheduled quickly, and --

MR. MILLER:  I think I understand what the Court is saying in words and tone.  I understand.

THE COURT:  All right.

MS. BERAN:  Thank you, Your Honor.

THE COURT:  Thank you.

MR. MILLER:  Thank you, Your Honor.

(Whereupon these proceedings were concluded at 3:09 PM)

53

I N D E X

RULINGS:                                                  PAGE   LINE

Motions with leave to amend are granted        39      5

54

CERTIFICATION

I, Paul T. Abramson, the court approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Paul T. Abramson*

March 22, 2017

_____    _____

PAUL T. ABRAMSON                    DATE



Digitally signed by eScribers LLC
DN: cn=eScribers LLC gn=eScribers LLC c=United States l=US e=operations@escribers.net
Reason: I attest to the accuracy and integrity of this document
Location:
Date: 2017-03-23 15:00-07:00

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

# EXHIBIT K

1

<pre>
          IN THE UNITED STATES BANKRUPTCY COURT
           EASTERN DISTRICT OF VIRGINIA (RICHMOND)

In Re:                            )  Case No. 14-31546-KLP
                                  )  Richmond, Virginia
JAMES ASHBY MONCURE, ET AL.,      )
                                  )
          Debtors.                )  June 7, 2017
                                  )  11:00 a.m.
--------------------------------  )
LYNN T. TAVENNER, TRUSTEE,        )  Adv. Proc. 16-03069-KLP
                                  )
          Plaintiff,              )
v.                                )
                                  )
JUSTIN SIGLER,                    )
                                  )
          Defendant.              )
--------------------------------  )
LYNN L. TAVENNER, TRUSTEE,        )  Adv. Proc. 16-03068-KLP
                                  )
          Plaintiff,              )
v.                                )
                                  )
RACHEL SIGLER,                    )
                                  )
          Defendant.              )
--------------------------------  )
LYNN L. TAVENNER, TRUSTEE,        )  Adv. Proc. 16-03056-KLP
                                  )
          Plaintiff,              )
v.                                )
                                  )
CHESAPEAKE CONSTRUCTION GROUP,    )
LLC, et al.                       )
                                  )
          Defendants.             )
--------------------------------  )
LYNN L. TAVENNER, TRUSTEE,        )  Adv. Proc. 16-03038-KLP
                                  )
          Plaintiff,              )
v.                                )
                                  )
RICHARD P. OELRICH,               )
                                  )
          Defendant.              )
--------------------------------  )
</pre>

2

TRANSCRIPT OF HEARING ON
16-03038-KLP:  [25] NOTICE OF HEARING AND NOTICE OF MOTION; [24] MOTION TO STRIKE; [26] NOTICE OF HEARING (RE:  RELATED DOCUMENT(S); [22] OBJECTION TO MOTION
16-03056-KLP:  [29] NOTICE OF MOTION AND NOTICE OF HEARING (RE: RELATED DOCUMENT(S); [28] MOTION TO STRIKE; [30] NOTICE OF HEARING (RE:  RELATED DOCUMENT(S); [26] OBJECTION TO MOTION
16-03068-KLP:  [27] NOTICE OF HEARING (RE:  RELATED DOCUMENT(S); [24] OBJECTION TO MOTION; [28] NOTICE OF HEARING AND NOTICE OF MOTION (RE:  RELATED DOCUMENT(S); [26] MOTION TO STRIKE
16-03069-KLP:  [28] NOTICE OF HEARING AND NOTICE OF MOTION (RE: RELATED DOCUMENT(S); [27] MOTION TO STRIKE; [29] NOTICE OF HEARING (RE:  RELATED DOCUMENT(S); [25] OBJECTION TO MOTION
BEFORE THE HONORABLE KEITH L. PHILLIPS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:


For the Trustee:                    PAULA S. BERAN, ESQ.
                                    LYNN L. TAVENNER, ESQ.
                                    DAVID N. TABAKIN, ESQ.
                                    TAVENNER & BERAN, PLC
                                    20 North 8th Street
                                    Second Floor
                                    Richmond, VA 23219

For the Defendants:                 CURTIS G. HOKE, ESQ.
                                    SHAYNE HODGE, ESQ.
                                    THE MILLER FIRM, LLC
                                    108 Railroad Avenue
                                    Orange, VA 22960




Transcription Services:             eScribers, LLC
                                    352 Seventh Avenue
                                    Suite #604
                                    New York, NY 10001
                                    (973) 406-2250

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

Colloquy                                                    3

THE CLERK:  Items 270 through 277 in the James Ashby Moncure matter.

(Pause)

THE COURT:  All right, parties are ready to proceed?

IN UNISON:  Yes, Your Honor.

THE COURT:  All right.  What's first on the -- is it the -- well, I know have the related adversary proceedings, and the motions are all similar in these cases.

MS. BERAN:  Yes, Your Honor.  May it please the Court, Paula Beran of the law firm of Tavenner & Baran.  With me today at counsel table is the Chapter 7 trustee of the bankruptcy estate James Moncure, Ms. Tavenner, as well as my colleague, David Tabakin.

We are here today on the trustee's notice of hearing on two items, specifically the trustee's objection to four limited motions to dismiss that were filed by the defendants in the four adversary proceedings, and then the trustee's motion to deny the jury demand as made in the four adversary proceedings.  Given that the trustee is the one that noticed today's hearing after the defendants had failed to, in contravention of rules of this Court to notice their motions for hearing, I respectfully submit that I begin with argument after opposing counsel states his appearance.

THE COURT:  All right.

MR. HOKE:  Good morning, Your Honor.  Curtis Hoke --

THE COURT:  If you could approach --

MR. HOKE:  I'm sorry.

THE COURT:  -- the podium?  I want to make sure everything's on the record.

MR. HOKE:  Okay.

THE COURT:  And if you speak from there, sometimes it doesn't pick up with the microphone.

MR. HOKE:  Okay, thank you, Your Honor.

Good morning, Your Honor.  Curtis Hoke for the defendants.  I'm joined by my colleague, Shayne Hodge, also for the defendants.

Since counsel indicated she wants to start, I'll let her start.

THE COURT:  All right, thank you.

MS. BERAN:  Once again, may it please the Court, Your Honor.  Your Honor, we all know the requisite standard and case law for motions to dismiss under these circumstances.  In fact, if this appears to deja vu for Your Honor, it is.  The same parties, under the same arguments were before Your Honor back on March 15th.  In connection with that, Your Honor, I do have for Your Honor a copy of the transcript of that hearing to demonstrate it was the same parties, same argument.

THE COURT:  I remember some of what happened then.

MS. BERAN:  Your Honor, in connection with the same very arguments that are being made in the defendants' limited

motions to dismiss, Your Honor previously ruled in those exact same arguments -- and I quote -- and that the issue dealt with whether there was sufficient -- whether a count dealing with actual fraud -- and when I say actual fraud, with the intent to hinder, delay, or defraud as applicable under the Bankruptcy Code and, in this instance, specifically a Ponzi scheme, whether the complaints contain sufficient allegation of facts.

And at that hearing, we spent a couple hours arguing the issue. And Your Honor then stated at page 39 through 42 of the transcript, "Absolutely, it's an allegation to say that the two-year transfers were part of the debtors' scheme, that the identified transfers were part of the scheme to defraud, that the payments were made with intent to defraud the creditors in the connection with this, what you've described as a Ponzi scheme, okay, as opposed to simply saying these payments were made with the intent to hinder and delay and defraud, because that just basically restates the statute, okay."

And I know it's a picky distinction, the two-year transfers were made by the debtor as a scheme, if Your Honor's the one who -- and I said that. And Your Honor said, "Yes, tying to the payments to the scheme as opposed to," and I interrupted you, I apologized, and I said, "Correct". And then Your Honor said, "Simply concluding that these payments were made with the intent to hinder and delay, I think that the argument can be made that the complaint does not necessarily do

that."  And then Your Honor said, "But clearly, in this case, you can draw the inference from the complaint and say that the complaint is satisfactory.

"But given the posture of the case, I don't want to create any appealable issues.  And I see no reason not to amend it to avoid any potential -- another judge up -- another judge higher up might look at it differently."

Your Honor, then at page 43 of the transcript, Your Honor thought -- even went further into discussing this and said, "Well, then, I was kind of thinking that at some point we have -- would have an amended complaint and an answer and we could target a trial date.  Is there some reason we can't do that?"  And in response, defendants' counsel said, "We're going to do that right now, Your Honor.  That seems reasonable to me.  Yes, Your Honor, that seems fine."

And after that colloquy, we had a pre-trial conference.  So in connection with the previous motions to dismiss, Your Honor denied it on all counts, with exception of one.  Your Honor made a specific ruling that said the only thing that needed to be amended in the amended complaint or added to the amended complaint was a specific reference that the transfers at issue here -- and they're defined as the transfers in the complaint -- or the two-year transfers in the complaint -- were part of a Ponzi scheme.

On March 24th, Your Honor entered an order which

denies the motions to all counts but one.  As to that one count, the order specifically requires only that the complaint include an explicit statement that the two-year transfers were part of a Ponzi scheme.  That was the only reason Your Honor said it was necessary, after hours of argument.  Timely, within the time provided by the Court's order, the trustee amended the four complaints related to the actual fraud counts to include the following additional language.  And this language is all four of the complaints.  "The two-year transfers were part of the debtors' ongoing Ponzi scheme."

In addition, we added some additional allegations, Your Honor, but that is what Your Honor said needed to happen. That is exactly what happened.  Well, thereafter, Your Honor, notwithstanding the Court's statements at the hearing, notwithstanding the Court's order, notwithstanding that the trustee's amended complaints did exactly what Your Honor stated they needed to do, the defendants filed a motion for partial summary judgment to dismiss the first amended complaints on these same arguments, the exact same arguments that Your Honor heard back in March.

Based on those facts, Your Honor, given that the issues have now been briefed twice and Your Honor ruled on the exact issues back in March, the defendants did not move for Your Honor to reconsider your ruling back in March, nor did the defendants move to reconsider the entry of the order that Your

Honor previously entered, I would respectfully submit that no further legal argument is needed today and Your Honor deny the motions to dismiss.

And Your Honor, I think it's indicative of how the defendants treated these limited motions to dismiss. How long ago were they filed? They never noticed them for hearing. The trustee waited and waited and waited for a notice of hearing. It never came. And finally, the trustee instructed her counsel, let's get this matter resolved because we're moving forward with discovery, we're answering discovery, and we're serving discovery on these very issues. It's ridiculous that they've set it for hearing -- set it for hearing so it's resolved --

THE COURT: We have a trial --

MS. BERAN: -- once and for all.

THE COURT: -- in September, right?

MS. BERAN: Yes, Your Honor. Your Honor recalls there are two trials set. One set is with the Sigler defendants, and the other set is with the Oelrich defendants. And I'll go more into that in connection with the motion to deny the jury demand.

So Your Honor, we respectfully the limited motions to dismiss be denied outright and no legal arguments necessary. If Your Honor would like me to reargue everything I argued back in March, I'm happy to do so.

Colloquy                                    9

THE COURT:  I don't think that'll be necessary at this point.  I had a question, though --

MS. BERAN:  Oh, sure.

THE COURT:  -- about your memorandum that you filed in connection with your opposition to the motion to dismiss.  And it was just to clarify --

MS. BERAN:  Oh.

THE COURT:  -- that the Oelrich complaint is not seeking a 547 -- there's no preference count in the Oelrich complaint, right?

MS. BERAN:  Your Honor, there's only one preference at count, and I apologize.  The one preference count is in the adversary proceeding involving Chesapeake Construction Group.

THE COURT:  Okay.

MS. BERAN:  No other of the three have any preferences.  It's just the Chesapeake Construction Group has the preference count, and that complaint is found at Count 2.

THE COURT:  All right, so -- and maybe it's just a typo in the memo because I was looking at the Oelrich memorandum, and it did refer to Section 547 on a 430,000-dollar claim.  And I think that it was referencing the Chesapeake matter.  So --

MS. BERAN:  Your Honor --

THE COURT:  -- okay.

MS. BERAN:  -- yes --

Colloquy                                              10

THE COURT:  Okay.

MS. BERAN:  -- I apologize.  And maybe we were confusing it.  Now, the Oelrich complaint --

THE COURT:  Maybe I misread it.  I just wanted to make sure --

MS. BERAN:  Sure.

THE COURT:  -- I wasn't missing something.

MS. BERAN:  The Chesapea -- one thing -- don't get confused, Your Honor.  The Chesapeake Construction complaint also includes Oelrich defendants.  There are two other defendants -- well, there are three, but it turns out it's two others because Matt -- and I think -- let me look at this.  The two -- one of the two defendants goes by two names, so we sued him because there were checks to both of those names.  And then I believe it's his brother or another relative.  And the Chesapeake Construction are all together.

And then, there's a second complaint that involves their father, which is Richard Oelrich.

THE COURT:  All right.

MS. BERAN:  And then the third complaint is Sigler -- is Justin Sigler.  Mr. Sigler, with the Oelriches, owned Chesapeake Construction.  And the fourth complaint is Rachel Sigler.  Rachel Sigler is Justin's mother.

THE COURT:  All right.

MS. BERAN:  Okay?

THE COURT:  Thank you.

MS. BERAN:  Um-hum.

MR. HOKE:  Good morning, Your Honor.  May it please the Court, I just want to address some of the issues that the trustee's counsel had addressed.  The trustee is correct.  She noticed the hearing, and maybe it was our mistake we did not.  But we also realized the arguments that we made in our motion to dismiss were substantially similar.  And we don't want to waste any time going over them again, so I won't belabor the point too much.

But as a procedural matter, we believe that we would have to file an answer, and we filed two limiting answers asking for jury trials.  And we also believed that we wanted -- we had to preserve our clients' rights to these arguments.  We didn't want to waive our argument that we were making prior by filing an answer.  And we know and -- from the trustee's most recent brief that she's very willing to argue that we waive certain arguments.  So we wanted to make that argument for the record in order to preserve it.

And also, we checked the transcript, and we realized that the trustee's complaint matched exactly with Your Honor's instructions at the prior hearing.  But we -- notwithstanding, if we believe that it doesn't comply with Twombly, if we believe it doesn't really comply with Iqbal and Rule 8 and Rule 9, I think we should make those arguments.  I don't want to

waive them, and I think we have a -- frankly, a duty to our clients to make them.  And we -- and balance, unbalance, we also realized that the arguments are exactly the same, mostly, as we had made at the previous hearing.

So that's why we didn't set it for an oral argument.  Frankly, that was our mistake.  We didn't realize that at the time, but here we are.  And that's why we did it the way we did it.  And Your Honor did deny our initial motion to dismiss on some of the counts, but it granted it on the fraudulent transfers.  So I think the Rules require that we file that answer, and then we get our motion to dismiss on file in a timely fashion, which I believe we did.

And one of the things that's been ongoing in this ever -- the reason why the hearing, I believe, was so long last time was because we talked a lot about this Ponzi scheme presumption.  And frankly, I think we need to keep raising that until there's some sort of final ruling on that because the trustee has been making these arguments that she's entitled to this Ponzi scheme presumption.  And therefore, the burden has shifted somehow.  And that's actually become -- it's become an issue in discovery as to whose burden this is.

And I think we should take a step back, and we actually did brief this whole Ponzi scheme presumption in the motion to dismiss and especially in our reply.  And I'd like to talk about that a little bit because it's still an ongoing

issue.  And I don't think there's any --

THE COURT:  How is it an ongoing issue in discovery?

MR. HOKE:  Because the trustee has objected to some of our discovery requests on the basis that she doesn't carry the burden.  And I think the Rules are pretty clear that they're required to turn over any relevant information that's relevant to any claim or defense.  So who matter who car -- so our argument has been whoever -- no matter who carries the burden, we should still get that discovery.  It's been something that's popped up from the trustee.  Whether it's consistent with the case law or not, it's been an issue.

MS. BERAN:  Your Honor, just to clarify the record, he doesn't have the records in front of him, and he's misstating what the trustee has said.  The trustee absolutely filed an objection to discovery on the basis that -- to the extent they're seeking to transfer any burden of proof, we object.  But notwithstanding and not waiving that, the trustee answered every interrogatory.  It's almost eighty pages, I think, of interrogatories.

In addition, the trustee turned over a thumb drive of information.  The trustee also turned over and made available a courtroom full of documents that they could review.  The trustee also sat for a deposition yesterday.  The trustee has answered and provided every last bit of discovery.

Yeah, we have reserved the right, saying it's not our

Colloquy                                                    14

burden; it's your burden.  But in connection with that argument, the trustee has not withheld one single piece of paper, nor has she refused --

MR. HOKE:  Okay.

MS. BERAN:  -- to answer any questions.

THE COURT:  All right.  Well, I'm not going to --

MS. BERAN:  So for him to stand up there --

THE COURT:  -- turn this into a discovery dispute.  If you want to bring a motion --

MR. HOKE:  Oh.

THE COURT:  -- in connection with discovery --

MR. HOKE:  Oh.

THE COURT:  -- you can do that at a later date.

MR. HOKE:  Yeah, and I --

THE COURT:  As far as the burden of proof is concerned, I think that can be addressed at trial.

MR. HOKE:  Right.

THE COURT:  Now, I've already -- as Ms. Beran says, and as you acknowledge to some extent, covered this ground.  And I did make clear what my ruling was at the last case in connection with the motion to dismiss.  I recognize that you are preserving that argument.  I note your objection, but I am going to deny the motion for partial dismissal.  I think the amended complaint does state a sufficient cause of action under the Iqbal and Twombly standards, complies with Rules 8 and 9.

Colloquy                                                    15

I think the defendants do have fair notice of the trustee's claims.  And if -- Ms. Beran, if you would submit an order in connection with that.  How much time do you file an answer to the count that you sought to have dismissed?

MR. HOKE:  Ten days.

THE COURT:  All right.  So we'll provide for ten days to file an answer, and we're on track with discovery and the trial date.  So --

MR. HOKE:  I think so.

THE COURT:  -- hopefully, this will keep us on track.

MR. HOKE:  Okay.  And Your Honor, I just wanted to clarify.  I wasn't arguing that she improperly withheld anything.  It's just that that has come up.  That's all.

THE COURT:  All right.  Well, I think that -- once again, if that's an issue there, we can address it in connection with a discovery motion.  If not, then we can address it in connection with the trial.

MR. HOKE:  Okay.  Thank you, Your Honor.

MS. BERAN:  Your Honor, now we turn to the trustee's motion to deny jury trial, and this was filed in all four of the adversaries.  It's substantially similar in two of the adversaries, and it's substantially similar in two of the other adversaries.  And I will explain the similarities and differences in connection with oral argument.

Your Honor, the trustee moves today for this Court,

Colloquy                                16

pursuant to 28 U.S.C. Section 157(e), to deny the defendants' demand for a jury trial.  In connection with that, it's pretty clear in the pleadings, it's pretty clear in the title that this is a motion to deny based on 157(e).  In their reply or their opposition, the defendants make much hay about a motion to strike.  And I want to just put that red herring over to the side and put it to bed once and for all.

It's disingenuous for them to argue that.  I'll tell you why they're saying it's a motion to strike. Notwithstanding the name of the pleading, notwithstanding the case law cited, notwithstanding the statute cited, when, internally, Tavenner & Beran went to file its motion to deny, when you go into an adversary proceeding, the ECF docketing, there is no thing that says motion to deny.  There's not even a requisite space like there is in the regular docketing system for there to be a motion blank where you can fill it in.

So Mr. Tabakin and I scratched our heads, and we looked at it, and we backed out and went to the next categories, backed out, went to the next categories, and tried to come up with the closest thing that there was from an ECF docketing system.  And at that point in time, we said it's not really a motion to strike, but it's close.  It's related, and we don't want a deficiency on some other issue, so we docketed it as a motion to strike.  It's not a motion to strike; it's a motion to deny jury demand.

Similarly --

THE COURT:  It sounds like --

MS. BERAN:  -- Your Honor --

THE COURT:  -- a pleading motion to deny jury demand.

MS. BERAN:  I'm sorry.

THE COURT:  It says on the pleading --

MS. BERAN:  Well, absolutely, Your Honor.  But in fair candor to them, that's where it's coming from.  If you and look at the ECF docketing, it says motion to strike.  And similarly, when we downloaded it -- because when we do service, we do it electronically, and we do it by mail, as required by the Rules, and not necessarily both all the time, but either by electronic or by mail -- Mr. Tabakin named the number and motion to strike because that's what it says on the Court's docketing system.

But the pleading itself clearly is a motion to deny the argument in there.  To the extent, after they argue this motion to strike, the red herring, Your Honor were to say, well, wait a minute, maybe it is a motion to strike, the trustee would submit that we are still timely even under the motion to strike rules because they make this big to-do that it had to be filed within twenty-one days.

Well, I would tell Your Honor this is -- or argue to Your Honor, I'm not even sure that twenty-one-day clock has started running based on Your Honor's pre-trial order.  And I'll explain that in further detail.  But I just want Your

Honor to remember that if -- when they're arguing this motion to strike argument, when does that twenty-one-day clock based on Your Honor's pre-trial order?  They want to point to these other things.  They want to point to the original motion to dismiss.

Well, that was filed way, way, way back when we were in the midst of mediation.  Should we have done something then?  No, we were in the midst of mediation.  Everything was stayed until mediation was done.  Pursuant to Your Honor's pre-trial order -- and I will get to that pre-trial order in great detail -- it's perfect.  It's what the procedures need, from a bankruptcy procedure practice, to address issues like this, and that pre-trial order says, when the appropriate relief has been filed and set for hearing.  Once again -- I'm going to get to this in detail -- they haven't even set it for hearing.

So to the extent this twenty-one days runs, it doesn't run until they've set it for hearing.  We set it for hearing.  We filed it on the same day we set it for hearing.  We're timely.

Now, Your Honor, in this instance, coming back to the issue that really is before the Court, in this instance, it is clear that the defendants, to the extent they ever had a right to a jury trial, have since waived that right.  Specifically, they have not moved to withdraw the reference from this Court.  They have not obtained the consent of all parties to the

litigation, such that the matter may be tried by a jury in this Court.  And they have not complied with this Court's pre-trial order.

Indeed, the trustee does not consent to a trial by jury of this core.  And unfortunately, the little academic person that I am at times, I would state that this is not only statutorily core, it is constitutionally core.  This bank -- it's a bankruptcy matter involving a fraudulent conveyance claim arising under 548, not to mention turnover under 542, and then one of the counts does have a preference.

Given that the deadlines relating to the withdrawal, the reference, or other relief as delineated in the Court's pre-trial order have passed as of April 23rd, it also is pretty clear that the defendants have waived any such right.  And let me walk you through why that is, Your Honor.  And I think it's helped to have a brief history of what has and what hasn't happened in this case -- or in these cases.

On March 25th, 2016, the trustee filed the four complaints.  And as Your Honor and I had a little bit of a colloquy on those four complaints, the complaints against Chesapeake Construction Group, et al., which also includes some Oelriches, had a count for turnover, a count for preference, a count for actual fraud, and a count for constructive fraud.

The complaint against Richard Oelrich had a count for turnover, a count for actual fraud, and a count for objection

Colloquy                                              20

on the -- from a claim perspective.

The count for -- the complaint for Justin Oelrich addressed a count for turnover, a count for actual fraud.

And the complaints for Rachel Sigler had a count for turnover, a count for actual fraud, and a count for a claim waiver/objection.

In connection with that, Your Honor, the defendants did file a motion to dismiss and memorandum of points of authority in supports of its motion to dismiss. And the defendants inserted boilerplate jury demand language that I'm sure is used in district court pleadings in which they file or participate in all the time, district court.

Thereafter, pursuant to order of this Court, the parties engaged in mediation with Ms. Karen Crowley. After Ms. Karen Crowley filed her notice that the matters had not settled, the motions to dismiss were set for hearing. And as previously argued, the motions to dismiss were heard on March 15th. And the Court also on that day conducted the pre-trial.

Your Honor, I think it's really important -- I'm not here just casting dispersions, but I think it's important for Your Honor to hear what happened after that pre-trial and after the motions to dismiss were heard, because in the reply or the opposition, much to do is made about a procedural posture which, in essence, part of the procedural posture was created by the defendants' own doing.

The trustee timely drafted the orders after that hearing on March 15th.  The very next day, the very next day, Thursday after the Wednesday hearing, the trustee's counsel sent the orders to defendants' counsel.  To Mr. Hoke's credit, he immediately replied.  And I think it basically was because he was not yet admitted pro hac vice, he did not feel comfortable signing them.  And that was something Mr. Miller would have to respond to.

We waited and waited and waited for a response from Mr. Miller.  Finally, after several emails about status, Mr. Miller responded saying that he would endorse the orders as seen and objected to on March 22nd, almost a week later.  And it wasn't even seen and agreed.  So the whole argument, without preserving rights or whatever, I wasn't following that before because he preserved it by saying seen and objected to.  So why was this whole need for additional motions to dismiss?  But nonetheless, almost a week later.

So in the meantime, Your Honor had entered your pre-trial order.  So now you have a pre-trial order entered before the motions -- rulings -- the official ruling on the motions to dismiss were entered.  That pre-trial order specifically says any party not consenting to the entry of a final order by the bankruptcy judge shall file a motion to withdraw the reference or for other appropriate relief within thirty days of the entry of this scheduling order and -- I didn't know this was going to

become an issue, but in the reply, they seem to just gloss over this fact -- and shall promptly set the matter for hearing. The failure to comply with the terms of this paragraph shall be deemed to constitute consent to the entry of final orders by the bankruptcy judge.

As indicated, Your Honor, on March 22nd, right before -- I mean, after that order had been entered, we did BOP over to the Court.  And the Court, after entering the pre-trial order, entered the order on the motions to dismiss.

On April 7th, consistent with the orders on the motion to dismiss, the trustee filed her amended complaint.  And as indicated, the trustee did exactly what this Court instructed her to do in that amended complaint.  Once again, as previously argued, notwithstanding the Court's statements at the hearing, notwithstanding the Court's order, notwithstanding the amended complaint which complies with the order, the defendants filed their partial motion to dismiss.  Interestingly, in connection with that pleading, there is no jury demand.

Similarly, though, on that day, the defendants also filed answers related to the other counts where they did, again, demand a jury trial.  But once again, these pleadings are filed.  And I understand from counsel why -- their argument as to why they didn't set it.

But I think it's very important because they're trying to latch on to those pleadings as being that's the pleadings

that they did in connection with Your Honor's pre-trial order. Well, that is nonsensical from my perspective. I think that that's an after-the-thought oops, wait a minute, we messed up, we better find something to latch on to, because if that's the case and they want to latch onto that, they would have said, okay, pre-trial order says we have to do it within thirty days and shall promptly set the matter for hearing. They didn't do that.

So, Your Honor, the trustee waited and waited and waited. And like I said, discovery was ongoing. Things were happening. The trustee finally looked at her counsel and said enough is enough, we have to resolve some of these issues, get it before the Court. So thereafter, the trustee filed her objections to the limited motion and shortly thereafter also filed this motion to -- excuse me, to deny the jury demand.

In connection with that, Your Honor, sitting here today, even sitting here today after all these pleadings have been filed, the defendants still -- they didn't do it timely within the bankruptcy -- within Your Honor's pre-trial order. They still have done nothing, no type of suggestion, not going up to the district court, knocked on the door, and said, Your Honor, we may want to withdraw the reference. They just have done nothing.

With these facts in mind, Your Honor, the legal argument becomes quite simple. The defendants did not comply

with 28 USC Section 157.  And if they ever were entitled to a jury trial, they certainly are not now.

Unfortunately, this Court is not authorized to conduct a jury trial.  The trustee does not consent to a jury trial. The defendants have consented to this Court's jurisdiction and all matters being heard by this Court by virtue of this Court's pre-trial order and/or the defendants' filings of proofs of claim.  And the defendants have waived the right to a jury trial by first and foremost failing to follow proper procedure, and secondly, by filing proofs of claim.

Now, let me break these all out really briefly, Your Honor.  We briefed them extensively, but let's look at the various elements in the things.  Unfortunately, the Bankruptcy Code, Section 157, says if the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specifically designated to exercise such jurisdiction by the district court and with the expressed consent of all the parties.  As Your Honor is well aware, the reference from the district court in this instance, which was cited to in our motion, does not include authority for Your Honor to conduct a jury trial.

Contrary, and we pointed this out in our papers, the Western District where defendants' counsel's office resides does have authority.  But in this jurisdiction, unfortunately,

Your Honor does not.  Trustee and her counsel wish you did.  We love appearing before Your Honor.  But unfortunately, the district court judge in the Fourth Circuit, for whatever reason, did not give such in the reference.

So then the next thing is did the trustee consent to a jury trial?  At the pre-trial hearing that I previously referenced, I stood up here.  I think we tried to give a roadmap.  We tried to explain.  I said I'm not conceding the defendants are entitled to a jury trial.  After that, did they one time, once pick up the phone, once send an email, once, in any way, shape, or form try and say, hey, trustee, would you consent to a jury trial?  No.  Crickets.  Nothing.  Zero.  Zip.

Sitting here today, they still have failed to do anything to try and obtain the trustee's consent other than putting boilerplate language, issues in district court pleadings, into these bankruptcy pleadings.

Next, Your Honor, the trustee would submit that the defendants have consented to this Court's jurisdiction and having all matters heard by this Court by the virtue of the pre-trial order.  Now, the defendants, once again, throw another red herring to the Court.  And they try and say, well, wait a minute, the trustee is confusing consenting to jurisdiction with waiver and that's not the same thing and the trustee is meshing it.

The trustee is not confusing anything, Your Honor.

The trustee is completely -- and her counsel understand the circumstances where a party could consent to this Court, hearings matters to a certain point and then for it to be handed off to the district court for the jury trial.  So there are certain circumstances where a party can consent to this Court's jurisdiction up to a certain point and still get the jury trial.  That's not the circumstances before Your Honor, Your Honor.  That is not what happened here.

So let's review first the consent to jurisdiction and why that's problematic for these defendants.  The Court's pre-trial order specifically -- and I don't mean to be beating a dead horse, but any -- it says -- and I'll say it -- any party not consenting to the entry of a final order by the bankruptcy judge should file a motion to withdraw the reference or for other appropriate relief within thirty days of the entry of this scheduling order and shall promptly set the matter for hearing.  The failure to comply with the terms of this paragraph shall be deemed to constitute consent to the entry of final orders by the bankruptcy judge.

Once again, they didn't move.  They didn't seek appropriate relief.  They didn't move to withdraw the reference in the district court.  They didn't seek other appropriate relief in this court.  And to the extent they want to latch on to something they may have done in this court, they certainly didn't set that matter down for hearing.  And so the pre-trial

order is pretty explicit as to what has transpired after that thirty days ran.

As Judge Kinney indicated in one of his opinions in dealing with the Wellness International, he says in Wellness International, the Supreme Court squarely decided that parties may consent to the entry of final money judgments and bankruptcy courts.

Similarly, in another case in which Judge Kinney has the exact same language as this Court's pre-trial language, he found the parties had consented to his ability to enter final orders when no action was taken within the times found in his pre-trial order.  Here, the defendants have unequivocally consented to the entry of final monetary judgments by this bankruptcy court.

So then what happens next, Your Honor?  They've consented.  Well, by failing to follow the proper procedure, they have waived their right to a jury trial and/or by filing the proofs of claim.  The defendants, in connection with this argument, spend a lot of time with Granfinanciera -- I have a hard time saying that, I've always hard time saying that -- and with the Langenkamp cases of the Supreme Court.

Your Honor, you and the trustee are very, very, very familiar with those cases.  The reference and the time spent on those cases is yet another red herring.  What the defendants fail to understand and appreciate is what happened in the

Supreme Court in Stern and Wellness and what followed in bankruptcy courts across the country after those cases were decided. And specifically what followed in this court was the modification of the Court's pre-trial orders to include that language that I've read several, several times.

So this isn't an instance where we're taking away a right that the Supreme Court said was there in Granfinanciera and Langenkamp. This is an instance where, based on what happened in Stern and Wellness and bankruptcy courts across the country and especially Your Honor's addressing of pre-trial orders to address some of the issues that were addressed in those cases and to come up with a process that made the bankruptcy process work. I mean, at what point were they going to notify Judge Hudson, oh -- or Judge Gibney or whatever district court judge, oh, Judge, we need a trial date? No. The process is set up they need to do that early.

In connection with the Supreme Court's ruling in Wellness, it said the entitlement to an Article III adjudicator is a personal right, and thus, subject to waiver. Similarly, Your Honor, Judge St. John gave the defendants a roadmap in his case of Smith v. McCluskey in connection with that. Judge St. John indicated that with jury trials, what you do is you accomplish a jury trial by the transfer of the complaint to the United States District Court. You do that by withdrawing the reference. The trustee has cited a string of probably, I don't

know, a page of cases where that happens.

Now, this Court, Your Honor, even tried to give the defendants a little roadmap of that at the pre-trial conference. At the pre-trial conference, Your Honor said, the Court, I don't think I'm even allowed to do a jury trial even if everybody agrees. And I said I'm not conceding that the defendants are entitled to a jury. And Your Honor said, well, won't that require a simple motion or withdraw within a reference or something beyond what we're talking about today?

I remind you, what we were talking about today was motions to dismiss. Now they're trying to link it on to the motions to dismiss. That was their pleading they filed. I said yes, Your Honor.

Mr. Miller then said, yes, Your Honor, I think our answer will be demanding a jury trial, just want the Court to know as a courtesy we'll be demanding a jury trial.

The Court said, all right, well, that might be the subject of another hearing I expect, however you posture it, and posture it as you think you should. Unfortunately, the defendants postured it wrong. The defendants did not follow this Court's guidance.

As demonstrated in a plethora of cases in our motion, what the defendant should have done -- and so they make a big to-do about this in their response, saying, but, wait a minute, it's premature, Your Honor can rule on things. Absolutely.

Absolutely Your Honor can and should rule on things.  This is all premature though; we shouldn't yet do it.  We don't need to withdraw the reference yet.  Don't worry about what Your Honor's pre-trial order says; we don't need to withdraw the reference yet.  Let Your Honor rule on everything.

No.  Technically, Your Honor, the correct procedural posture, what they should have done as indicated by Chief Judge St. John and the plethora of cases we cited -- what they should have done is they should have gone to the district court with their timely motion or suggestion to withdraw the reference but agreed right then and there in that pleading that the matter could be remanded back to this Court for all the pre-trial matters.  And then the actual jury trial could and should be heard by the district court.  Notwithstanding Your Honor's signaling that, trying to give them a roadmap, the defendants failed to take any such actions.

The defendants, like I indicated, seem to indicate that this -- the boilerplate language in their answers to their original motions to dismiss is what satisfies Your Honor's pre-trial order.  Your Honor, that is not the same as moving to withdraw the reference.

Based on that, Your Honor, and the lengthy case law -- and we have cited a lot of case law that says that failure to follow procedural posture -- and in the cases we cited, it's failure to make a timely demand.  But in essence,

Colloquy                                      31

the cases all hold.  We cited one, but I would also give Your

Honor several other cases that basically say the failure -- and

I apologize, Your Honor.  Let me find that cite.

Your Honor, one moment.  I apologize.  I did cite in

my brief --

THE COURT:  They're cited in your brief.

MS. BERAN:  The one -- but I had one concern about

that, is we just cited the most recent case because there

is -- there are many cases that say the same thing, if you fail

to timely follow procedural requirements, you waive the right

to a jury trial.  The case we cited, we only cited the one,

didn't give the string cite, was an unpublished opinion.  And

there are a plethora of published opinions that I can provide

Your Honor with cites with, too, if Your Honor was concerned

that that one was an unpublished opinion.

So, Your Honor, to the extent they had a right, they

have waived it by failing to file the requisite posture and/or

procedure.

Similarly, Your Honor, defendants Rachel Sigler and

Richard Oelrich -- now, we've got to remember the various

adversary proceedings . Rachel Sigler is a defendant in one

adversary proceeding.  Richard Oelrich is one defendant in

another adversary proceedings.  They've waived their rights to

a jury trial by filing proof of claim.  It's unequivocal.  They

have filed proof of claim.  No dispute about that.

As Judge held, you know, notwithstanding, you know -- and this case was after Granfinanciera and Langenkamp is, you know, once a creditor has filed a proof of claim in a bankruptcy case, that creditor has submitted itself to the equitable jurisdiction of the court.  And the trustee's avoidance action and the creditor's proof of claim become part of the claim allowance process which is triable only in equity. The filing of a proof of claim evokes the jurisdiction of the bankruptcy court over the debtor's estate and seeks to stake out a right to participate in any distribution of the case. The court in Langenkamp reasoned that in other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction.  As such, there is no Seventh Amendment right to a jury trial.

In this instance, Your Honor -- we also cite other instances where -- in other courts where they have held the same thing, more recent cases, in case there's any argument that even though they don't mention Stern and Wellness in connection with their other arguments in case the -- there was any concern that there may have been some modification of that bankruptcy principle that we all have known to be fundamental. We have cited some other more recent cases in our brief.

Your Honor, similarly, when a party files a claim

involving the same transactions of a defendant, said defendant is not entitled to a jury trial because said action becomes part of the claims allowance process.  And that was held by a district court in Colorado in Sender v. Hardy in re Hedged-Investments Associates, Inc.  And in that instance, it involved two defendants, one who had filed a proof of claim, one who had not.  And the court said because the one had filed a proof of claim, both were no -- and it involved the same transactions, no longer entitled to a jury trial.

Similarly, here, look what we have here, Your Honor. Let's look at Ms. Sigler.  Ms. Sigler, Rachel Sigler, filed a proof of claim.  Her son has also been sued, Justin.  In connection with that suit, we believe it involves the same loans, the same transactions.  Defendant I think agreed to that.  At the pre-trial conference here, defendant's counsel stood up and said yes, we consented to the Sigler matters being heard together, tried together.  So we have a trial date for the Sigler actions.

Based on the fact that Miss -- the mother, Rachel Sigler, filed a proof of claim, that involved the same transaction -- now, yeah, there are two different adversaries. But I would tell you, now, in connection with these adversaries, as they were filed, we were trying to sort out the interrelationships of all these parties, wasn't one hundred percent confident, and so we did it as two separate ones in

that instance.

Similarly, Your Honor, Richard Oelrich, Richard Oelrich, we believe, is the father or uncle of the Oelrichs in the other adversary proceeding.  So yeah, the separate Richard Oelrich complaint and then you have a Chesapeake Construction complaint.  In the Chesapeake Construction complaint, you have other Oelrich individuals.  I think it's two other individuals. Richard Oelrich, we believe, is either the father or uncle of the individuals of this complaint.  The Siglers, it's all intertwined.  The Siglers and the Oelrichs own Chesapeake Construction Group.

But putting that aside, Richard Oelrich filed a proof of claim.  The trustee believes that the proof of claim and the monies that were paid to Mr. Oelrich -- I mean, to Mister -- yeah, Mr. Richard Oelrich, and the transfers that were made are all intertwined and interrelated and will need to be sorted out in connection with monies that flowed from the Oelrichs to another Oelrich to a Chesapeake Construction Group. The monies were going each way in connection with these notes.

The trustee would submit that these are the same series of transactions.  And by Richard Oelrich filing a proof of claim on the same series of transactions that are involved in the Chesapeake Construction complaint, the trustee would also submit that then there has been a waiver in that instance as well.

Your Honor, I know that that's an argument that has not been -- well, I don't believe there wasn't -- there was no published in the Fourth Circuit on that argument.  And so I know that the trustee is bringing a novel argument here.  It has been ruled on in other courts.

And to the extent Your Honor does not believe it appropriate to go quite that far in these circumstances, I would let Your Honor know and state that you still can find that they're not entitled to this jury trial because of the failure to follow all of the procedural postures associated with a motion to withdraw the reference and/or some other appropriate relief and setting that matter for trial.

Your Honor, to the extent the defendants were ever entitled to a jury trial, they have waived the same by virtue of their failure to follow the appropriate procedure and by the filing of the proofs of claim by Richard Oelrich and Rachel Sigler.

Your Honor, I just want to note, and we pled this, but the withdraw of the reference is not currently before this Court.  I'm beating a dead horse, but it's not before this Court because the defendants failed to follow Your Honor's pre-trial order.  And under the new rules, I'm not even sure if it would be before this Court.  I think it would be before the district court.

But the trustee does recognize under the Code you do

have the right to sua sponte make a suggestion of withdraw of the reference to the district court.  The trustee recognizes that right.  But the trustee would respectfully submit that Your Honor should not remedy the defendants' procedural failures with a sua sponte suggestion of reference -- withdraw of the reference.

To the extent Your Honor is inclined to consider the same, the trustee has briefed it in her papers.  And I am prepared to argue against that right now.  But I'm not -- I don't want to waste the Court's time if that's not something Your Honor would like to hear about.

THE COURT:  I don't think that's necessary.

MS. BERAN:  Well, based on that, Your Honor, the trustee would respectfully request that Your Honor, for the reasons stated in the papers filed with the Court as well as argument today -- we would respectfully request that the defendants' right for a jury trial be denied.

THE COURT:  All right.  Thank you.

MR. HOKE:  Good morning, Your Honor.  Curtis Hoke, again, for the defendants.

So the trustee has made much to do about the procedural posture of the case.  And we have reviewed the order.  And we did, of course, include it in our briefing as well.  And the order indicates that, as you know and as the trustee has gone over but I'll do it just so that it's clear,

any party not consenting to entry of a final order by the bankruptcy judge shall file a motion to withdraw the reference or other appropriate relief within thirty days.  And within thirty days, we did file not one, but two demands for a jury trial.

And as Your Honor knows, we filed the answers as to each of the claims where the -- where Your Honor denied our initial motions to dismiss.  And then we filed that motion to dismiss on the limited -- only to the remaining fraudulent transfer claim which remained in each of the cases.

And we believe that we are complying with the order by filing for other appropriate relief, i.e. filing those answers. And we were also required by the rules, I think, to file the answers as well within that time frame.

And she -- the trustee is correct.  There is a bit of a timing issue where the -- where Your Honor issued the order. And we did file those.  And it also just happened that our deadlines to file those also did fall within the orders requirement as well.  But nonetheless, we do believe that we did comply with it by filing those two jury demands and by filing our actual motion to dismiss the case.

THE COURT:  So how did you think it was going to happen?  How do you think it was going to result in a jury trial based on what you filed?

MR. HOKE:  So what we were envisioning is that we

would get some sort of -- so if Your Honor were to grant our motion to dismiss, then the majority of the cases go away.  And then there would be no need for it.  And on the other hand, if Your Honor denied our motion to dismiss, then we would have a short period of time to file the answer.  And then after the answer is done and we actually know which cases really are proceeding further, then moving to withdraw the reference.

THE COURT:  So you thought ultimately it would require a motion to withdraw the reference?

MR. HOKE:  Yes.  Yes.  And we were -- in our view, the way --

THE COURT:  So what's the other appropriate relief you're talking about then?  Because if it requires --

MR. HOKE:  Oh, the other appropriate --

THE COURT:  -- a motion to withdraw the reference, isn't that the appropriate relief?

MR. HOKE:  Well, it says or for other appropriate relief.  And we believe that the other appropriate relief was filing was filing a demand for a jury trial and moving to dismiss the case.  If the case is dismissed, then if that appropriate -- if that relief is granted, then there's no need to go through the whole trial which -- all of the records and all of that.

So, in other words, I think the case law is actually pretty clear.  And we cited cases that -- or at least one case

that says it's premature to withdraw the reference prior to, I think, summary judgment stage, because at that point, the district court isn't even clear that the case is really even going to go to trial.

THE COURT:  So basically you don't like our pre-trial order because the pre-trial order says you have to file a motion to withdraw within thirty days of the entry of the order.

MR. HOKE:  Oh, no.  It's --

THE COURT:  So you don't think that's correct?

MR. HOKE:  No.  It's not that we don't like the order. It's that we believed we were complying with it by --

THE COURT:  But the order also has deadlines to file motions for summary judgment.

MR. HOKE:  It does.

THE COURT:  So if the intention is that until all of those issues have been resolved, summary judgment motions and so forth, the ability to seek to withdraw the reference remains despite what our pre-trial order says?

MR. HOKE:  Well, I think we were -- frankly, I think we were anticipating that we would withdraw the reference after the pleadings were settled.  That's all.  I don't think we would want to wait and -- I mean, the Court has set a very -- it's a fairly expedited order.  The deadlines are pretty close together.  And, frankly, I don't think it would be

too timely to wait until summary judgment stage because of the deadlines that are set and because trial is coming up in September.

I think the way that we were -- the way that we viewed the order would allow us to file that motion to dismiss.  Once the pleadings are settled, then we can move to withdraw the reference because then we actually know which cases are proceeding further.

And I think the -- there's case law that's actually fairly directly on point on that.  The case that we cited for that is in re Stansbury-Poplar Place.  And that's 13 F.3d 122.  And the page number that we cited was 128.  And I think in that case, it does indicate that with regard to the time line.  And I think that was -- I believe that was the case where the court had indicated that it might be premature to move to withdraw the reference prior to the summary judgment.  But I don't think we wanted to wait that long.  I think all we wanted was the pleadings to be settled.

THE COURT:  Did that case involve a pre-trial order similar to the one that we entered in this case or these cases?

MR. HOKE:  I don't know.

There's also another case that was actually very, very similar with regard to the consent issue because the order, of course, says that if we don't file for this other appropriate relief, then we consent to the court.  But this consent, I

think, is a little bit of a red herring if -- and that -- the case that's actually directly on point there, it's actually a case that was out of the Western District of Texas.  And that one says the argument that by consenting to the bankruptcy court's jurisdiction, plaintiffs waive their rights to file a motion to withdraw, clearly contravenes the text of the statute.  And that's the withdraw statute.  And it says accordingly, the court finds that plaintiffs consenting to the bankruptcy court's jurisdiction did not waive their ability to withdraw the proceedings to the district court.

I think the fact then remains that we're still entitled to file it.  And I think -- of course, we didn't -- we did not ask for the hearing, but we did file two motions -- I'm sorry, two demands for a jury trial and for the motion to dismiss which we believed were in compliance with the Court's order.  And I think, like I said, as we were envisioning, the pleadings would be settled after that point in time where we could file an answer, we could move to withdraw the reference all in a fairly expedited time frame and still have time to have a jury trial before the appropriate court.  And I think the Poplar Place case is pretty clear on that as well.

And it seems that the trustee's argument really hinges on the fact that this Court cannot conduct a jury trial.  And we don't disagree.  The case law is pretty clear that this Court cannot.  But that is not fatal to the constitutional

rights of our clients to move to withdraw that reference.  And it's not fatal to a determination that they are entitled to a jury trial.  And I'm sure Your Honor is very well aware of the Granfinanciera case and the Langenkamp case and Stern.  And we are familiar ourselves with that as well.  And those are pretty clear.

THE COURT:  Well, actually, Wellness is the one I'm really thinking about because Wellness is where the supreme court held that consent can be waived or the consent -- that the jurisdiction of this Court to enter a final judgment -- if the parties can consent, this Court does have the ability to enter a final judgment.  And so the question is whether by not complying with the terms of the pre-trial order, did the defendants in this case waive their right to a jury trial by agreeing, pursuant to those terms, to the ability for this Court to enter a final judgment.

MR. HOKE:  I would argue that the case that I cited from the Western District of Texas -- and that one actually came out in -- I believe -- it was fairly recently.  And I think it's directly on point.  That was in 2015.  And that one says pretty clearly that we are entitled to move to withdraw the reference.  I think in that case, they even consented.

THE COURT:  Well, I mean, as Ms. Beran points out --

MR. HOKE:  Yeah.

THE COURT:  -- I think your motion to withdraw the

Colloquy                                        43

reference would be filed with the district court.  And I'm not sure I could stop you from filing that motion --

MR. HOKE:  Yeah.

THE COURT:  -- and have the district court decide whatever it may decide.  But in terms of what we -- the judges in this district did when we came up with our uniform pre-trial order was to -- and that was done primarily in response to the Wellness decision that said that the parties can consent to the jurisdiction of this Court to enter a final order, was to give certainty to the proceedings by providing in that order that if no request for withdraw of reference is filed within the thirty days of the entry of that order, that the parties have consented to this Court entering a final judgment.  That was done so that there could be some certainty to the proceedings so that this Court would know at the expiration of that thirty days, that if no request for withdraw of the reference was filed, then the parties have consented to jurisdiction in this Court.

And the cases that Ms. Beran cites where Judge Kinney addressed this issue and Judge St. John as well made pretty clear that that's the procedure to be followed in this Court.  Otherwise, it's deemed that the parties have consented to this Court's jurisdiction.

MR. HOKE:  Okay.  I understand, Your Honor.  But I think we're still entitled to file the motion to withdraw the

Colloquy                                44

reference as to the jury trial.  And I think they are -- as Ms. Beran did correctly point out, there are two individual -- two plaintiffs who filed a proof of claim and two that did not.  For the --

THE COURT:  Well, you agree that these cases are all intertwined as Ms. Beran has represented, right?  Don't they largely involve the same facts and the same parties?

MR. HOKE:  They are.  But I don't think I would agree that one defendant fling a proof of claim would bind the others and strip their fundamental rights to a jury trial.  This is serious.  It's their fundamental rights to a jury trial.  I would find -- it seems unseemly that one defendant filing a proof of claim without counsel would waive someone else's right to a jury trial.  I don't think that's -- I don't think it's constitutional.

THE COURT:  Well, I think what Ms. Beran is suggesting is that perhaps the adversary proceedings could have been brought under one adversary proceeding as opposed to four and that a waiver by one defendant or pursuant to a proof of claim having been filed would be binding on all the defendants and that she's asking -- apparently, there's no precedent in the Fourth Circuit but that this Court considered the fact that these were filed as separate adversary would not prohibit the Court from following the same guidelines basically if those proceedings are interrelated or intertwined.  And it appears to

me that they are.  And so I don't really -- the fact that the proofs of claim were filed without counsel doesn't really make any difference.  As far as I'm concerned, they were filed.

MR. HOKE:  Okay.

THE COURT:  And then so now those parties have consented to this Court's jurisdiction.  And so I think that not only -- if you don't look at the specific language of the pre-trial order, an argument can be made that this Court should retain jurisdiction simply because of the proofs of claims that were filed.

MR. HOKE:  I would respectfully argue that I don't think that --

THE COURT:  I'm not asking you to agree with me.

MR. HOKE:  Yeah.

THE COURT:  I know that's not what you're going to do.

MR. HOKE:  I can't -- respectfully, I don't think I can agree to that.  I think that the constitution would require that each individual person make their own knowing and informed decision.  And the trustee -- I presume she could have filed them all in one, but she chose not to.  And she chose to separate them out.  And we have separate defendants with separate cases.

The underlying facts, and I agree they are related -- there's a lot of stuff going on to be fair.  We just took the trustee's deposition yesterday.  We know it's a very

Colloquy                                    46

complicated case.  There's a lot going on.  Presumably, there's a lot of interrelated claims.  But I think as a practical matter, you know, there's a lot of interrelated claims, it's -- how do you make the distinction of who waived other people's right to a jury trial?  You know, they are -- some of them are family members.  But I don't think it's constitutional to -- like I said, to be able to waive someone else's right to a jury trial because one person filed a proof of claim and the other did not.

The ones -- and we do agree in our opposition that if someone did file a proof of claim, that I think the law is pretty clear that they have submitted to the equitable jurisdiction of the bankruptcy court.  But I am more concerned about the clients at this point who did not file the proof of claim.  And I think they're still entitled to that jury trial.  And I think the law is fairly clear on that.

So just to clarify, Your Honor is wanting to explore the possibility that one defendant may have waived another defendant's constitutional right to a jury trial by virtue of filing --

THE COURT:  I'm just following up on the arguments that Ms. Beran made.

MR. HOKE:  Okay.  okay.  I --

THE COURT:  I mean, I think in the situations where a proof of claim was filed by defendant, I think it's clear.

And --

MR. HOKE:  Yeah.  I agree.  The law is very clear on that with regard to the defendants that did file a proof of claim.  We don't dispute that.  And we don't dispute it in our arguments.  We even cite to the case law that says that they did waive it if they filed their proof of claim.  We're not hiding anything from the Court or anything like that.

What I am very concerned about now are the defendants that didn't file the proof of claim.  We think they are entitled to a jury trial.  We asked for a jury trial.  I think there's -- I was -- when we were doing the research, we found some cases that said thy waived it after they did not file a demand for a jury trial on, like, two separate occasions.  We filed it in our first answer, in our second answer.

And we believed in good faith that we were following the Court's order to seek other appropriate relief by filing that motion to dismiss.  And basically, our thinking was that once the pleadings are settled, then we can timely move to withdraw the reference.  And I think we still are entitled to do that.  And I think that the case that I cited is pretty clear on that.  I think that's it unless Your Honor has any more questions.

THE COURT:  All right.  No, I don't have any questions.

MR. HOKE:  Okay.

THE COURT:  I mean, I think that the language in the pre-trial order is pretty clear.  And when we need to talk about other appropriate relief, I think, given particularly with your concession that this Court cannot conduct a jury trial, that simply included in your response that trial by jury is demanded is not appropriate relief under the terms of that language and that pre-trial order.

And I think that given that the other judges in this jurisdiction, Judge St. John and Judge Kinney, have already addressed the language in the pre-trial order and what's required under that language, that it's even more clear that appropriate relief in the context of seeking trial by jury in bankruptcy court does require withdraw of the -- or motion to withdraw the reference.

MR. HOKE:  And I anticipate we'll file the motion to withdraw the reference very soon.

THE COURT:  Well, all right.  Thank you.

MR. HOKE:  Okay.

THE COURT:  All right.  Well, the motion to deny the jury demand, the trustee has brought that motion.  I have to say that I was under the impression, as the trustee was, that perhaps the defendants had waived -- or had acknowledged that this was not going to be tried by a jury because, despite the proceedings of March 15th, there was no withdraw of a reference motion filed.  And had the trustee not brought the motion to

deny the jury demand, I'm not sure where we would have been. Perhaps we would have been looking to impanel a jury or the defendants may have been looking to impanel a jury in September when we commence this trial.  And, obviously, that was not going to happen.

So, I mean, clearly, this is a court proceeding under 28 U.S.C. Section 157(b)(2)(E), (F), and (H).  The Court typically hears fraudulent transfer cases.  Is it a court proceeding.  It does affect the estates.  In at least two of these matters, the defendants have filed proofs of claim.

But more importantly, the language of the pre-trial order is clear and specifically provides that the failure to file a motion to withdraw the reference or other appropriate relief, which, in this case, I'm not aware of any other appropriate relief, but I do know that simply demanding a jury trial and the response of pleadings is not seeking appropriate relief, within thirty days of the entry of the pre-trial order, and it's well beyond thirty days since that pre-trial order has been entered, constitutes consent to this Court entering a final judgment.  And I think that the Wellness International case makes that clear.

It certainly was the intent of the judges in adopting the language of this uniform pre-trial order in order to give finality to these proceedings, in order to -- so that the parities would not be prejudiced by further delays, that if

either party, any party, does not consent to this Court entering final judgment, that the request for withdraw of the reference would be filed within thirty days of that pre-trial order.  It clearly was not in this case.

Now, let me clarify my comments during the pre-trial conference were not in any way intended to amount to a sua sponte motion or suggestion that the reference -- that the order be withdrawn -- or that the reference bet withdrawn in this case.  It was exactly as Ms. Beran mentioned.  It was really primarily to give head's up to the defendants that they would need to take affirmative action in order to pursue their request for a jury.  And to date, there was no affirmative action taken.

So this Court will retain jurisdiction over this case pending any action to the contrary that the district court may take.  And I intend to go forward with trial in September on each of these matters.

I don't know that I can stop you from filing something in the district court.  That's your privilege to do that.  But to the extent that the trustee would argue that the withdraw of the reference -- the right to withdraw the reference has been waived, the consent to the jury trial and to this Court's ability to enter a final judgment has been waived as a result of the language in the pre-trial order and failure of the defendants to take any affirmative action, I believe that is

the case.

I'm going to ask the trustee to prepare orders in each of these cases that -- grant the motion to deny jury demand. And certainly, the orders can provide that you -- or that the defendants do not agree or object to the entry of this relief. But I'd like to have those orders submitted within ten days if -- and so that hopefully we don't delay the trials of these matters in September.

I'm pleased to hear that discovery is ongoing.  And hopefully there's still the possibility of some settlement discussions taking place as well.

Barring any further action beyond what I intend to do, I do intend to have these cases heard in September.  If you'll submit those orders, seen and objected to by counsel for the defendants, as well as the orders in connection with the motion to the -- the partial motions to dismiss, denying those motions.

MS. BERAN:  Yes, Your Honor.

THE COURT:  And providing -- I believe you said ten days to file any further answers to the counts that you were seeking to have dismissed.  Then beyond that, I don't know that we have anything else scheduled.  It may be appropriate at some time to schedule a final pre-trial conference, perhaps a few weeks before the -- unless something else comes up before the trials.

Colloquy                                                    52

MS. BERAN:  Yes, Your Honor.

Your Honor, just two things in connection with that ten-day grace requirement.  Hopefully, in this instance, now that Mr. Hoke is admitted pro hac vice, there won't be any type of delay.  But to the extent there's a delay and we don't get endorsement of counsel to submit the order, we will so indicate and submit it without the consent.

The other thing, Your Honor, I did want to point out -- and my client indicated that I said something that was misleading.  And I truly apologize.  I didn't mean to state that.  The rules are pretty clear as to where and what has to be done as it relates to the motion to withdraw the reference.  In connection with that, there used to be a concern or confusion as to who heard that matter.  The rules are clear now that the district court hears that.  And I apologize.

THE COURT:  Right.  You agree -- I can't -- I mean, there's nothing I can do except react to whatever the district court may do if that motion is filed with the district court.

MS. BERAN:  And actually, technically, Your Honor, it is filed here.  And then it's like an appeal that gets sent up.

THE COURT:  But I don't get to decide it.

MS. BERAN:  Absolutely, Your Honor.  That's what I was referring to.

THE COURT:  Exactly.

MS. BERAN:  And I think I confused you, so I

apologize.

THE COURT:  No.  I appreciate that.

Is there anything else, gentlemen?

MR. HOKE:  No, Your Honor.

THE COURT:  All right.  Thank you.

MR. HOKE:  All right.  Thank you.

(Whereupon these proceedings were concluded at 12:14 PM)

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

54

I N D E X

| RULINGS: | PAGE | LINE |
|---|---|---|
| Defendants' motion for partial dismissal denied as specified | 14 | 23 |
| Motion to deny defendant's jury trial demand granted | 51 | 3 |
| Motions to dismiss denied | 51 | 16 |

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

55

C E R T I F I C A T I O N

I, Aliza Chodoff, the court approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

June 8, 2017

_____          _____

ALIZA CHODOFF                                          DATE

AAERT Certified Electronic Transcriber CET-634

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

# EXHIBIT L

# U.S. Bankruptcy Court
## Eastern District of Virginia (Richmond)
## Adversary Proceeding #: 16-03069-KLP

*Assigned to:* Keith L. Phillips                              *Date Filed:* 03/24/16
*Lead BK Case:* 14-31546
*Lead BK Title:* James Ashby Moncure
*Lead BK Chapter:* 7
Show Associated Cases

*Demand:* $120000000

  *Nature[s] of Suit:*  13 Recovery of money/property - 548 fraudulent transfer
                        11 Recovery of money/property - 542 turnover of property

*Plaintiff*
-----------------------
**Lynn L. Tavenner, Trustee**           represented by **Paula S. Beran**
                                                       Tavenner & Beran, PLC
                                                       20 North Eighth Street, Second Floor
                                                       Richmond, VA 23219
                                                       804-783-8300
                                                       Fax : 804-783-0178
                                                       Email: pberan@tb-lawfirm.com

                                                       **David N. Tabakin**
                                                       Tavenner & Beran PLC
                                                       20 North 8th Street, Second Floor
                                                       Richmond, VA 23219
                                                       804-783-8300
                                                       Fax : 804-783-0178
                                                       Email: dtabakin@tb-lawfirm.com

V.

*Defendant*
-----------------------
**Justin Sigler**                       represented by **Curtis George Hoke**
                                                       The Miller Firm, LLC
                                                       108 Railroad Avenue
                                                       Orange, VA 22960
                                                       540-672-4224
                                                       Email: choke@millerfirmllc.com

**Michael J. Miller**
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
(540) 672-4224

**Michael Joseph Miller**
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
540-672-4224
Email: mmiller@millerfirmllc.com

| Filing Date | # | Docket Text |
|---|---|---|
| 03/24/2016 | 1 (11 pgs) | Adversary case 16-03069. Complaint against Justin Sigler (Fee Amount of $350 is Deferred) filed by Lynn L. Tavenner, Trustee. Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer)), (11 (Recovery of money/property - 542 turnover of property)) Associated Bankruptcy Case Number: 3:14-bk-31546 (Beran, Paula) |
| 03/29/2016 | 2 (2 pgs) | Summons and notice issued to Justin Sigler (Re: related document(s)1 Complaint filed by Lynn L. Tavenner, Trustee) (Smith, Linda) |
| 04/07/2016 | 3 (2 pgs) | Certificate of Service (Re: related document(s)1 Complaint filed by Lynn L. Tavenner, Trustee, 2 Summons and Notice; James Ashby Moncure AP cases ONLY) filed by David N. Tabakin of Tavenner & Beran PLC on behalf of Lynn L. Tavenner, Trustee. (Tabakin, David) |
| 06/07/2016 | 4 (25 pgs) | Notice and Motion to Dismiss Adversary Proceeding *and Memorandum of Points* filed by Michael J. Miller of The Miller Firm, LLC on behalf of Justin Sigler. Hearing scheduled for 7/7/2016 at 02:00 PM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. (Smith, Linda) |
| 06/07/2016 | 5 | Hearing Cancelled; Adversary Proceeding Stayed pursuant to Order Entered 3/25/2016 (Document #382 in Bankruptcy Case 14-31546); (related document(s): 4 Motion to Dismiss |

| | | |
|---|---|---|
| | | Adversary Proceeding). (gibbsp) |
| 01/11/2017 | 6 (1 pg) | Statement - *Mediator's Report Pursuant to Procedures Order* filed by Karen M. Crowley of Crowley, Liberatore, Ryan & Brogan, P.C. on behalf of Karen Crowley. (Crowley, Karen) |
| 01/24/2017 | 7 (2 pgs) | Notice of Hearing *Notice of Pretrial Scheduling Conference* (Re: related document(s)1 Complaint filed by Lynn L. Tavenner, Trustee) filed by Paula S. Beran of Tavenner & Beran, PLC on behalf of Lynn L. Tavenner, Trustee. Hearing scheduled for 2/8/2017 at 02:00 PM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. (Beran, Paula) |
| 02/08/2017 | 8 | Pre-Trial Conference Continued; (related document(s): 1 Complaint) Appearance : Paula S. Beran. Pre-Trial Conference set for 03/15/2017 at 02:00 PM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. (gibbsp) |
| 02/16/2017 | 9 (3 pgs) | Order Scheduling Proceeding regarding Motion to Dismiss and Continuing Pre-Trial Conference (Re: related document(s)1 Complaint filed by Lynn L. Tavenner, Trustee, 4 Motion to Dismiss Adversary Proceeding filed by Justin Sigler) Hearing scheduled for 3/15/2017 at 02:00 PM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. (Smith, Linda) |
| 02/18/2017 | 10 (4 pgs) | BNC certificate of mailing of order (Re: related document(s)9 Order Continuing/Rescheduling/Setting Hearing) (Admin.) (Entered: 02/19/2017) |
| 03/08/2017 | 11 (61 pgs) | Objection to *Trustee's Opposition to Defendant's Motion to Dismiss and Memorandum of Points and Authorities In Support Of Motion to Dismiss*(Re: related document(s)4 Motion to Dismiss Adversary Proceeding filed by Justin Sigler) filed by Paula S. Beran of Tavenner & Beran, PLC on behalf of Lynn L. Tavenner, Trustee. (Beran, Paula) |
| 03/13/2017 | 12 (14 pgs) | Reply *TO TRUSTEE'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS* (Re: related document(s)11 Objection to Motion/Application filed by |

|  |  |  |
|---|---|---|
|  |  | Lynn L. Tavenner, Trustee) filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Miller, Michael) |
| 03/15/2017 | 14 | Hearing held; Motion Granted without prejudice as to Count II (Actual Fraud) and Motion Denied as to remaining Counts. Plaintiff allowed 14 days to Amend Complaint with responses due 10 days thereafter. Appearance(s): Michael Miller; Paula Beran (Re: related document(s)4 Motion to Dismiss Adversary Proceeding filed by Justin Sigler). (Rintye, Peggy) (Entered: 03/16/2017) |
| 03/15/2017 | 15 | Pre-Trial Conference Held; Two Day Trial Set; (related document(s): 1 Complaint/ Amended Complaint. Appearance : Paula S. Beran; Michael Miller. Trial set for 09/11/2017 at 10:00 AM AND 09/12/2017 at 10:00 AM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. Court to issue Pretrial Order. (Rintye, Peggy) (Entered: 03/16/2017) |
| 03/23/2017 | 16 (5 pgs) | Pre-Trial Order; (Re: related document(s)1 Complaint filed by Lynn L. Tavenner, Trustee) 2 Day Trial set for 9/11/2017 at 10:00 AM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. (Smith, Linda) |
| 03/24/2017 | 17 | Transcript filed Re: Hearing Held 3/15/2017, regarding RECOVERY OF MONEY/PROPERTY; PRE-TRIAL CONFERENCE. Remote electronic access to the transcript is restricted until 06/22/2017. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber eScribers, LLC, Telephone number 973-406-2250.] [Transcript Purchased by Paula S. Beran.] (RE: related document(s) 14 Hearing held; Motion Granted without prejudice as to Count II (Actual Fraud) and Motion Denied as to remaining Counts. Plaintiff allowed 14 days to Amend Complaint with responses due 10 days thereafter. Appearance(s): Michael Miller; Paula Beran (Re: related document(s)4 Motion to Dismiss Adversary Proceeding filed by Justin Sigler)., 15 Pre-Trial Conference Held; Two Day Trial Set; (related document(s): 1 Complaint/ Amended Complaint. Appearance : Paula S. Beran; Michael Miller. Trial set for 09/11/2017 at 10:00 AM AND 09/12/2017 at 10:00 AM at |

| | | |
|---|---|---|
| | | Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. Court to issue Pretrial Order.). Notice of Intent to Request Redaction Deadline Due By 03/31/2017. Redaction Request Due By 04/14/2017. Redacted Transcript Submission Due By 04/24/2017. Transcript access will be restricted through 06/22/2017. (Gottlieb, Jason) |
| 03/24/2017 | 18 (3 pgs) | Order Granting in Part and Denying in Part Defendants Motion to Dismiss Complaint. Count I Denied; Count II Partially Granted. Plaintiff to file Amended Complaint and Defendant to file Responsive Pleading to Amended Complaint.(Related Doc # 4) (Smith, Linda) |
| 03/26/2017 | 19 (4 pgs) | BNC certificate of mailing of order (Re: related document(s)18 Order on Motion to Dismiss Adversary Proceeding) (Admin.) (Entered: 03/27/2017) |
| 03/30/2017 | 20 (2 pgs) | Notice of Filing of Official Transcript. Notice is hereby given that an official transcript has been filed. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the clerk's office or may be purchased from the court transcriber for a 90 day period. (Re: related document(s)17 Transcript filed) (Admin.) (Entered: 03/31/2017) |
| 04/06/2017 | 21 (10 pgs) | Limited Answer *DEFENDANT JUSTIN SIGLERS PARTIAL ANSWER TO PLAINTIFFS COMPLAINT; AFFIRMATIVE DEFENSES; PRAYER FOR RELIEF; DEMAND FOR JURY TRIAL; CERTIFICATE OF SERVICE* (Re: related document(s)1 Complaint filed by Lynn L. Tavenner, Trustee) filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Miller, Michael) |
| 04/07/2017 | 22 (12 pgs) | Amended Complaint against Justin Sigler (Re: related document(s)1 Complaint filed by Lynn L. Tavenner, Trustee) filed by Paula S. Beran of Tavenner & Beran, PLC on behalf of Lynn L. Tavenner, Trustee. (Beran, Paula) |
| 04/17/2017 | 23 (19 pgs; 2 docs) | Limited Motion to Dismiss Pleading *DEFENDANT JUSTIN SIGLERS NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFFS FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6); MEMORANDUM [NO HEARING REQUESTED]* (Re: |

| | | |
|---|---|---|
| | | related document(s)22Amended Complaint filed by Lynn L. Tavenner, Trustee) filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Attachments: # 1 Proposed Order) (Miller, Michael) |
| 04/17/2017 | 24 (10 pgs) | Limited Answer *DEFENDANT JUSTIN SIGLERS PARTIAL ANSWER TO PLAINTIFFS AMENDED COMPLAINT; AFFIRMATIVE DEFENSES; PRAYER FOR RELIEF; DEMAND FOR JURY TRIAL* (Re: related document(s)22 Amended Complaint filed by Lynn L. Tavenner, Trustee) filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Miller, Michael) |
| 05/01/2017 | 25 (62 pgs) | Objection to *Trustee's Opposition to Defendant's Partial Motion to Dismiss Plaintiffs First Amended Complaint Pursuant to F.R.C.P. 12(b)(6) and Memorandum of Points and Authorities* (Re: related document(s)23 Motion to Dismiss Pleading filed by Justin Sigler) filed by Paula S. Beran of Tavenner & Beran, PLC on behalf of Lynn L. Tavenner, Trustee. (Beran, Paula) |
| 05/08/2017 | 26 (11 pgs) | Reply *DEFENDANT JUSTIN SIGLERS REPLY TO TRUSTEE LYNN L. TAVENNERS OPPOSITION TO DEFENDANTS PARTIAL MOTION TO DISMISS PLAINTIFFS FIRST AMENDED COMPLAINT* (Re: related document(s)25 Objection to Motion/Application filed by Lynn L. Tavenner, Trustee) filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Miller, Michael) |
| 05/24/2017 | 27 (19 pgs) | Motion to Strike *Motion to Deny Jury Demand* filed by Paula S. Beran of Tavenner & Beran, PLC on behalf of Lynn L. Tavenner, Trustee. (Beran, Paula) |
| 05/24/2017 | 28 (3 pgs) | Notice of Hearing *and Notice of Motion* (Re: related document(s)27 Motion to Strike filed by Lynn L. Tavenner, Trustee) filed by Paula S. Beran of Tavenner & Beran, PLC on behalf of Lynn L. Tavenner, Trustee. Hearing scheduled for 6/7/2017 at 11:00 AM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. (Beran, Paula) |
| 05/24/2017 | 29 (3 pgs) | Notice of Hearing (Re: related document(s)25 Objection to Motion/Application filed by Lynn L. Tavenner, Trustee) |

|  |  |  | filed by Paula S. Beran of Tavenner & Beran, PLC on behalf of Lynn L. Tavenner, Trustee. Hearing scheduled for 6/7/2017 at 11:00 AM at Judge Phillips' Courtroom, 701 E. Broad St., Rm. 5100, Richmond, Virginia. (Beran, Paula) |
|---|---|---|---|
| 06/05/2017 |  | 30 (3 pgs) | Notice of Appearance *of Curtis G. Hoke* filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Miller, Michael) |
| 06/05/2017 |  | 31 (25 pgs; 2 docs) | Opposition Brief *DEFENDANT JUSTIN SIGLERS OPPOSITION TO PLAINTIFFS MOTION TO DENY JURY DEMAND AND MEMORANDUM OF POINTS AND AUTHORITIES* (Re: related document(s)27 Motion to Strike filed by Lynn L. Tavenner, Trustee) filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Attachments: # 1 Exhibit(s) A (Claims Summary)) (Miller, Michael) |
| 06/07/2017 |  | 32 (3 pgs) | Notice of Appearance *of Shane Hodge, Esquire* filed by Michael Joseph Miller of The Miller Firm LLC on behalf of Justin Sigler. (Miller, Michael) |
| 06/07/2017 |  | 33 (3 pgs) | Notice of Appearance *of Curtis G. Hoke* filed by Curtis George Hoke of The Miller Firm, LLC on behalf of Justin Sigler. (Hoke, Curtis) |
| 06/07/2017 |  | 34 | Hearing held; Motion to Dismiss DENIED; Defendant allowed ten (10) Days to file answer to amended complaint; (related document(s): 23 Motion to Dismiss Pleading, 25 Objection to Motion/Application) Appearance : Paula S. Beran, Curtis G. Hoke. (rintyep) (Entered: 06/08/2017) |
| 06/07/2017 |  | 35 | Hearing held; Motion GRANTED; (related document(s): 27 Motion to Deny Jury Demand) Appearances : Paula S. Beran, Curtis G. Hoke. (rintyep) (Entered: 06/08/2017) |
| 06/08/2017 |  | 36 | Transcript filed Re: Hearing Held 6/7/2017, regarding 28 NOTICE OF HEARING AND NOTICE OF MOTION (RE: RELATED DOCUMENT(S); 27MOTION TO STRIKE; 29 NOTICE OF HEARING (RE: RELATED DOCUMENT(S); 25 OBJECTION TO MOTION. Remote electronic access to the transcript is restricted until |

| | | 09/6/2017. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber eScribers, Telephone number 973-406-2250.] [Transcript Purchased by Richard Mayer.] (RE: related document(s) 34 Hearing held; Motion to Dismiss DENIED; Defendant allowed ten (10) Days to file answer to amended complaint; (related document(s): 23 Motion to Dismiss Pleading, 25 Objection to Motion/Application) Appearance : Paula S. Beran, Curtis G. Hoke. (rintyep), 35 Hearing held; Motion GRANTED; (related document(s): 27 Motion to Deny Jury Demand) Appearances : Paula S. Beran, Curtis G. Hoke. (rintyep)). Notice of Intent to Request Redaction Deadline Due By 06/15/2017. Redaction Request Due By 06/29/2017. Redacted Transcript Submission Due By 07/10/2017. Transcript access will be restricted through 09/6/2017. (Gottlieb, Jason) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/12/2017 09:14:01 | | | |
| **PACER Login:** | mi0208:2597586:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 16-03069-KLP Fil or Ent: filed From: 1/1/2016 To: 6/26/2017 Doc From: 0 Doc To: 99999999 Format: html Page counts for documents: included |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |